```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK            (ECF)
- - - - - - - - - - - - - - - - - -:
                                    :    05 MD 1661 (HB) (JCF)
In Re RIVASTIGMINE PATENT           :
LITIGATION (MDL No. 1661),          :    MEMORANDUM
                                    :    AND   ORDER
- - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

This multidistrict litigation concerns the patent rights for rivastigmine tartrate ("rivastigmine"), the active ingredient in Exelon, a medication used to treat Alzheimer's type dementia. Novartis Pharmaceuticals Corporation, Novartis Pharma AG, Novartis International Pharmaceutical Ltd., and Proterra AG (collectively, "Novartis"), have brought actions alleging that the defendants, Dr. Reddy's Laboratories, Ltd. and Dr. Reddy's Laboratories, Inc. (collectively, "Dr. Reddy"), Watson Pharmaceuticals Inc. and Watson Laboratories, Inc. (collectively, "Watson"), and Sun Pharmaceutical Ltd. ("Sun") have induced infringement of two patents owned by Novartis by seeking approval from the Food and Drug Administration to market generic versions of Exelon.

Sun, on behalf of all of the defendants, has moved pursuant to Rule 37 of the Federal Rules of Civil procedure for an order compelling Novartis to produce communications to and from Joseph Borovian, a patent agent employed by Novartis. Novartis has withheld the documents at issue on grounds of attorney-client privilege. For the reasons explained below, I uphold Novartis's claim of privilege and deny the defendants' motion.

1

Background

Joseph Borovian is a registered patent agent. (Deposition of Joseph Borovian ("Borovian Dep."), attached as Exh. A to Letter of Derek J. Sarafa dated Nov. 1, 2005 ("Sarafa Letter"), at 11-12. He is not an attorney. (Borovian Dep. at 12). In 1974, he joined Novartis as a patent agent in the non-pharmaceutical group of the patent department, where he reported to a senior patent counsel. (Borovian Dep. at 18-19). Approximately six years later, he transferred to the pharmaceutical group where he reported to a different senior patent counsel. (Borovian Dep. at 20). In 1986, Mr. Borovian was promoted to senior patent agent. (Borovian Dep. at 21). In 2000, Thomas Hoxie became head of the Novartis U.S. patent and trademark office, and Mr. Borovian as well as all other patent agents began reporting to him. (Borovian Dep. at 38; Declaration of Thomas Hoxie dated Nov. 10, 2005 ("Hoxie Decl."), attached as Exh. 2 to Letter of Diego Scambia dated Nov. 10, 2005 ("Scambia Letter"), ¶ 7).

Since joining Novartis, Mr. Borovian has prosecuted approximately 3,000 patents. (Borovian Dep. at 22). Because of his degree of expertise, he works with a fair amount of autonomy. He does not, for example, consult with counsel each time he communicates with a client or reviews a client's e-mail, and he considers himself capable of offering legal advice with respect to all aspects of patent prosecution. (Borovian Dep. at 32-33, 67,

69-71). Indeed, he believes that he has the same duties and responsibilities as an attorney in prosecuting a patent. (Borovian Dep. at 75-76). Nevertheless, he has testified that he receives a "good amount" of supervision from senior patent counsel. (Borovian Dep. at 24). He described his preparation of a case as follows:

> I would be meeting with the supervisor periodically while the case was being prepared to make sure we were protecting Novartis' best interest. And during prosecution whenever issues would come up which I feel would benefit from a group discussion, that was something that wasn't black and white and I could handle the issue independently, we would discuss the issue. And, if need be, consult our Basel associates to make sure they are in agreement with how we decided to proceed.

(Borovian Dep. at 25). That supervision was provided by senior patent counsel and others. (Borovian Dep. at 26).

When Mr. Hoxie became chief patent counsel, one of the adjustments that he made was to assign Mr. Borovian responsiblity for patent term extensions. (Borovian Dep. at 45-48). In that capacity, Mr. Borovian participated in preparing the application for a patent term extension for U.S. Letters Patent No. 4,948,807 (the "'807 Patent"), one of the two patents at issue in this litigation. (Borovian Dep. at 113-14). To the extent that his conduct in connection with the '807 patent was consistent with his general practices, Mr. Borovian was able to perform certain aspects of the application process without specific direction from counsel, including determining the timing of the application, obtaining information about relevant regulatory activities, and securing

copies of documents needed for attachment to the application. (Borovian Dep. at 130-32). By contrast, the actual drafting of the application itself was done with the direct supervision of an attorney. (Borovian Dep. at 135).

At his deposition, Mr. Borovian was unable, by looking at the entries on Novartis's privilege log, to identify which client he was dealing with in his communications. (Borovian Dep. at 211-12, 221-22). He was also unable to state that he was acting at the specific direction of an attorney with respect to each communication. (Borovian Dep. at 221-23, 226-27). However, he did testify that he was sure that as a general matter he was working under the supervision of counsel on the '807 patent term extension and that even with respect to issues as routine as a status update, he would not communicate with the client without first discussing the matter with an attorney. (Borovian Dep. at 223-25).

Mr. Hoxie has submitted a declaration confirming that he supervised Mr. Borovian in connection with the work on the '807 patent. Mr. Hoxie indicates that he did not consider patent term extensions to be routine matters, and so was directly involved in overseeing their preparation. (Hoxie Decl., ¶ 8). Specifically, the application for the '807 patent term extension was prepared under his direct supervision, and he reviewed it before its submission and provided the necessary supporting declaration. (Hoxie Decl., ¶ 9). Finally, he reviewed the documents now at

4

issue and confirms that they were created by Mr. Borovian under his supervision. (Hoxie Decl., ¶ 10).

The defendants argue that Mr. Borovian's testimony shows that he acted independently and largely without supervision and that his general representations and those of Mr. Hoxie are insufficient to support a claim of privilege. Novartis responds that it has adequately demonstrated that Mr. Borovian created the documents at issue while acting under the direction of counsel. Further, Novartis seeks a ruling that, even if Mr. Borovian had been acting independently, communications to and from a U.S. patent agent should be considered privileged.

Discussion

The dominant view among the courts in this circuit is that the attorney-client privilege extends to communications between a patent agent and a client when the patent agent is acting under the supervision of counsel to provide legal services in connection with the prosecution of a patent application in the United States. See Cargill, Inc. v. Sears Petroleum & Transport, Inc., No. CIVA5:03CV0530, 2003 WL 22225580, at *3 (N.D.N.Y. Sept. 17, 2003); Gorman v. Polar Electric Inc., 137 F. Supp. 2d 223, 227 (E.D.N.Y. 2001); Saxholm AS v. Dynal, Inc., 164 F.R.D. 331, 337 (E.D.N.Y. 1996); Golden Trade, S.r.L. v. Lee Apparel Co., 143 F.R.D. 514, 518-19 (S.D.N.Y. 1992). This rule "is consistent with the underlying rationale for the attorney-client privilege and with its

5

application to communication with other specialists who assist the attorney." Golden Trade, 143 F.R.D. at 519 (citing United States v. Alvarez, 519 F.2d 1036, 1045-46 (3d Cir. 1975) (use of psychiatrist to assist attorney); United States v. Cote, 456 F.2d 142, 144 (8th Cir. 1972) (use of accountant to assist attorney); United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961) (same)); see also In re Grand Jury Subpoenas, 265 F. Supp. 2d 321, 324-31 (S.D.N.Y. 2003) (use of public relations firm to assist counsel).

In the first instance, the parties agree that this is the appropriate standard; they disagree as to its application in this case. The defendants' argument that Mr. Borovian was not acting under the supervision of counsel fails in two respects: it takes an unrealistically narrow view of what constitutes supervision and it relies on a selective reading of Mr. Borovian's testimony.

The term "supervision" cannot mean that, in order to preserve the privilege, counsel must direct each individual act of a professional from whom the attorney is receiving assistance. In the context of an accountant who is aiding counsel, for example, it is not necessary for the attorney to identify the numbers to be included in the calculations or to dictate the accounting rules to be followed. Nor is it necessary for counsel to review every communication between the accountant and the client from whom the raw data are obtained. As the Second Circuit reasoned in Kovel,

> [I]f the lawyer has directed the client, either in the specific case or generally, to tell his story in the

> first instance to an accountant engaged by the lawyer, who is then to interpret it so that the lawyer may better give legal advice, communications by the client reasonably related to that purpose ought fall within the privilege; there can be no more virtue in requiring the lawyer to sit by while the client pursues these possibly tedious preliminary conversations with the accountant than in insisting on the lawyer's physical presence while the client dictates a statement to the lawyer's secretary or [is] interviewed by a clerk not yet admitted to practice. What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer.

Kovel, 296 F.2d at 922.

The record demonstrates that this standard has been met here. Mr. Borovian was acting, in effect, as an adjunct to Novartis's in-house counsel, Mr. Hoxie. He performed work on the patent term extension for the '807 patent at Mr. Hoxie's direction. In that capacity, he communicated with representatives of the "client": employees of various Novartis entities. The ultimate purpose was to enable counsel to provide legal advice regarding the extension. Although it is clear that counsel did not micromanage Mr. Borovian's activities and that he felt free to communicate directly with non-legal Novartis personnel regarding patent issues, it is also plain that his work on the '807 patent was assigned by an attorney and that the communications at issue came within the scope of that assignment. The privilege has therefore been established with respect to each of the challenged documents.[1]

---

[1] The communications at issue are identified by document numbers 279, 280, 281, 282, 283, 285, 286, 860, 862, 863, 864, 867, 868, 947, 948, 949, 950, 951, 952, 953, 954, 955, 956, 957, 959,

The cases relied upon by the defendants do not dictate a different result.  For example, in Glaxo, Inc. v. Novopharm Ltd., 148 F.R.D. 535 (E.D.N.C. 1993), the court endorsed the view that "'communications between a patent agent and a client, where the patent agent is handling the matter on an independent basis, are not privileged.'"  Id. At 538 (emphasis omitted) (quoting Foseco International Ltd. v. Fireline, Inc., 546 F. Supp. 22, 25 (N.D. Ohio 1982)).  In that case, however, the client company had hired an outside patent agent in Great Britain with whom the company's attorney then communicated.  Here, by contrast, Mr. Borovian is employed by Novartis and supervised by Novartis's counsel and so is hardly "independent" in the sense that the court used that term in Glaxo.  Moreover, the Glaxo court concluded that "communications between a foreign patent agent and a U.S. attorney concerning a U.S. patent application are not privileged unless the patent agent either registered with the U.S. patent office or is acting at the direction and under control of an attorney."  Id. at 539.  In this case, as discussed above, Mr. Borovian was acting under the supervision of an attorney, and, if being a registered U.S. patent agent were enough to qualify for the privilege, Mr. Borovian would satisfy that prong of the Glaxo test as well.

---

960, 962, 963, 964, 965, 967, 968, and 969.  (Letter of Derek J. Sarafa dated Nov. 22, 2005 ("Sarafa Reply Letter"), at 1 n.1).  Two additional documents, nos. 861 and 946, were previously in dispute but have been produced by Novartis.  (Letter of Diego Scambia dated Nov. 29, 2005, at 1).

Finally, the defendants complain that Novartis has not satisfied its burden of establishing the privilege on a document-by-document basis and point to the fact that Mr. Borovian was unable to provide specific information about individual communications when shown entries on Novartis's privilege log. But, a deposition witness cannot be expected to recall the content of documents on the basis of a privilege log. To the extent that defendants' counsel wished to question Mr. Borovian about the grounds for assertion of the privilege, they should have requested that Novartis make the challenged documents available for Mr. Borovian's review at the deposition. Moreover, I have reviewed each of the documents <u>in camera</u> and conclude that the representations in the privilege log and in Mr. Hoxie's declaration accurately reflect the nature of the communications and satisfy the requirements of the privilege.

In light of the fact that the documents at issue are privileged under the standard established by <u>Golden Trade</u> and similar cases, there is no need at this time to determine whether the privilege should be expanded to cover any communications relating to the provision of advice by a United States patent agent, whether or not acting under the supervision of counsel.

<u>Conclusion</u>

For the reasons set forth above, the defendants' motion to compel production of documents created or received by Mr. Borovian

is denied.

      SO ORDERED.

      *James C. Francis IV*
      JAMES C. FRANCIS IV
      UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
    January 5, 2006

Copies mailed this date:

Robert L. Baechtold, Esq.
Diego Scambia, Esq.
Nicholas N. Kallas, Esq.
Fitzpatrick, Cella, Harper & Scinto
30 Rockefeller Plaza
New York, New York  10112-3801

Maurice N. Ross, Esq.
Stuart Sender, Esq.
Lars Taavola, Esq.
Budd Larner PC
150 John F. Kennedy Parkway
Short Hills, New Jersey  07078

James K. Stronski, Esq.
Frommer Laurence & Haug, LLP
745 Fifth Avenue
New York, New York  10151

James F. Hurst, Esq.
David J. Doyle, Esq.
Derek J. Sarafa, Esq.
Kristen G. Cowan, Esq.
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL  60601