UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK             (ECF)
- - - - - - - - - - - - - - - - - - -:
                                        : 05 MD 1661 (HB) (JCF)
In Re RIVASTIGMINE PATENT               :
LITIGATION (MDL No. 1661)               :    MEMORANDUM
                                        :    AND ORDER
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE


     This multidistrict litigation concerns the patent rights for

rivastigmine tartrate ("rivastigmine"), the active ingredient in

Exelon, a medication marketed by Novartis Pharmaceutical

Corporation ("NPC") for the treatment of mild to moderate dementia

of the Alzheimer's type.  NPC, together with Novartis Pharma AG,

Novartis International Pharmaceutical Ltd., and Proterra AG

(collectively, "Novartis"), has brought actions alleging that the

defendants, Dr. Reddy's Laboratories, Ltd. and Dr. Reddy's

Laboratory, Inc. (collectively, "Dr. Reddy"), Watson

Pharmaceuticals Inc. and Watson Laboratories, Inc. (collectively,

"Watson"), and Sun Pharmaceutical Ltd. ("Sun"), have induced

infringement of two patents owned by Novartis by seeking approval

from the Food and Drug Administration to market generic versions of

Exelon.[1]

     The defendants seek to compel production of numerous

_____

     [1] A more complete summary of the factual background of this
litigation is contained in previous orders.  See, e.g., In re
Rivastigmine Patent Litigation, No. 05 MD 1661, 2005 WL 957426
(S.D.N.Y. April 25, 2005).

communications that the plaintiffs have withheld primarily on the basis of attorney-client privilege.[2]  The communications now at issue fall into four categories.

The first category has been termed the "Swiss Motion" documents.  In July 2005, the defendants submitted a motion requesting, among other things, disclosure of communications between Swiss patent agents and their clients, Swiss in-house counsel and their clients, or European patent attorneys and their clients.  (Letter of Maurice N. Ross dated July 21, 2005 ("Ross 7/21/05 Ltr." or "Swiss Motion")).  This motion was denied in relevant part on September 22, 2005, without prejudice to renew with reference to a more specifically identified group of documents.  In that decision, I authorized the defendants to serve, and I ordered the plaintiffs to answer, special interrogatories providing more information about the documents for which the plaintiffs claim privilege.  In December 2005, after interrogatories were served and answered but further disagreements developed between the parties, I ordered the defendants to produce all underlying Swiss Motion documents to the Court for _in camera_ review.  In January 2006, I found that the information provided by the plaintiffs to the defendants remained inadequate, and I ordered the plaintiffs to provide the defendants with additional

---

[2]  Work product and relevancy objections have also been raised with respect to a few documents or portions of documents, and those claims will be addressed as they arise.

information regarding the legal qualifications of the relevant legal professionals, as well as to provide interrogatory answers for all documents not referenced in the Swiss Motion.

The second category of documents relates to a separate motion to compel. In September 2005, the defendants requested the production of documents on the basis of alleged deficiencies in the plaintiffs' privilege log. (Letter of Maurice N. Ross dated September 28, 2005 ("Ross 9/28/05 Ltr.," or "Privilege Log Motion"); see Documents Subject to Defendants' September 28, 2005 Letter, annexed as Appendix 2 to Letter of Diego Scambia dated Dec. 9, 2005 ("Scambia 12/9/05 Ltr.")). On November 21, 2005, I denied the defendants' motion to require the plaintiffs to submit a revised privilege log but ordered the plaintiffs to serve the defendants and the Court with:

> a letter providing sufficient information for each individual document to justify the assertion of privilege, including, for example, identification of a particular author or recipient as an attorney admitted to the bar in the United States, a U.S. patent agent, a Swiss patent attorney, a French patent agent, and so on. Where specific information is unavailable, the plaintiffs shall provide any circumstantial evidence that supports a finding of privilege.

(Nov. 21, 2005, Order). I also ordered the plaintiffs to submit all documents disputed in the Privilege Log Motion to the court for in camera review.[3]

---

[3] To some degree, the documents in the Swiss Motion overlap those in the Privilege Log Motion. (See Letter of Diego Scambia

The third category of documents is a subset of the documents referenced in the Privilege Log Motion. The plaintiffs contend that a large quantity of the withheld communications pertain to foreign patent prosecutions. For those documents, rather than providing a traditional, itemized privilege log, the plaintiffs served the defendants and filed with the Court a categorical log. (Letter of Diego Scambia dated Dec. 30, 2005 ("Scambia 12/30/05 Ltr." or "Scambia Letter of December 30, 2005"), Exh. 2). In response, the defendants argued in their Privilege Log Motion that the categorical format did not provide the information they needed to assess potential objections to the plaintiffs' assertions of attorney-client privilege. In my November 21 Order, I sanctioned the use of a categorical log, but only under certain conditions:

> In justifying the assertion of privilege [], the plaintiffs may treat these documents by category. However, <u>to the extent that I find any categorical justification inadequate, all documents within the category shall be ordered produced</u>. Further, to the extent that I find any individual document to have been improperly classified within a category, that document shall be ordered produced without further individual review.

(Nov. 21, 2005, Order) (emphasis added).

The plaintiffs have identified a fourth category of documents (the "category four documents") that they claim were newly challenged by the defendants on February 22, 2006. (Scambia

---

dated Dec. 22, 2005, at 2 & Tab 6 (listing the Swiss Motion documents not the subject of the Privilege Log Motion)).

3/24/06 Letter at 2 n.3; Plaintiffs' January 20 Privileged Documents Defendants Now Challenge, attached as Exh. 4 to Scambia 3/24/06 Letter). The defendants' challenges are not new, however. Rather, they are the same objections raised in the Swiss Motion and the Privilege Log Motion. Granted, the defendants have added new documents, but they have not asserted new legal arguments. In particular, the privilege issues governing communications involving European patent attorneys and Swiss in-house attorneys-at-law have been amply briefed. To the extent the newly identified documents involve such communications, the rulings below govern. With respect to other newly identified documents, the plaintiffs are directed to reconsider their privilege claims, and the defendants their corresponding objections. Within two weeks of this Order, the parties are directed to submit to the Court a stipulation with respect to the category four documents. If the parties are unable to agree concerning any document, the parties shall include with their submission a list of the unresolved category four documents and, for each, a brief but clear statement highlighting the legal and factual bases of the disagreement.

<u>Discussion</u>

The attorney-client privilege functions "to encourage full and frank communication between attorneys and their clients." <u>United States v. Zolin</u>, 491 U.S. 554, 562 (1989). As the Supreme Court has explained, the attorney client privilege "exists to protect not

only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 390 (1981). Courts recognize as privileged both communications by the client to the attorney and legal advice rendered by the attorney to the client, at least to the extent that the advice reflects confidential communications between the two. <u>In re Six Grand Jury Witnesses</u>, 979 F.2d 939, 943-44 (2d Cir. 1992); <u>National Broadcasting Co. v. United States Small Business Administration</u>, 836 F. Supp. 121, 125 (S.D.N.Y. 1993). Federal courts continue to define the elements of the attorney-client privilege using the formulation that Judge Wyanksi articulated in <u>United States v. United Shoe Machinery Corp.</u>, 89 F. Supp. 357, 358-59 (D. Mass. 1950):

> The privilege holds only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

<u>See, e.g.</u>, <u>Softview Computer Products Corp. v. Haworth</u>, Inc., No. 97 Civ. 8815, 2000 WL 351411, at *2 (S.D.N.Y. March 31, 2000); <u>Bank</u>

Brussels Lambert v. Credit Swiss Lyonnais (Suisse) S.A., 160 F.R.D. 437, 441 (S.D.N.Y. 1995).

"It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship, a burden not discharged by mere conclusory or ipse dixit assertions." In re Grand Jury Subpoena Dated Jan. 4, 1984, 750 F.2d 223, 224-25 (2d Cir. 1984) (citations and internal quotation marks omitted); accord von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 144 (2d Cir. 1987); Golden Trade, S.r.L. v. Lee Apparel Co., 143 F.R.D. 514, 523 (S.D.N.Y. 1992). As the proponent of the attorney-client privilege in this case, Novartis "has the burden of establishing the attorney-client relationship and the applicability of the privilege to the particular circumstances and discovery requests." P.& B. Marina, Ltd. v. Logrande, 136 F.R.D. 50, 53-54 (E.D.N.Y. 1991), aff'd, 983 F.2d 1047 (2d Cir. 1992).

A.  Swiss Motion Documents

The attorney-client privilege of course requires the participation of an "attorney." A legal professional generally must be admitted to the bar of a state or federal court to qualify as an attorney. See, e.g., A.I.A. Holdings, S.A. v. Lehman Brothers, Inc., No. 97 Civ. 4978, 2002 WL 31385824, at *4 (S.D.N.Y. Oct. 21, 2002). However, when analyzing communications with foreign attorneys and patent agents, courts engage in a form of

traditional choice-of-law "contacts" analysis to determine whether
to defer to the privilege laws of another nation:

> If a communication with a foreign patent agent involves
> a U.S. patent application, then U.S. privilege law
> applies, and communications on that subject with a patent
> agent are <u>not</u> privileged, unless the foreign agent is
> acting under the authority and control of a U.S.
> attorney, because such foreign agents are not attorneys
> entitled to practice United States law . . . . If a
> communication with a foreign patent agent involves a
> foreign patent application, then as a matter of comity,
> the law of that foreign country is considered regarding
> whether that law provides a privilege comparable to the
> attorney/client privilege.

<u>Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.</u>, No. 95 Civ.
8833, 1998 WL 158958, at *1 (S.D.N.Y. April 2, 1998) (citations
omitted).  In a patent matter involving clients, attorneys, and
patent applications of diverse nations, the law of multiple
countries may be involved.  In such cases, courts look to the law
of the country where the patent application is pending.  <u>See, e.g.</u>,
<u>Golden Trade</u>, 143 F.R.D. at 520-21 (where communications between
Italian corporation and patent agents in Norway, Israel, and
Germany concerned patent applications in agents' respective
countries, court chose law of the country where patent agent
offered services); <u>Detection Systems, Inc. v. Pittway Corp.</u>, 96
F.R.D. 152, 156 (W.D.N.Y. 1982) (where Japanese agent communicated
with client through U.K. patent agent, Japanese law governed);
<u>Johnson Matthey, Inc. v. Research Corp.</u>, No. 01 Civ. 8115, 2002 WL
1728566, at *9 (S.D.N.Y July 24, 2002) (in diversity case involving
British agent and U.S. client,  British law governed communications

concerning British legal proceeding and New York law governed communications concerning obligations arising under U.S. contract); In re Philip Services Corp. Securities Litigation, No. 98 Civ. 0835, 2005 WL 2482494, at *2 (S.D.N.Y. Oct. 7, 2005) (U.S. law governed where Canadian professional in Canada advised on public offering in U.S.); Aktiebolag v. Andrx Pharmaceuticals, Inc., 208 F.R.D. 92, 99 (S.D.N.Y. 2002) (U.S. law governed communication between Swedish in-house counsel and Korean counsel regarding U.S. patent application).

The plaintiffs claim that Swiss law governs the vast majority of the documents addressed in the Swiss Motion, and the defendants agree. (Letter of Diego Scambia dated December 22, 2005 ("Scambia 12/22/05 Ltr.") at 6; Letter of Maurice N. Ross dated Aug. 5, 2005 ("Ross 8/5/05 Ltr.") at 4).[4]  I will therefore assume without deciding that the Swiss Motion documents are governed by Swiss law, except as noted in the Appendix to this Order.  The defendants have

_____

[4] The plaintiffs have highlighted exceptions:  documents they maintain are governed by U.S. law, or, in the case of one document, Israeli law.  The specific rulings for those documents are listed in the Appendix.  Where the plaintiffs have submitted evidence that the relevant legal professionals were in fact U.S. attorneys, the defendants have generally withdrawn their objections.  For example, the plaintiffs allege that document number 664 "involves a Mr. Plino, a U.S. attorney in . . . New Jersey who was not previously identified in plaintiffs' legal professionals list" (Scambia 12/22/05 Ltr. at 4 n.2), and the defendants have dropped any objections to the attorney-client privilege for this communication. Where the defendants have withdrawn objections or the plaintiffs have withdrawn their claims of privilege, no ruling is necessary.

submitted to the Court a list of the communications for which the plaintiffs' privilege claims are predicated on the involvement of a Swiss, in-house patent agent or attorney.  (Ross 2/22/06 Ltr. at 10 & Appendix E).  Given that the plaintiffs have not objected to the characterizations of the legal professionals contained in this list, I will use it to facilitate a categorical ruling on the Swiss Motion documents.

### 1.  Swiss Law Regarding Patent Agents

Whether Swiss law recognizes a privilege for patent agents remains unsettled.  See, e.g., Variable-Parameter Fixture Development Corp. v. Morpheus Lights Inc., No. 90 Civ. 5593, 1992 WL 203865, at *1 (S.D.N.Y. Aug. 12, 1992) (finding status or privilege under Swiss law unclear); Burroughs Wellcome Co. v. Barr Laboratories, Inc., 143 F.R.D. 611, 624 (E.D.N.C. 1992) (finding letter from Swiss patent attorney to European patent attorney privileged on the basis of unopposed declaration stating that Swiss privilege law covers communications between clients and patent agents); Attorney-Client Privilege and the Patent and/or Trademark Attorneys Profession: Answer of the Swiss Group, Questionnaire of the International Association for the Protection of Intellectual Property dated May 2002 (ascertaining from Swiss members of association that patent agents are not protected by privilege), available at http://www.aippi.org/reports/q163/quest02/q163 _switzerland.pdf.

Even if there is some confidentiality protection for communications between clients and attorneys or patent agents in Switzerland, that protection may not be comparable to the attorney-client privilege in the United States. Novartis has maintained that Swiss legal professionals are bound by a professional secrecy obligation, the violation of which could result in sanctions. However, professional secrecy obligations are not coextensive with the attorney-client privilege. The former is a professional's ethical obligation to his client; the latter is an evidentiary privilege of non-disclosure. In many jurisdictions around the world, a court may order disclosure if it determines that the need for the information is sufficient to outweigh the secrecy obligation, while the privilege, in contrast, is absolute and inviolate. Bristol-Myers, 1998 WL 158958, at *2-3 (U.S. attorney-client privilege is absolute protection distinct from secrecy obligations of bankers, telephone companies, and others who must keep trade secrets private; French secrecy laws not comparable because not enforceable against judicial or administrative investigations or against courts); Bristol-Myers Squibb Co. v. Rhone Poulenc Rorer, Inc., 188 F.R.D. 189, 199-201 (S.D.N.Y. 1999) (French patent agent can be ordered to turn over documents while avocat can refuse; secrecy obligation is part of French disciplinary rules, which say nothing about disclosure to court); Bayer AG v. Barr Laboratories, Inc., No. 92 Civ. 0381, 1994 WL

705331, at *5-6 (S.D.N.Y. Dec. 16, 1994)(master's finding of patent attorney-client privilege remanded because secrecy obligation is not equivalent to attorney-client privilege) (citing <u>Alpex Computer Corp. v. Nintendo Co.</u>, No. 86 Civ. 1749, 1992 WL 51534, at *2, *6 (S.D.N.Y. March 10, 1992)); <u>Eisai Ltd. v. Dr. Reddy's Laboratories, Inc.</u>, 406 F. Supp. 2d 341, 343 (S.D.N.Y. 2005) (privilege exists under Japanese law because <u>benrishi</u>, legal professionals who act, essentially, as patent agents, may refuse to testify about facts they should keep secret and holder of documents can refuse to produce them); <u>VLT Corp. v. Unitrode Corp.</u>, 194 F.R.D. 8, 19 (D. Mass. 2000) (privilege exists under British law because neither solicitor nor client can be compelled to disclose confidential communications); <u>Golden Trade</u>, 143 F.R.D. at 524 (privilege exists under German law because German court cannot compel patent attorney to disclose communications and parties may not obtain copies of related documentation; privilege also exists under Israeli law because laws of Israel do not permit forced disclosure of communications by or to an attorney).

       2.   <u>Swiss Law Regarding In-House Counsel</u>

The Swiss legal professionals involved in the communications at issue are employees of the client corporation. Therefore, the question is whether Swiss law recognizes a privilege, comparable to the attorney-client privilege in the United States, for in-house attorneys and patent agents. This question must be answered in the

12

negative.

Even if I were to assume that the confidentiality laws governing Swiss legal professionals create a privilege comparable to the attorney-client privilege in the U.S., Swiss confidentiality protections do not apply to communications with in-house counsel. See Robert Furter & Michael Kramer, Lex Mundi, Ltd., <u>In-House Counsel and the Attorney-Client Privilege: A Lex Mundi Multi-Jurisdictional Survey</u> 66-67 (2004), <u>available at</u> http://www.lexmundi.com/images/lexmundi/PDF/AttyClient/Switzerland.pdf; <u>see also</u> Triplett Mackintosh & Kristen M. Angus, <u>Conflict in Confidentiality: How E.U. Laws Leave In-House Counsel Outside the Privilege</u>, 38 Int'l Law. 35, 39-40, 53-54 (2004); <u>cf.</u> <u>Bristol-Myers</u>, 188 F.R.D. at 201 (French in-house patent agents, as salaried employees who do not offer their services to the public on a confidential basis, are not equivalent to external agents and not covered by French secrecy laws). The primary reason for excluding in-house counsel from the privilege is a "deep-seated suspicion of the independence of in-house counsel." Mary C. Daly, <u>The Ethical Implications of the Globalization of the Legal Profession: A Challenge to the Teaching of Professional Responsibility in the Twenty-First Century</u>, 21 Fordham Int'l L. J. 1239, 1279 (1998).

> The in-house lawyer, who is already balancing competing interests as an officer of the court and advocate for the corporation, is also an employee of the corporation. . . . The concern is that when a lawyer is dependent on the client for his livelihood, he will be less likely to exercise

> objective counseling because he has too great an
> interest in the outcome of his advice.

MacKintosh & Angus, <u>supra</u>, at 39, 40.  While the wisdom of this approach has been questioned, it remains the law in Switzerland. <u>See, e.g.</u>, Furter & Kramer, <u>supra</u>, at 66-67.  Although the materials presented by the defendants apply to lawyers, it seems reasonable to assume that the same issues concerning independence of judgment would arise with respect to in-house patent agents.

As the proponent of the privilege, the plaintiffs maintain the burden of establishing the applicability of foreign privilege laws. <u>See</u> <u>Bristol-Myers</u>, 188 F.R.D. at 200 (proponent "failed to establish that there exists under French law a patent agent privilege comparable to the United States attorney-client privilege"); <u>Bristol-Myers</u>, 1998 WL 158958, at *3 (without citation to relevant statute or cases, declaration's reference to French "practices 'of which the declarant is aware'" is insufficient to establish French law, and proponent "has not carried its burden of showing that a privilege equivalent to the attorney/client privilege exists in France for French patent agents"); <u>Variable-Parameter</u>, 1992 WL 203865, at *1 (finding plaintiff had not "met its burden of demonstrating the existence of foreign law protecting the confidentiality of communications with patent agents" under Swiss law); <u>Burroughs Wellcome</u>, 143 F.R.D. at 621 (where plaintiff cited cases but "did not submit any affidavits on the issue of Canadian privilege law . . . [and the defendant had submitted an

14

affidavit addressing Canadian law,] the plaintiff ha[d] not met its burden of establishing the existence of an attorney-client privilege under Canadian law"); SmithKline Beecham Corp. v. Apotex Corp., 193 F.R.D. 530, 535 (N.D. Ill. 2000) ("The burden is on the party asserting the privilege to provide the court with the applicable foreign law, and demonstrate that the privilege applies to the documents it seeks to exclude from discovery."), rev'd in part on other grounds, No. 98 C 3952, 2000 WL 1310669, at *5 (N.D. Ill. Sept. 13, 2000); In re Ampicillin Antitrust Litigation, 81 F.R.D. 377, 391 n.26 (D.D.C. 1978) (no restriction on discovery without evidence of specific privilege under laws of relevant country); see also Bayer AG, 1994 WL 705331, at *4 (noting that special master's determination of foreign law relied on documents submitted by proponent of privilege); Alpex Computer, 1992 WL 51534, at *2-3 (where "[n]othing in the statutory language extends the privilege" and proponent "has failed to offer any Japanese decisions that have filled [the statutory] 'gaps,'" there was "nothing to convince" the court that Japanese law provided for a patent agent-client privilege); but cf. Golden Trade, 143 F.R.D. at 524 n.5 ("[I]t is not necessarily the case that the plaintiffs here bear a burden of proof [on foreign law], but even if they do, they have met it, particularly in the absence of any substantive response by the defendants.").

In support of its privilege claims under Swiss law, Novartis

15

provides two declarations from Felix H. Thomann. (Declaration of Felix H. Thomann dated July 29, 2005 ("Thomann 7/29/05 Decl.") & Supplemental Declaration of Felix H. Thomann dated Aug. 18, 2005 ("Thomann 8/18/05 Decl."), both submitted under Tab 29 of Plaintiffs' Declarations on Foreign Law dated Dec. 30, 2005 ("Pl. Foreign Law Binders")). Mr. Thomann does not directly challenge the basic premise that Swiss law distinguishes between in-house and external counsel with regard to the attorney-client privilege. Instead, he asserts that, as employees, in-house attorneys and patent agents are bound by a secrecy obligation, the violation of which could expose them to sanctions. (Thomann 8/18/05 Decl., ¶ 6 (citing Schweizeriches obligationenreght ("OR") arts. 321a, 398)).

Title Ten of the Swiss Federal Code of Obligations (the "Employment Contract Law") provides as follows:

> In the course of an employment relationship, the <u>employee shall not make use of or inform others of any facts to be kept secret</u>, such as, in particular, manufacturing or business secrets <u>that come to his knowledge while in the employer's service</u>. Also, after termination of the employment relationship, he shall continue to be bound to secrecy to the extent required to safeguard the employer's legitimate interests.

OR art. 321a (internal citations omitted and emphasis added). But this demonstrates, at most, an ethical obligation of secrecy, which, as discussed above, is not identical to an evidentiary privilege of non-disclosure.

Mr. Thomann argues that, under Basel-City Civil Procedure 221.100, § 116, a witness may refuse to testify if testifying would

expose him to "a direct and serious disadvantage."  Mr. Thomann asserts that the risk of sanctions for violating the Employment Contract Law should qualify as such a disadvantage.  (Thomann 7/29/05 Decl. ¶ 4; Thomann 8/18/05 Decl.)  This argument is not supported by any case or statute and cannot prevail.

Article 16 of the Swiss Federal Act of Administrative Procedure, 172.021, art. 16, indicates that the "right to refuse to give testimony is determined by Article 42, Paragraphs 1 and 3 of [the Swiss] Federal Act on Federal Civil Procedure (BZP)" and the "bearer of a professional or trade secret, in the sense of Article 42 Section 2 BZP, may refuse to testify, insofar as another federal law does not require him to testify," but, unfortunately, the plaintiffs did not provide me with a copy of Article 42.

On the topic of the "Right to Refuse Testimony," the plaintiffs did provide an excerpt of the Basel-City Civil Procedure:

> Testimony may be denied by:
>
> 1.  those who would have to speak to their detriment or disgrace in the taking [of the testimony]
>
> 2.  clergy members, doctors, <u>attorneys</u>, notaries, a child's counsel according to Art. 146 ZGB, as well as those contracted by the complaint body (ombudsman), <u>in reference to facts that were learned in the exercise of their profession and which by their nature are to be kept secret</u>.
>
> 3.  members and secretaries of the cantonal arbitration boards for questions of

> discrimination, concerning legal disputes
> negotiated before the arbitration board.

Basel-City Civil Procedure, 221.100, § 116 (emphasis added).  This statute specifies those professionals who may refuse to give testimony (notably including attorneys but not patent agents), rather than providing a blanket protection for all employees covered by the Employment Contract Law.  Had the legislators intended to include all employees within the reach of this provision, they would not have specified particular professionals eligible for the testimonial privilege; similarly, had the drafters understood that all employees might refuse to testify about confidential matters, they would have considered this civil procedure section superfluous.  This statute therefore weakens the plaintiffs' argument that all employees bear the right to refuse to testify concerning business secrets.

Finally, the plaintiffs have argued that the mandatory disclosure of documents is quite limited in civil litigation in Switzerland, and that a Swiss court would not order production of the documents demanded in this litigation.  See, e.g., Basel-City Civil Procedure, 221.100, § 109 (outlining basic requirements of document production).  However, the "contacts" approach to determinations of privilege involving foreign legal professionals does not adopt wholesale the discovery rules and procedures of the foreign jurisdiction.  Its aim is only, as a matter of comity, to recognize a privilege where one has been carved out under the

foreign law. Whether Swiss discovery procedures are generally comparable to those in the United States is not the focus of the analysis: the precise legal question is whether a special evidentiary privilege, comparable to the American attorney-client privilege, has been recognized in Swiss law.

I agree with Novartis that special problems arise when evaluating the attorney-client privilege of foreign jurisdictions whose discovery systems are not comparable to our own. "[T]o apply [foreign] privilege law, or the lack thereof, in a vacuum -- without taking account of the very limited discovery provided in [the foreign jurisdiction's] civil cases -- would offend the very principles of comity that choice-of-law rules were intended to protect." Aktiebolag, 208 F.R.D. at 102. In Aktiebolag, the court determined that, given this problem, and given that many of the documents requested in that case would have been privileged under American law, U.S. law should govern. Id. In this case, however, the absence of privilege results not from the lack of comparability of the Swiss and U.S. legal systems, but from the fact that Swiss law specifically excludes the documents at issue from the privilege it recognizes. Even if I determined that Swiss law provided for an attorney-client and patent agent-client privilege comparable to that in the United States, which I do not, the relevant documents would still be discoverable because the legal professionals involved in their preparation were employees of the client.

For all documents governed by Swiss law, where the legal professional involved was an employee of the client, those documents must be disclosed. These documents are listed in the Appendix to this Order.

    3.  Communications Involving Martin Lutz

The disclosure of five communications is disputed on the basis that Martin Lutz, the attorney-at-law who participated in these communications with the client Sandoz/Novartis, was a director of Proterra, A.G. at the time. (Proterra was an entity controlled by Sandoz, the predecessor of Novartis.) The defendants concede that "[n]ormally, Mr. Lutz' status as outside counsel would be sufficient under Swiss law to confer the existence of a privilege for his communications with his clients," but they argue that "'attorneys in private practice . . . who act as directors in Swiss or foreign corporations cannot call upon the attorney-client privilege for their directorship activities.'" (Ross 2/22/06 Ltr. at 18 (quoting Furter & Kramer, supra, at 67)). The plaintiffs concede that Mr. Lutz had served as inside counsel and director of plaintiff Proterra, A.G. (Declaration of Martin Lutz dated March 16, 2006 ("Lutz Decl."), attached as Exh. 23 to Scambia 3/24/06 Ltr., ¶ 3). However, they contend that Mr. Lutz also represented Sandoz and Novartis as outside counsel, and they argue that Mr. Lutz functioned in this role while engaging in the communications at issue. (Lutz Decl., ¶¶ 3, 17). After in camera inspection, it

appears that the documents do not concern Mr. Lutz's "directorship activities," but rather include legal advice or requests for it. The defendants have provided no argument as to why such materials should not be privileged.  The five documents involving Mr. Lutz are privileged and need not be disclosed.

        B.    <u>Privilege Log Motion</u>

        1.   <u>Communications Between Non-Attorneys</u>

The next category of documents consists of those where the author or recipient is a patent agent or other non-attorney allegedly working at the direction of a licensed U.S. attorney (or at the direction of a patent agent allegedly working at the direction of an attorney).

> [T]he attorney-client privilege is not limited to communications directly between the client and the attorney.  Rather, if the purpose of the communication is to facilitate the rendering of legal services by the attorney, the privilege may also cover communications between the client and his attorney's representative, between the client's representative and the attorney, and between the attorney and his representative.

<u>Golden Trade</u>, 143 F.R.D. at 518.  The Second Circuit has explained that "[w]hat is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer."  <u>United States v. Kovel</u>, 296 F.2d 918, 922 (2d Cir. 1961).

The defendants challenge the assertion of privilege for communications authored or received by the following individuals:

(1) Joseph Borovian, a patent agent registered in the United States and employed by Novartis; (2) Thomas O. McGovern, a patent agent registered in the United States and formerly employed by Novartis or its predecessor; or (3) Linda C. Rothwell, an employee of Novartis or its predecessors.  The defendants also challenge the assertion of privilege for several miscellaneous communications. (Scambia 3/24/06 Ltr. at 30).

a.  <u>Communications Involving Joseph Borovian</u>

In an order dated January 5, 2006, I held that certain documents containing communications to or from Mr. Borovian were privileged because Mr. Borovian was acting under the supervision of counsel at the time of the communications.  I decline to re-examine those findings.  The defendants request disclosure of one additional document involving Mr. Borovian.

Document 652 was written as a collaborative effort among various members of the Novartis Patent and Trademark Department, including attorneys, patent agents, and perhaps others, and was apparently circulated among the members of that department. (Declaration of Thomas Hoxie dated March 21, 2006 ("Hoxie Decl."), attached as Exh. 38 to Scambia 3/24/06 Ltr., ¶ 9).  The document includes handwritten notes by an unidentified author.  The plaintiffs claim both work product immunity and attorney-client privilege for this document.  Novartis asserts that Joseph Borovian, under the supervision of U.S. attorney Thomas Hoxie,

drafted portions of it, and that the other portions were prepared by the client, at Mr. Borovian's or Mr. Hoxie's request, so that they could provide legal advice.

As for the claim of work product immunity, there is no evidence that this document was prepared in anticipation of litigation. In his declaration in support of the plaintiffs' opposition to disclosure, Mr. Hoxie made the general statement that the "purpose of [summaries of patent situations] was to serve as an aid to formulating legal advice and opinions to be provided to Novartis management, as an aid to developing and implementing strategies for patent protection and enforcement, and as a basis for discussions with the responsible attorneys and agents." (Hoxie Decl., ¶ 9). He makes no mention of any anticipated litigation. The communication is "not protected by the work product doctrine simply because an issued patent may give rise to an infringement action." Softview, 2000 WL 351411, at *5. Document 652 is not protected from disclosure by the work product doctrine.

It may, however, still be protected from disclosure by the attorney-client privilege. Communications among non-attorneys in a corporation may be privileged if made at the direction of counsel, to gather information to aid counsel in providing legal services. See Upjohn, 449 U.S. at 396; Cuno, Inc. v. Pall Corp., 121 F.R.D. 198, 203 (E.D.N.Y. 1988); Eutectic Corp. v. Metco, Inc., 61 F.R.D. 35, 39 (E.D.N.Y. 1973). Of course, a document will not

become privileged simply because an attorney recommended its preparation if it contains merely business-related or technical communications between corporate employees; in analyzing communications created at the direction of in-house counsel, courts must be wary that the involvement of the attorney is not being used simply to shield corporate communications from disclosure. Cuno, 121 F.R.D. at 204; P. & B. Marina, 136 F.R.D. at 57-58 (business updates not privileged); Rohm and Haas Co. v. Brotech Corp., 815 F. Supp. 793, 798 (D.C. Del. 1993) (no privilege where scientific lab memorandum copied, but not directed primarily, to patent counsel).

In this case, Mr. Hoxie maintains, as quoted above, that Document 652 was prepared to aid in formulating legal advice and providing legal services. (Hoxie Decl., ¶ 9). The document states on its face that it was "prepared on request of US counsel," and Mr. Hoxie has sworn to the accuracy of this representation. (Hoxie Decl., ¶ 9). The document is therefore privileged regardless of Mr. Borovian's professional title.

However, as explained further in the section below devoted to handwritten annotations, the existence of a privilege for handwritten notes on an otherwise privileged document must be analyzed separately. In the case of Document 652, the plaintiffs' privilege log simply acknowledges that the document "contain[s] handwritten annotations" without providing further information. Given Novartis's burden of establishing all elements of the

privilege, this is of course insufficient.  The handwritten annotations on Document 652 must therefore be disclosed.

          b.  Communications Involving Thomas McGovern

The plaintiffs have also asserted attorney-client privilege for communications authored or received by Thomas McGovern, a United States patent agent whom the plaintiffs allege was at all relevant times directly supervised by a licensed U.S. attorney.  In support of these assertions, the plaintiffs have submitted deposition testimony from three sources -- Mr. McGovern, his direct supervisor prior to January 1993, and the head of the department in which Mr. McGovern was employed -- as well as a declaration from Mr. McGovern's direct supervisor for the period January 1993 to 1996.  (Deposition of Thomas McGovern dated Nov. 10, 2005 ("McGovern 11/10/05 Dep."), attached as Exh. 41 to  Scambia 3/24/06 Ltr.; Deposition of Thomas McGovern dated Nov. 9, 2005 ("McGovern 11/9/05 Dep."), attached as Exh. 42 to Scambia 3/24/06 Ltr.; Declaration of Melvyn M. Kassenoff dated March 20, 2006 ("Kassenoff Decl."), attached as Exh. 43 to Scambia 3/24/06 Ltr.; Deposition of Gerald Sharkin dated Dec. 5, 2005 ("Sharkin Dep."), attached as Exh. 44 to Scambia 3/24/06 Ltr.; Deposition of Robert Honor dated Jan. 5, 2006 ("Honor Dep."), attached as Exh. 45 to Scambia 3/24/06 Ltr.).  The plaintiffs' allegations that Mr. McGovern was directly supervised by an attorney deserve particular scrutiny because the plaintiffs  previously claimed, erroneously, that Mr. McGovern was

the attorney whose participation provided the basis for the privilege. (Plaintiffs' Novartis Pharmaceuticals Corp., et al. Log of Privileged Documents dated June 30, 2005, attached as Exh. 3 to Scambia 12/9/05 Ltr. at 3; U.S. and Foreign Attorneys, Patent Attorneys, and Patent Agents Associated with Novartis EXELON Products, attached as Exh. 1 to Declaration of Patrick Crawley dated Jan. 20, 2006 ("Crawley 1/20/06 Decl."); Scambia 12/9/05 Ltr., at 4 n.5).

During his employment in the pharmaceutical group of the Sandoz/Novartis patent department, Mr. McGovern was supervised by licensed U.S. attorneys Gerald Sharkin, Robert Honor, and Melvyn Kassenoff. During Mr. McGovern's early years at Sandoz, Mr. Sharkin served as the head of the department, while Mr. Honor and Mr. Kassennoff led distinct groups within it. During that period, Mr. Honor functioned as Mr. McGovern's direct supervisor. (McGovern 11/9/05 Dep. at 30). In January 1993, Mr. Sharkin retired, and Mr. Honor replaced him as department head. (McGovern 11/9/05 Dep. at 30; Kassenoff Decl., ¶ 7). Mr. Kassenoff then took over Mr. Honor's division and assumed responsibility for supervising Mr. McGovern. (McGovern 11/9/05 Dep. at 30; Kassenoff Decl., ¶ 7). Mr. McGovern testified in his deposition that he could not recall when these personnel changes were made and could not confirm which attorney supervised him with regard to every communication, but he maintained that all of his patent prosecution

work was supervised, and that, as a matter of policy, all of his written communications with the client were reviewed by the attorneys. (McGovern 11/9/05 Dep. at 29-32; McGovern 11/10/05 Dep. at 148).[5]

Melvyn Kassenoff has submitted a declaration indicating that he is a licensed attorney who has been employed with Sandoz/Novartis since the early 1970's. He explains that from January 1993 to 1996 he maintained responsibility for the supervision of patent work, including Mr. McGovern's activities with respect to the prosecution of applications leading to U.S. Patent Letters No. 5,602,176 (the "'176 patent"), one of the two patents at issue in this litigation. (Kassenoff Decl., ¶¶ 7, 10). Mr. Kassenoff further declares that he has reviewed all relevant documents from the period of January 1993 to 1996 and that he directly supervised Mr. McGovern's work with respect to those communications. (Kassenoff Decl., ¶ 10). Mr. Kassenoff adds that Robert Honor served as Mr. McGovern's direct supervisor prior to Mr. Kassenoff's tenure and that Mr. Honor would have provided the same level of supervision.

Mr. Honor confirmed at his deposition that, when he served as

---

[5] The plaintiffs have not submitted evidence that Mr. Sharkin directly supervised Mr. McGovern's work. Mr. Sharkin testified at his deposition that his supervision of patent prosecution consisted of making himself available to supervisory attorneys and those reporting to such attorneys, should a problem or question arise. He admitted that the primary responsibility for supervision fell to the supervisory attorneys. (Sharkin Dep. at 47).

a vice president of the patent department, he supervised Mr. McGovern, among others.  He admitted that Mr. McGovern did not seek supervision every time he communicated with the client or with the patent examiner (Honor Dep. at 63-64) but maintained that, as a general matter, the two worked together on such matters, and he characterized the tasks Mr. McGovern may have completed without direct supervision as "simple, little things."  (Honor Dep. at 65).

As I discussed in the Order of January 5, 2006, concerning the supervision of Joseph Borovian, supervision of a patent agent does not necessitate the attorney observing and approving every minute aspect of the work completed by the agent.  Where the agent has developed a familiarity with both the patent application process in general and the inventor in particular, it makes sense for an agent to take responsibility for gathering information from the client without involving the attorney every step of the way.  I am satisfied that Mr. McGovern  was supervised by an attorney during his participation in the communications at issue, with exceptions identified below.  Individual rulings for the documents involving Mr. McGovern are listed in the Appendix to this Order.

The majority of the documents described by both parties as "McGovern Documents," were the subject of additional objections by the defendants, because they were draft documents, notes written to "File," or handwritten notes overlaid on top of other documents. All three of these categories will be discussed further below, in

sections specifically devoted to each topic, and the rulings will be listed in those categories.

There are a few miscellaneous McGovern Documents. Document 651 includes a redaction for relevance on the first page. This material is appropriately redacted and may be withheld because it concerns inventions unrelated to the subject matter of this litigation. Document 745 is privileged except for the handwritten notes, which have not been translated into English, cannot be analyzed, and therefore must be produced. See Aktiebolag, 208 F.R.D. at 106. Document 616 concerns media and business matters, not legal advice, and therefore this communication must be disclosed. See Burroughs Wellcome, 143 F.R.D. at 619 ("The business decision whether to pursue a patent is distinct from the legal advice concerning how to obtain the best patent protection; handling publicity and dealing with the media are typically business concerns.").

Finally, there is a group of documents not listed by either side as "McGovern Documents" yet described in the plaintiffs' privilege log as privileged due to the involvement of Mr. McGovern. Where there is sufficient evidence that Mr. McGovern was directly supervised by an attorney, those documents are privileged. However, in some cases, the plaintiffs' supplementary submissions list R. Laughlin, a U.S. attorney, as a participant in the communications, either in addition to or instead of Mr. McGovern,

but there is no evidence of Mr. Laughlin's participation in the communications, nor of his taking any role in supervising Mr. McGovern's work.  For those documents where no further information is provided, particularly because Mr. Laughlin was not mentioned until after the plaintiffs admitted that Mr. McGovern is a patent agent rather than an attorney, the plaintiffs have not met their evidentiary burden and no privilege can be found.  These communications are included in the Miscellaneous section of the Appendix to this Order.

### c. Communications Supervised By a Non-Attorney

The plaintiffs have asserted attorney-client privilege for 12 communications involving Linda Rothwell ("Rothwell Documents"), another non-attorney employee of Novartis and its predecessors, whom the plaintiffs claim was directly supervised by a licensed U.S. attorney or a patent agent.  Ms. Rothwell has submitted a declaration in which she explains that she has occupied various positions in the Novartis/Sandoz patent department, including records clerk, patent administrator, docketing administrator, and head of the mail date group.  (Declaration of Linda C. Rothwell dated March 23, 2006 ("Rothwell Decl."), attached as Exh. 46 to Scambia 3/24/06 Ltr.).  Although she is neither an attorney nor a patent agent, if her work was directly supervised by an attorney, regardless of her title, her communications with clients may be covered by the attorney-client privilege.

Ms. Rothwell explains that during the period when the Rothwell Documents were produced, her work was reviewed by patent agent Thomas McGovern. (Rothwell Decl., ¶ 13). More specifically, she states that "[d]uring this time, I believe that <u>the</u> Sandoz legal professional in the U.S. responsible for these applications was Thomas McGovern." (Rothwell Decl., ¶ 12) (emphasis added). The plaintiffs allege that to the extent Ms. Rothwell was supervised by Thomas McGovern, Mr. McGovern was supervised by Mr. Honor or Mr. Kassenoff. (Scambia 3/24/06 Ltr. at 29-30). However, Ms. Rothwell makes no mention of either Mr. Honor or Mr. Kassenoff, and her recollection that Mr. McGovern was "<u>the</u> Sandoz legal professional . . . responsible for these applications" belies the assertion that any U.S. attorney supervised her work, or that of Mr. McGovern, with the closeness required to substantiate a claim of privilege for the Rothwell Documents. Even if I were to agree with the plaintiffs' assumption that the attorney-client privilege can apply to communications where the supervision by the attorney is one level removed from the individual communicating with the client, in this instance, the plaintiffs have not sustained their burden of showing that this was the case. All of the Rothwell Documents must be disclosed.

The plaintiffs have also claimed attorney-client protection for a document identified by number 966. The legal professional whose involvement allegedly gives rise to the privilege for this

communication is described as "A. Koehler, U.S. Patent Administrative Assistant operating under direction of U.S. attorney and/or U.S. Patent Agent who in turn was operating under direction of U.S. attorney." (Declaration of Patrick Crawley dated March 21, 2006 ("Crawley 3/21/06 Decl."), attached as Exh. 47 to Scambia 3/24/06 Ltr., ¶ 23). The plaintiffs assert that the client sought legal advice "from one of the responsible legal professionals" through A. Koehler. (Crawley 3/21/06 Decl., ¶ 24). As with the Rothwell Documents, the plaintiffs are correct that communications between a client and a non-attorney reporting to an attorney may be privileged; however, the plaintiffs have failed to meet their evidentiary burden in this instance. Mr. Crawley admits that he "do[es] not know the particular U.S. legal professional to whom this was directed" but insists that "the request was made to obtain the advice of a U.S. attorney or U.S. patent agent working at the direction of an attorney." (Crawley 3/21/06 Decl., ¶ 24). He has demonstrated no basis for his assertion, particularly with respect to the direct supervision of the unnamed patent agent by an unnamed attorney. Document 966 must be disclosed.

2. <u>Documents Addressed to "File"</u>

The plaintiffs claim attorney-client privilege for a number of documents whose recipients the plaintiffs describe as the files of the author. The plaintiffs contend that although these documents may not themselves constitute communications, they reflect and

record previous or contemporaneous privileged communications.

A memorandum to a file may be protected where it records a confidential attorney-client communication. See, e.g., Colton v. United States, 306 F.2d 633, 639 (2d Cir. 1962); Note Funding Corp. v. Bobian Investment Co., No. 93 Civ. 7427, 1995 WL 662402, at *7 (S.D.N.Y. Nov. 9, 1995); Polycast Technology Corp. v. Uniroyal, Inc., 125 F.R.D. 47, 49 (S.D.N.Y. 1989); SCM Corp. v. Xerox Corp., 70 F.R.D. 508, 523 (D. Conn. 1976). While the plaintiffs' privilege log may not have in all instances provided adequate information to illustrate the propriety of the privilege assertion, the text of some of the documents has revealed they were in fact created to record privileged communications. Nevertheless, although the documents themselves need not be communications to deserve the protection of the attorney-client privilege, the plaintiffs retain the burden of establishing all elements of the privilege's applicability to any underlying communication, and where the plaintiffs have failed to meet that burden, no privilege could be found. There is no such evidence for a number of documents, and the Appendix lists those that must be disclosed.

### 3. Documents Where Legal Professional Not Specified

The plaintiffs claim attorney-client privilege for a number of documents for which the plaintiffs have listed a department as the legal professional whose involvement gives rise to the privilege. The obvious problem with these documents is that only

communications with attorneys and those working under their direct supervision are entitled to the attorney-client privilege. Without information identifying the individuals involved in the particular communications, it is impossible for the plaintiffs to meet their burden of establishing the "attorney" element of the attorney-client privilege. See, e.g., In re Derienzo, Nos. 5-96-01186, 5-96-00248A, 5-96-01220, 5-46-00254A, 5-96-00789, 5-96-00270A, 5-96-00938, 5-96-00266A, 1998 WL 283201, at *7 (M.D. Pa. April 28, 1998) (attorney-client privilege unavailable where documents' authors were unknown).

I recognize the difficulties facing the plaintiffs in attempting to trace the long history of the voluminous documents at issue, but without further information there is no way for a court to evaluate the documents, and no privilege can be upheld. The attorney-client privilege is an exception to the general presumption of disclosure, and protecting the privileged status of documents therefore requires, among other things, drafting them in such a way that a court will be able assess the applicability of a privilege claim even when a dispute arises two decades after the communication.

The case of A.I.A. Holdings, 2002 WL 31385824, at *3-6, cited by the plaintiffs for the proposition that the failure to identify specific professionals within a department should not be fatal to a claim of privilege, in fact held that the level of detail

required in response to a motion to compel is higher than that required to satisfy Rule 26(b)(5) of the Federal Rules of Civil Procedure and Local Civil Rule 26.2.  This approach "properly allocates the burden of proof and saves the Court and the parties from having to address any elements of a privilege or protection that are not in dispute." Id. at *6.

> For example, one element of the attorney-client privilege is that the "attorney" must actually be admitted to the bar of a state or federal court . . . . Nevertheless, neither Fed. R. Civ. P. 26(b)(5) nor Local Civil Rule 26.2 require[s] an allegation of specific facts establishing an attorney's admission to the bar at the time of the allegedly privileged communication.

Id. at *4.  However, as the court explained,

> If the assertions of privilege are challenged . . ., the withholding party then has to submit evidence, by way of affidavit, deposition testimony or otherwise, establishing . . . the challenged elements of the applicable privilege or protection, with the ultimate burden or proof resting with the party asserting the privilege or protection.

Id. at *5. Contrary to the plaintiffs' interpretation of AIA Holdings, the court there specifically emphasized that after a privilege has been challenged, the party seeking to assert it must demonstrate the factual premises for any and all challenged elements.  Id. at *6.

The plaintiffs also cite U.S. Information Systems, Inc. v. International Brotherhood of Electrical Workers, No. 00 Civ. 4763, 2002 WL 31093619 (S.D.N.Y. Sept. 17, 2002), for the proposition that the failure to identify specific professionals within a

department should not be fatal to a claim of privilege. (Scambia 3/24/06 Ltr. at 37). <u>U.S. Information Systems</u> concerned the adequacy of a privilege log under Local Civil Rule 26.2(a)(2)(A). In that case, the entry at issue described a document sent from a corporate client to its attorney, but the party asserting the privilege represented that it could not ascertain the identity of the individual client representative who authored the document. Although the name of the corporate employee was unavailable, I found that "no relief [was] warranted with respect to the form of [the] privilege log." <u>Id.</u> at *1.

In this litigation, not only have the plaintiffs claimed attorney-client privilege for documents without identifying the relevant employees of the client corporation, but they have also failed to clarify whether the communications involved any attorney. Without identifying the legal professional whose participation gives rise to the privilege claim, the plaintiffs cannot sustain their burden of establishing that the relevant individual is of a status that qualifies for the protection of the attorney-client privilege. The qualifications of the relevant legal professionals have specifically been challenged by the defendants in a their motions to compel, and the plaintiffs have admitted that misrepresentations were made in their original privilege log. The plaintiffs were given the opportunity to submit a revised log, as well as to submit any additional supporting evidence. <u>See, e.g.,</u>

Johnson Matthey, Inc v. Research Corp, No. 01 Civ. 8115, 2002 WL
31235717, at *3 ("[W]here the information in the log is
insufficient to establish a factual basis for the privilege, the
proponent of the privilege bears the burden of showing its
applicability, a gap which often is filled through an affidavit or
deposition testimony."). Nothing they have submitted has satisfied
their burden of establishing the "attorney" element of the
attorney-client privilege since they have not specified, and
apparently cannot specify, who was involved in the communications
at issue. Because the information regarding these documents in
insufficient, no privilege can be found, and all of these documents
must be disclosed.

4.   Handwritten Notes or Marginalia

The plaintiffs claim attorney-client privilege for a number of
communications made up of handwritten notes in the margins of other
texts.[6] Comparable to attachments, each set of notes or marginalia
must be analyzed separately from the materials underlying it. See
Strougo v. BEA Associates, 199 F.R.D. 515, 525 (S.D.N.Y. 2001);
Mold-Masters Ltd. v. Husky Injection Molding Systems Ltd., No. 01
C 1576, 2001 WL 1558303, *14 (N.D. Ill. Dec. 6, 2001). If the law
were otherwise, one could make any communication privileged by

---

[6] Upon in camera inspection, it became apparent that some of
the documents described in the privilege log as handwritten notes
are simply communications written by hand but not written on top of
other, pre-existing documents. Rulings on these communications are
also included in the Appendix to this Order.

superimposing it onto a privileged document or inserting privileged notes into its margins.  The plaintiffs quote In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 806 (Fed. Cir. 2000), noting that the court "[did] 'not consider that it is necessary to dissect the document to separately evaluate each of its components.'" (Scambia 3/24/06 Ltr. at 39 (quoting Spalding, 203 F.3d at 806)).  The plaintiffs take this quotation out of context and misrepresent its meaning.  In the cited section of the Spalding decision, the court was addressing an invention record and whether to separate a list of prior art from the remainder of the document.  Id. at 806.  The subject of the court's consideration was the text within one document, not separate communications made at different times potentially by different authors to different recipients.

I have reviewed the documents at issue to assess the privilege claims for each set of handwritten notes.  To the extent that an author or recipient was not identified, my inquiry necessarily ended, and those communications must be disclosed.  However, where the plaintiff made an educated guess but was unable to identify the participants with certainty, I examined the documents and other materials submitted in support of those identities and determined whether the identities had been established by a preponderance of the evidence.  The rulings for all documents containing handwritten notes are listed in the Appendix to this Order.

### 5. Documents Where No Date Information is Available

The plaintiffs claim attorney-client privilege for a number of documents whose dates they represent to be unavailable. The defendants have made a blanket objection to the withholding of any undated documents. The date of a communication would be significant if, at the time of the communication, either: (1) there was no attorney-client relationship because the attorney had not yet been retained, or (2) the attorney was not a qualified member of the bar (or, in the case of foreign legal professionals, not suitably licensed). As for the former, it seems highly unlikely that the relevant attorneys had not yet been retained but were responding to the plaintiffs' requests for patent advice. As for the latter, although the attorney-client privilege requires that the attorney be licensed at the time of the relevant communications, as discussed in AIA Holdings, 2002 WL 31385824, such admission information need not be supplied unless and until the authority of the attorney has been challenged. Id. at *4. The defendants have raised no concerns regarding the qualifications of any particular legal professional, nor have they provided any factual support for their sweeping objections. The plaintiffs may withhold undated documents not otherwise required to be produced.

### 6. Draft Documents

The plaintiffs assert attorney-client privilege protection for many documents listed as "draft documents". These include draft

patent applications, amendments, supporting declarations, and other materials.  To some extent, the plaintiffs assert that drafts are automatically entitled to attorney-client privilege.  The defendants counter that, absent specific evidence to the contrary, a draft cannot qualify as a communication, and this is fatal to any claim of attorney-client privilege.

Outside of the context of patent litigation, discovery issues arise with respect to draft contracts, settlement agreements, affidavits, legal briefs, and other papers.  Many of these cases concern the work product doctrine instead of, or in addition to, the attorney-client privilege.  See, e.g., Renner v. Chase Manhattan Bank, No. 98 Civ. 926, 2001 WL 1356192 (S.D.N.Y Nov. 2, 2001); Sequa Corp v. Gelmin, No. 01 Civ. 8675, 1993 WL 276081 (S.D.N.Y. July 16, 1993); A.F.L. Falck, S.p.A v. E.A. Karay, Co., 131 F.R.D. 46 (S.D.N.Y. 1990). In patent matters, the work product doctrine is less likely to be applicable, because the drafts of patent applications, unlike draft legal memoranda, are generally prepared prior to any expectation of litigation.

To be privileged, a draft patent application, like any other document, must be a communication between an attorney and a client, which was created by the client or the attorney for the purpose of obtaining or providing legal advice or services, and which was intended to be confidential.  In Softview, 2000 WL 351411, at *17, the court ruled that draft patent applications are generally

privileged. Although <u>Softview</u> contradicted earlier decisions reaching the opposite conclusion, <u>see</u> <u>Stryker Corp. v. Intermedics Orthopedics, Inc.</u>, 145 F.R.D. 298, 304 (E.D.N.Y. 1992) (draft contains no request for advice); <u>Saxholm AS v. Dynal, Inc.</u>, 164 F.R.D. 331, 337 (E.D.N.Y. 1996), the court noted that the earlier cases were predicated on the subsequently rejected proposition that a patent attorney's services are not purely or primarily legal. <u>Softview</u>, 2000 WL 351411, at *17 (collecting cases, discussing implications of <u>Spalding</u>, 203 F.3d 803, and ruling that draft patent applications are privileged); <u>see</u> <u>Spalding</u>, 203 F.3d 805 (ruling that invention record submitted to in-house counsel for purpose of obtaining patentability determination was privileged communication "made for the purpose of obtaining legal advice").

The previous cases also rested on a narrower conception of the attorney-client privilege than courts have since adopted. Although the attorney-client privilege in the United States has historically been defined as a privilege for communications in which the client reveals information to the attorney (in confidence for the purpose of obtaining advice), courts today generally recognize that the privilege also applies to the attorney's advice to the client, to the extent that it reflects the client's confidential communications to the attorney. <u>See</u> Paul R. Rice, <u>Attorney-Client Privilege: Continuing Confusion about Attorney Communications, Drafts, Pre-Existing Documents, and the Source of the Facts</u>

Communicated, 48 Am. U. L. Rev. 967, 1005 (June 1999); see also

McCook Metals L.L.C. v. Alcoa Inc., 192 F.R.D. 242, 253 (N.D. Ill.

2000) ("A draft necessarily reflects the communications between a

client and his attorney as the attorney attempts to put forth the

invention in the best light possible to protect a client's legal

right.  A patent draft implicitly contains the legal opinion and

advice of the attorney regarding the wording of technical

specifications, claims, and prior art, and whether an item is

included, all of which are necessary to secure a legal claim for

the client.").  While the court in Saxholm, 164 F.R.D. at 336,

found that "once the information received from a client has been

distilled and shaped by an attorney for inclusion in the attorney's

draft patent application, it has lost its character as a

communication from the client," it seems an impossible task to

determine at what point in the back and forth exchange of ideas the

attorney-client privilege dissolves.  Moreover, the very purpose of

the attorney-client privilege is to encourage such exchanges;

aborting the communications at an arbitrary point would undermine

that purpose.

The attorney-client privilege therefore generally applies to

draft patent applications, amendments, and supporting affidavits,[7]

---

[7]  With respect to the affidavits, I note that this ruling is
limited to the client's affidavits and does not include affidavits
to be signed by, or based upon information from, a non-party
employed by the client.  More generally, this ruling is limited to
patent application drafts, not the final versions; any attorney-

unless the privilege is waived.  The draft materials are privileged, with any exceptions listed in the Appendix.

### 7. Irrelevant Material

The plaintiffs have asserted relevance objections to the disclosure of several documents or portions of documents.  To the extent that the plaintiffs have redacted information regarding chemical compounds that do not include or relate to rivastigmine tartrate, those redactions are appropriate, as that information does not "appear[] reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  All other relevance objections are without merit.

### C.  Categorical Log of Foreign Patent Prosecution Documents

Under Rule 26(b)(5) of the Federal Rules of Civil Procedure, a party withholding documents on the basis of an asserted privilege must describe the nature of the documents with enough detail to "enable other parties to assess the applicability of the privilege."  See also United States v. Construction Products Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996) (descriptions lacking details to support privilege claim are inadequate); A.I.A. Holdings, 2002 WL 31385824, at *5 (requirements of Rule 26(b)(5) function to ensure that "a party challenging an assertion of privilege is given the information necessary to state the grounds

_____

client privilege for the final versions would have been waived upon filing.

of its challenge and is not left to guess at the nature of what's being withheld and why"); <u>Bowne of New York City, Inc. v. Ambase Corp.</u>, 150 F.R.D. 465, 474 (S.D.N.Y. 1993)(privilege log must give sufficient detail "to permit a judgment as to whether the document is at least potentially protected from disclosure").

In this Court, Local Civil Rule 26.2 specifically requires that "[w]here a claim of privilege is asserted in objecting to any means of discovery or disclosure," in addition to identifying the nature of the privilege,

> The following information shall be provided in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information:
>
> (A) For documents: (i) the type of document, <u>e.g.</u>, letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients, to each other.

Local Civil Rule 26.2.

This information is typically provided in an itemized privilege log, with supplementary submissions filling in any gaps in the factual bases for the privileges asserted. <u>See, e.g.</u>, <u>AIA Holdings</u>, 2002 WL 31385824, at *4-5. As explained in the introductory section of this order, I previously granted the plaintiffs' request to submit a categorical log for the foreign

prosecutions documents, but I specifically ruled that if I were to find any categorical justification inadequate, all documents within that category would be ordered produced.  A categorical log may be used where "(a) a document-by-document listing would be unduly burdensome and (b) the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the privilege claim is well-grounded." Securities and Exchange Commission v. Thrasher, No. 92 Civ. 6987, 1996 WL 125661, at *1 (S.D.N.Y. March 20, 1996). However, in this case, a more detailed log would be not only of a material benefit to the defendants, but, in fact, it would be absolutely necessary for them to assess many of the plaintiffs' claims.  The vast majority of the categorical justifications provided by the plaintiffs are inadequate, and, as explained below, all corresponding documents must be produced in their entirety.[8]

1.  Australia

Categorical log entries 1 and 40 refer to confidential communications between clients and "Australian patent agents and/or Australian law firms," among others, concerning "patent prosecution . . . and protection for [the] Australian equivalent to [the] '807 patent."  The defendants concede that Australian law recognizes an attorney-client privilege, at least with respect to attorneys, and

_____

[8]  The rulings in this decision are based on the plaintiffs' revised categorical privilege log  ("categorical log"), submitted as Exhibit 3 to the Scambia Letter of December 30, 2005).

the plaintiffs have provided some information regarding a privilege for patent attorneys (also called patent agents), but none of the materials on Australian privilege law apply to law firms generally. To the extent that the legal professionals involved were not patent attorneys, the plaintiffs have not sustained their burden of demonstrating any applicable privilege.

It may be that documents were sent to the law firm and were, as a matter of practice and policy, automatically directed to a particular attorney. It may be that documents that appear to have been sent by the law firm with no individual identified were in fact generated by an attorney. It may be that the documents were sent to or from an individual working under the direct supervision of an attorney. Any of these scenarios might be sufficient for the communications at issue to be governed by the attorney-client privilege. However, the plaintiffs have provided no explanatory affirmation regarding the circumstances of communications within the law firm or between the firm and its clients. Given that the plaintiffs bear the burden of establishing all elements of the attorney-client privilege, I cannot find a privilege to exist based upon the submissions in the record.

As discussed above in the section of this opinion devoted exclusively to the plaintiffs' failure to identify specific legal professionals, such information is critical. Particularly after a motion to compel, submissions lacking the detail necessary to

support the privilege claims are inadequate.  Because categorical log entries 1 and 40 do not provide the information necessary for the defendants to assess the basis for the plaintiffs' assertion of privilege, the entries are inadequate, and all documents they describe must be produced.

### 2.  Austria

Categorical log entries 2 and 41 refer to confidential communications in which the relevant legal professional is described as "Austrian patent agent and/or Austrian law firms," among others.  The plaintiffs have provided some evidence of a privilege for patent attorneys, but none of the information submitted applies to law firms generally.  To the extent that the legal professionals involved were not patent attorneys, the plaintiffs have not sustained their burden of demonstrating any applicable privilege.  To the extent that the legal professionals involved were actually patent attorneys, the categorical log entry does not make this clear and in fact suggests otherwise. Categorical log entries 2 and 41 are inadequate, and all documents they describe must be produced.

### 3.  Belgium

Categorical log entry 3 describes the documents that it includes as follows:

> Confidential communications between Proterra and Novartis, or its predecessor in interest Sandoz reflecting legal advice, or between European Patent Attorney for Proterra (G. Spott) and/or German law

> firm of European Patent Attorney (G. Spott) and
> Belgian patent agent and/or Belgian law firm, or
> between European Patent Attorney (G. Spott) and
> client (Proterra) reflecting legal advice,
> concerning patent prosecution and SPC protection
> for Belgian equivalent to '807 patent.

Categorical log entry 3 suffers from a problem common to many of the plaintiffs' categorical log entries. Like entries 1, 2, 40, and 41, all discussed above, entry 3 leaves the alleged basis for the assertion of privilege uncertain. This puts the defendants in the position of being unable to raise objections intelligently. As an example, which will appear in a number of entries discussed below, to the extent that privilege laws may apply to communications with attorneys but to not those with patent agents, listing "attorneys or patent agents" as authors or recipients of communications makes it impossible for the defendants to determine whether to object. Further, because the plaintiffs' typical log entry includes not just one set of alternative participants but instead is written as a string of alternatives, as in category 3, even if the defendants choose to object, they cannot assess on what basis they should do so.

This predicament, created entirely by the wording of the plaintiffs' log, results in unnecessary work for both the defendants and the Court. The defendants should not be required to research and brief the privilege laws applicable to the many hypothetical combinations of authors and recipients described in

the plaintiffs' categorical log, particularly given that this would force the defendants to devote time and pages to claims that the plaintiffs may not actually intend to raise. Such an endeavor is enormously wasteful. The reason the plaintiffs were permitted to provide a categorical privilege log, instead of the traditional itemized log, was to further the interest of saving time and effort. However, the plaintiffs have chosen to design a log that impedes that goal and is largely inadequate. Categorical log entry 3 is insufficient because the references to Belgian legal professionals describe the professionals as "Belgian patent agent and/or Belgian law firm." Similarly, categorical log entry 42 refers to communications in which the relevant legal professional is described as "Belgian law firm (Bureau Vander Haeghen)." The plaintiffs have provided information regarding the confidentiality obligations of Belgian attorneys (avocats), and other, still weaker, support for the argument that patent agents (also referred to as Europan Patent Attorneys or EPAs) are similarly bound, but they present no argument, let alone evidence, regarding an evidentiary privilege that applies to law firms generally. Even if I found that the plaintiffs had sustained their burden with respect to demonstrating a privilege applicable to communications involving Belgian avocats or EPAS, which I have not and based on the evidence before me would not, to the extent that the legal professionals at the relevant law firms were not identifiable as qualified

individuals, no applicable privilege would lie.  In any case, categorical log entries 3 and 42 muddle these issues and are inadequate.  All documents in categories 3 and 42 must be produced.

     4.   <u>Botswana</u>

Categorical log entries 4 and 43 refer to communications between the client and  G. Erlank, a South African attorney and patent agent, or Adams & Adams, the firm in which G. Erlank is employed.   There is no evidence of a privilege applicable to entire law firms under the laws of Botswana, so the categorical entries are inadequate and all relevant documents must be produced.

     5.   <u>Brazil</u>

Categorical log entry 5 refers to communications between the plaintiffs "and Brazilian patent agents reflecting legal advice concerning prosecution, renewal, extension and pipeline protection of Brazilian equivalent of the '807 patent." In support of their privilege claims under Brazilian law, the plaintiffs submit the declaration of Hélio Fabbri Jr., a lawyer in Brazil. (Declaration of  Hélio Fabbri Jr. dated Dec. 20, 2005 ("Fabbri Decl."), submitted as Tab 5 of Pl. Foreign Law Binders).  Attached to Mr. Fabbri's declaration are copies of the relevant statutory provisions, with English translations.  According to Mr. Fabbri, not only does Brazilian law impose a confidentiality obligation on attorneys and patent agents (also referred to as intellectual property agents in Brazil), but it also creates a testimonial

privilege that "may be invoked to prevent disclosure or discovery in court proceedings of any kind." (Fabbri Decl. at 2). Mr. Fabri asserts that "the laws of Brazil promise confidentiality to communications between a patent agent and client[,] and civil courts in this jurisdiction may not compel the disclosure or production of any such communication." The Brazilian Ethical Code of Intellectual Property Agents, Section 13, expressly provides the following testimonial privilege:

> The Intellectual Property Agent must keep secrecy of what he/she knows due to his/her job, with the right to refuse to testify as a witness . . . about fact[s] related to a person of whom he/she is or has been intellectual property agent, even if authorized or requested by the client.

Although Mr. Fabri does not cite any Brazilian law that specifically addresses document production, the defendants have submitted no evidence to contradict Mr. Fabri's representations, and I will accept for purposes of assessing category 5 that confidential communications between Brazilian patent agents and their clients are deserving of the same privileged status as those between clients and attorneys in the United States. The individual rulings for the documents in categorical log entry 5 are listed in the Appendix to this order.

Categorical log entry 44 refers to communications between the client and "Brazilian patent agents and/or Brazilian patent agent firm." There is no evidence of a privilege applicable to entire patent firms under the laws of Brazil, so categorical entry 44 is

inadequate and all relevant documents must be produced.

         6.   The Czech Republic

Categorical log entry 48 describes confidential communications between the client and "Czech patent agents and/or attorneys and/or Czech attorney and patent agent firm (Traplova & Partners) concerning prosecution and pipeline protection for Czech Republic equivalent of '176 patent."  Although this somewhat convoluted description appears to suffer from the same infirmity as the other entries with strings of unidentified authors or recipients, in fact entry 48 is adequate because in Czech law, the distinction between patent agents, attorneys, and other individuals employed in a patent law firm is irrelevant for the purposes of assessing privilege.

In support of their assertion of privilege under Czech law, the plaintiffs have provided a declaration from Tereza Hrabáková, an attorney admitted to the Czech Bar Association, as well as excerpts of the relevant statutory provisions, with English translations.  (Declaration of Tereza Hrabáková dated Dec. 20,2005 ("Hrabáková Decl."), submitted as Tab 7 of Pl. Decls. Binders).  To the extent that the excerpts of the statutes are not the most current versions, Ms. Hrabáková declares that they are effectively the same.

According to the plaintiffs' uncontradicted evidence, under Czech law, attorneys at law, patent agents (also referred to as

patent attorneys), and "the persons employed in labor or another similar relation by the patent attorney or the society" ("patent employees"), among others, possess a duty of confidentiality that generally must be respected in civil litigation. (Hrabáková Decl. at 1-5; Law No. 417/2004 Coll., on the Legal Profession ("Czech Legal Profession Law"), § 21, ¶ 1; Law No. 417/2004 Coll., on Patent Attorneys ("Czech Patent Attorney Law"), § 36, ¶¶ 1 & 5(a)). The only exception in which the confidentiality obligation would be lifted in connection with court proceedings is where the dispute involves the legal professional personally. (Czech Legal Profession Law § 21, ¶ 4; Czech Patent Attorney Law § 36, ¶ 4). That the relevant statutes list this exception suggests that the obligation is enforceable in civil court proceedings. Further, the statutes provide that the "confidentiality liability may be lifted only by client, or [after his death by his legal successor,]" and do not mention any judicial authority to do so. (Czech Legal Profession Law § 21, ¶ 2; Czech Patent Attorney Law § 36, ¶ 1).

Finally, the Czech Civil Procedure Code addresses the evidentiary implications of confidentiality obligations:

> The evidence must be carried out so that the obligation to maintain confidentiality related to classified matters protected by a special law, and other obligation[s] of confidentiality stipulated by law or recognized by the state, is observed. In these cases, examination may be carried out only when the examined has been relieved from his obligation by the appropriate body or by the subject, in the interest of which the obligation of confidentiality exists; this applies appropriately also to cases where another evidence than examination is

carried out.

Law No. 99/1963, Civil Procedure Code, as amended, § 124.  It does not appear that any body has the authority to waive the legal professional's confidentiality obligation; thus this privilege rests completely with the client.  The defendants have provided no evidence to contradict that submitted by the plaintiffs, and so for the purposes of adjudicating categorical privilege log entry 48, communications between the plaintiffs and Czech attorneys, patent agents, and employees of patent firms deserve the same protection as communications with their U.S. attorneys.  The individual rulings for the documents in categorical log entry 48 are listed in the Appendix.

       7.  Cyprus

Categorical log entry 7 describes confidential communications between the client and a European Patent Agent concerning legal advice.  The log does not indicate the source of the advice, but if the defendants, in reading the log, were to give the plaintiffs the benefit of the doubt, the defendants might assume that a Cypriot attorney provided the advice (in the context of a confidential communication).  Although no declaration or other evidence is provided on that point, counsel for the plaintiffs represent that the advice does come from a Cypriot attorney.  (Scambia 12/30/05 Ltr. at 6).  However, no Cypriot attorney is mentioned in the privilege log, nor in the plaintiff's list of foreign legal

54

professionals. (See Legal Professionals Relating to Plaintiffs'
Foreign Prosecution Documents ("Plaintiffs' List of Foreign Legal
Professionals"), attached as Exh. 4 to Crawley 1/20/06 Decl.).
Upon in camera inspection of the materials within category 7, a
process I had hoped might shed light on the situation and reveal
the name of the Cypriot attorney, it immediately became apparent
that no evidence of such attorney has been submitted.  The only
document within category 7 is a letter from a German patent agent
to his client, making absolutely no reference to any attorney from
Cyprus or elsewhere.  That document must be disclosed.

      8.   Denmark

     The plaintiffs' privilege log entry 8 refers to communications
between the client and "Danish patent agents and/or European Patent
Attorneys and/or Danish patent agent and European Patent Attorney
firm." Categorical log entry 49 describes communications involving
the client and "Danish patent agent and/or Danish patent agent and
European Attorney firm."  The plaintiffs have submitted some
information concerning a privilege for attorneys and their
assistants, but there is no evidence that the patent agents or
other firm employees involved in the communications at issue were
assistants to attorneys.  To the extent the legal professionals
involved in the relevant communications were neither attorneys nor
their assistants, the plaintiffs have not sustained their burden of
demonstrating any applicable privilege.  To the extent that the

legal professionals involved were attorneys or their assistants, the categorical log entry does not make this clear and is inadequate. All documents in categories 8 and 49 must be produced.

        9. <u>Germany</u>

Categorical log entries 13 and 52 refer to communications between the client and German patent agents, or confidential internal notes and communications reflecting legal advice, concerning the German equivalents to the two U.S. patents at issue. Several courts in this district and elsewhere have held that client communications with German patent agents are entitled to a privilege comparable to that accorded to U.S. attorneys. <u>Aktiebolag</u>, 208 F.R.D. at 99-100; <u>Softview</u>, 2000 WL 351411, at *11; <u>Golden Trade</u>, 143 F.R.D. at 524; <u>Burroughs Wellcome</u>, 143 F.R.D. at 622; <u>Santrade, Ltd. v. General Electric Co.,</u> 150 F.R.D. 539, 547 (E.D.N.C. 1993). In none of these cases did the opponent of the privilege present any evidence to contest the declaration that provided the sole basis of the decision, so these decisions should carry limited weight with respect to German law. Similarly, in this case, the parties seeking disclosure have not contested the existence of a privilege for German attorneys and have made no statements regarding German patent attorneys. I will therefore assume for purposes of this decision that a privilege comparable to the U.S. attorney-client exists under German law for German patent agents. The Appendix lists the individual rulings for the

documents in categorical log entries 13 and 52.

           10.  <u>Greece</u>

Categorical log entry 53 refers to communications between clients and Greek attorneys "concerning prosecution and SPC protection of the Greek equivalent of the '176 patent." In support of their Greek privilege claims for attorneys, the plaintiffs submit the declaration of Dr. Helen Papaconstantinou, an attorney practicing in Greece. (Declaration of Dr. Helen Papaconstantinou dated Dec. 16, 2005 ("Papaconstantinou Decl."), submitted as Tab 12 of Pl. Foreign Law Binders). According to Dr. Papaconstantinou, all patent attorneys are also licensed as attorneys and therefore their communications with clients are covered by the same attorney-client privilege. (Papaconstantinou Decl. at 1). The privilege for attorney-client communications is provided by Law No. 3026/1954 of the Code of Professional Conduct ("Greek Code of Conduct"), the Code of Ethics for Attorneys ("Greek Code of Ethics"), and the Greek Code of Civil Procedure. Dr. Papaconstantinou's declaration includes an English translation of the relevant portions of the laws she cites.

The Greek Code of Conduct provides:

An Attorney is obligated to maintain without fail the confidentiality demanded by his/her Principal, concerning any matters entrusted to the Attorney by the Principal. With regard to any other matters that come to the Attorney's attention during the exercise of his duties, <u>it is within the Attorney's discretion to judge the extent to which, if any, he wishes to testify,</u> if he is subpoenaed as a witness. . . . <u>An Attorney declaring</u>

57

> before the competent Court or Judge with jurisdiction to hear the particular matter, <u>that his/her testimony conflicts with his/ imposed professional confidentiality, is not in any way obligated to testify</u>.

Greek Code of Conduct, Art. 49, ¶ 1, Art. 50 (emphasis added). Further, the Greek Code of Civil Procedure, Article 450, extends this testimonial privilege to the production of documents: "Each adversary or third party must produce the document in its possession which may be used as evidence, unless their non-disclosure is justified by due cause. Due cause exists in particular cases where there is a right to refuse to testify."

According to the plaintiffs' evidence, which has not been contradicted by the defendants, Greek attorneys are exempt from testifying or providing documents that reveal client confidences. This is comparable to the attorney-client privilege and will be respected as such. The Appendix lists the individual rulings for the documents in categorical log entry 53.

Categorical log entry 14 refers to communications between clients and "Greek patent attorneys and/or Greek patent attorney firm." This is inadequate because the employees of the patent firm may not be attorneys or patent attorneys, and the plaintiff has made no assertion that any other professionals are covered by the attorney-client privilege under Greek law. The documents in category 14 must be disclosed.

## 11.  Europe

The plaintiffs assert that the laws of Germany should govern the documents described in categorical log entry 10.  Categorical log entry 10 is far too convoluted for the defendants to determine which nation's laws should apply, let alone whether the assertion of attorney-client privilege is proper.  All documents from this category must be produced.

## 12.  Finland

Categorical log entry 11 concerns communications between the client and "Finnish patent agents and/or Finnish law firm," among others, and entry 50 concerns communications between the client and "Finnish law firm."  The plaintiffs have not alleged that there exists an evidentiary privilege that covers Finnish law firms generally.  As a consequence, the entries are inadequate, and all documents within these categories must be disclosed.

## 13.  France

Categorical log entries 12 and 51 refer to communications involving a French law firm and a French patent firm, among others.  No evidence has been provided of a French privilege applicable to such firms generally.  Categorical log entries 12 and 51 are inadequate, and all documents within these categories must be produced.

## 14.  Hong Kong

Categorical log entry 15 refers to communications between

"European Patent Attorney for Proterra (G. Spott) and Hong-Kong attorneys concerning prosecution and renewal of the Hong-Kong equivalent of the '807 patent."  In support of their privilege claims under Hong Kong law, the plaintiffs submit the declaration of Matthew Laight, an admitted solicitor practicing as a lawyer in the Hong Kong Special Administrative Region ("Hong Kong" or the "Hong Kong S.A.R.").  (Declaration of  Matthew Laight dated Dec. 21, 2005 ("Laight Decl."), submitted as Tab 13 of Pl. Foreign Law Binders).  Attached to Mr. Laight's declaration is a copy of Order 24 of the Rules of the High Court of Hong Kong ("Order 24 of the Hong Kong Rules"), with an excerpt of Hong Kong Civil Procedure 2006 ("H.K. Civ. Pro."), a treatise that Mr. Laight describes as "the standard practitioners' work on civil procedure in Hong Kong."  The treatise also provides further citations to case law.

Order 24 of the Hong Kong Rules includes mandatory disclosure provisions similar to those in U.S. law.  According to the excerpted materials submitted by the plaintiffs, a legal professional privilege has developed in Hong Kong law as an exception to the disclosure requirements.  Essentially, confidential communications between a solicitor and a client are privileged from production and inspection.  Further, confidential communications transmitted by a clerk or agent employed by the solicitor or the client will also be protected.  H.K. Civ. Pro. at 434-36 (citations omitted).

According to the plaintiffs' uncontradicted evidence, Hong Kong law recognizes a privilege comparable to the U.S. attorney-client privilege. However, having conducted an _in camera_ review, I find that none of the documents at issue are protected by Hong Kong's attorney-client privilege. All are communications between a German patent agent and a Hong Kong attorney concerning representation of the client, the Hong Kong attorney's diligence in renewing the client's patent application, and responsibility for late fees. No legal advice is sought or given. As a result, the documents in category 15 mist be disclosed.

15. Hungary

Categorical log entries 16 and 55 refer to confidential communications involving Hungarian patent agents, among others. Unfortunately, the plaintiffs have provided no citations to or other evidence of Hungarian law. They have instead made the tenuous assertion that secrecy obligations binding Hungarian patent agents function as an evidentiary privilege, and base the assertion on ruling in a case in the Eastern District of North Carolina:

> Evidence was submitted that Hungarian patent agents have an obligation to keep secret all facts learned in connection with the representation of a client. Therefore, the documents in categories 16 and 55, confidential communications between plaintiffs and their Hungarian patent agents concerning Hungarian patent matters, and plaintiffs' communications concerning same, . . . were properly withheld from production.

(Scambia 12/30/05 Ltr. at 11 (citing Burroughs Wellcome, 143 F.R.D.

at 622)).[9]  But a secrecy obligation does not necessarily imply an evidentiary privilege.  <u>See, e.g.</u>, <u>Bristol-Myers</u>, 1998 WL 158958, at *3.  Without further evidence,  I cannot find that a privilege comparable to the U.S. attorney-client privilege exists under the laws of Hungary, let alone that the plaintiffs have met their burden of demonstrating that such laws apply to the communications at issue.  All documents in categories 16 and 55 must be disclosed.

              16.  Ireland

      Categorical log entries 17 and 56 refer to confidential communications between the client and "European Patent Attorney, UK Chartered patent agent and Irish patent agent firm."  The plaintiffs have provided some information regarding a privilege for patent attorneys but nothing that applies to patent agents or attorney firms generally.  To the extent that the legal professionals at the Irish patent agent firm were not patent attorneys, the plaintiffs have not sustained their burden of demonstrating any applicable privilege.  To the extent that the legal professionals involved were actually patent attorneys, the categorical log entry does not make this clear, so the entry is inadequate.  All documents in categories 17 and 56 must therefore be produced.

---

[9]  From the one relevant paragraph in <u>Burroughs Wellcome</u>, it appears that the court's determination was based entirely on a single declaration, which may or may not have been opposed.  143 F.R.D. at 622.

Categorical log entries 18 and 57 list "Israeli patent firms" and "Israeli patent attorney and agent firms," among others, as the legal professionals involved in the communications.  The defendants do not contest the plaintiffs' assertion that a privilege comparable to the U.S. attorney-client privilege exists for attorneys.   However, the plaintiffs' only evidence of this privilege under Israeli law is the finding made in <u>Golden Trade</u>, 143 F.R.D. at 524, which was based on a single unopposed affidavit stating that Israeli statutory law protects attorney-client communications and Israeli case law has expanded this privilege to include patent agents (also referred to as patent attorneys). There is no mention in <u>Golden Trade</u> of other legal professionals, and there is no reason to assume that the referenced Israeli ruling applied to all law firm employees.  I cannot find that a privilege applies to Israeli law firms generally.  Categorical log entries 18 and 57 are therefore inadequate, and all documents in those categories must be disclosed.

_____18.__Japan

Categorical log entries 20 and 59 refer to communications with a patent law firm and/or patent agent, among others.  The cases cited by the plaintiffs do not concern a privilege applicable to patent law firms generally.  <u>See, e.g.</u>, <u>Eisai</u>, 406 F. Supp. 2d at 342-45 (providing thorough discussion of the role of <u>benrishi</u> but

not addressing firm employees generally).  To the extent that the legal professionals at the Japanese firm were not attorneys or patent agents, the plaintiffs have not sustained their burden of demonstrating any applicable privilege.  To the extent that the legal professionals involved were actually attorneys or patent agents, the categorical log entry is unclear and inadequate.  All documents in categories 20 and 59 must be produced.

19.  Italy

Categorical log entries 19 and 58 refer to confidential communications involving "Italian patent agent firm," among other participants.  The plaintiffs have provided some information regarding a privilege for Italian patent agents but nothing that applies to patent agent firms generally.  To the extent that the legal professionals at the Italian firm were not patent agents, the plaintiffs have not sustained their burden of demonstrating any applicable privilege.  To the extent that the legal professionals involved were actually patent agents, the categorical log entry does not make this clear, so the entry is inadequate.  All documents in categories 19 and 58 must be produced.

20.  Luxembourg

Categorical log entry 21 pertains to communications between "client (Proterra) and European Patent Attorney reflecting legal advice, or between European Patent Attorney for Proterra (G. Spott) and Luxembourg patent agent [concerning Luxembourg patent

64

protection]."  In support of their assertions of privilege under Luxembourg law, the plaintiffs submit a declaration of Armand Schmitt, a patent agent in Luxembourg, as well as excerpts of relevant statutes, with English translations.  (Declaration of Armand Schmitt dated Dec. 23, 2005 ("Schmitt Decl."), submitted as Tab 16 of Pl. Foreign Law Binders).  The state of the law in Luxembourg appears, based upon the plaintiffs' submissions and representations, to resemble the French law addressed by Judge Patterson in <u>Bristol-Myers</u>, 188 F.R.D. at 200.

Mr. Schmitt represents that the Luxembourg Code of Criminal Procedure "generally confers certain privileges to persons entrusted with secret information either by their position or profession," and he explains that those "persons" are defined in Article 458 of the Luxembourg Penal Code.  (Schmitt Decl. at 1). Article 458 defines the relevant professionals, but it also mentions an important limitation on the confidentiality obligation:

> Doctors, surgeons, health officers, pharmacists, midwives and any other persons who, as a result of their trade or profession, receive secrets that are confided to them and who <u>reveal such secrets without having been required to do so in order to give evidence before a court or required by law to disclose them</u>, shall be liable. . . .

Luxembourg Penal Code, art. 458 (emphasis added).

Whether a communication between a foreign patent agent and a client is entitled to attorney-client privilege depends largely on whether the relevant foreign law permits judicial authority to

65

overcome the attorney's confidentiality obligation. <u>Bristol-Myers</u>, 188 F.R.D. at 199-200. It appears from the plaintiffs' submission that confidences held by legal professionals in Luxembourg are subject to disclosure as evidence in court proceedings.

Further, even if there were an attorney-client privilege under Luxembourg law, the plaintiffs are claiming a privilege for communications involving patent agents. Just as Mr. Schmitt argues that "qualified lawyers admitted to the Bar" are expressly bound to professional secrecy under Article 35 of the Law of 10 August 1991, he admits that there is no parallel provision concerning patent agents. Article 35 of the Law of 10 August 1991 places some limits on the seizure of confidential communications from attorneys, but, again, does not apply to patent agents.

There is no attorney-client privilege for the documents in categorical log entry 21 based upon the laws of Luxembourg. All such documents must be disclosed.

21. <u>Malaysia</u>

Categorical log entries 22 and 61 refer to confidential communications between the client and a "Malaysian law firm" or among plaintiffs regarding communications with the Malaysian firm. The plaintiffs have provided some information regarding a privilege for patent attorneys but nothing that applies to law firms generally. To the extent that the legal professionals at the law firm were not patent attorneys, the plaintiffs have not sustained

their burden of demonstrating any applicable privilege. To the extent that the legal professionals involved were actually patent attorneys, the categorical log entry does not make this clear, so the entry is inadequate. All documents in categories 22 and 61 must be produced.

### 22. The Netherlands

Categorical log entries 23 and 62 refer to communications between a client and a Dutch "law firm," among others. The plaintiffs cite <u>Organon Inc. v. Mylan Pharmaceuticals, Inc.</u>, 303 F. Supp. 2d 546 (D.N.J. 2004), but provide no additional evidence of Dutch law. The court in <u>Organon</u> benefitted from the testimony of two law professors cited as experts by the parties in that case. <u>Id.</u> at 550. After a thorough discussion of Dutch case law and statutes, the court ruled that, "because Dutch patent agents are a homogenous group of professionals that is regulated by statute, . . . patent agents are within the definition of a 'limited group'" whose communications are privileged. <u>Id.</u> at 548-49. This ruling does not support the notion that all communications involving a Dutch law firm would be privileged. Therefore, categorical log entries 23 and 62 are inadequate and all referenced documents must be produced.

### 23. New Zealand

Categorical log entry 63 concerns communications between the plaintiffs and their "New Zealand attorney, or confidential

internal notes reflecting legal advice concerning prosecution of [the] New Zealand equivalent of [the] '176 patent." In support of their claims of privilege, the plaintiffs submit a declaration of Gregory Francis Arthur, a practicing barrister and solicitor in New Zealand. (Declaration of Gregory Francis Arthur dated Dec. 20, 2005 ("Arthur Decl."), submitted as Tab 18 of Pl. Foreign Law Binders). The defendants expressly do not contest that there is an attorney-client privilege for attorneys in New Zealand. Accordingly, I will assume for purposes of ruling on category 63 that there is an attorney-client privilege for attorneys in New Zealand. All of the documents within that category may be withheld. However, categorical log entry 24, which refers to the client's communications with "New Zealand law firm," among others, is inadequate. All documents in category 24 must be disclosed.

24. Pakistan

Categorical log entry 65 refers to communications between the client and "Pakistani attorneys and/or Pakistani patent agents and/or Pakistani law firms." In support of their privilege claims under Pakistani law, the plaintiffs have submitted a declaration of Mueen Qamar, a lawyer practicing in Pakistan, as well as an English translation of Article 12 of the Qanun-e-Shahadat of 1984 ("Article 12" or "Pakistani Evidence Law, Art. 12"), which Mr. Qamar cites as the basis for the opinions stated in his declaration. (Declaration of Mueen Qamar dated Dec. 20, 2005 ("Qamar Decl."), submitted as

Tab 19 of the Pl. Foreign Law Binder).

The cited statute provides as follows:

> Art. 12. Confidential Communications with Legal Advisers
> [sic]: No one shall be compelled to disclose to the
> Court, tribunal, or other authority . . . any
> confidential communication which has taken place between
> him and his legal adviser [sic], unless he offers himself
> as a witness. . . .

Pakistani Evidence Law, Art. 12. Mr. Qamar alleges that because
Article 12 refers to a "legal professional adviser," as opposed to
a "legal practitioner or advocate," the legislators intended to
include both attorneys and patent agents. (Qamar Decl. at 1-2).

However, the commentary accompanying Article 12 appears to
contradict the logic of Mr. Qamar's view:

> [Article 12 deals] with the disclosure of communications
> between the legal professionals and their clients, which
> inter alia include interpreters, clerks, and servants of
> the advocates. None of them is permitted to disclose
> such confidential communications unless the client
> concerned gives his explicit consent to such disclosure.

Pakistani Evidence Law, Art. 12, Comments. The use of "advocates"
as a substitute for "legal advisers" suggests that the drafters
viewed the two terms as synonymous, or at least without differences
significant for the purposes of this evidentiary rule. Without
further information, it does not appear that patent attorneys are
included within the category of legal advisors for whom there is an
evidentiary privilege in Pakistan.

Even if I were to assume that Pakistan recognizes an attorney-
client privilege for patent attorneys, categorical log entry 65

refers to "Pakistani law firms" as the legal professionals whose involvement gave rise to the attorney-client privilege for at least some of the communications at issue. Yet the plaintiffs have not provided evidence that the Pakistani attorney-client privilege applies to law firms generally. One interpretation of the Article 12 Comments, cited above, might be that the privilege covers all employees of a law firm. But another equally reasonable interpretation is that law firm employees do not themselves qualify as "legal professional adviser[s]" whose communication with a client would qualify as privileged, although they are ethically bound not to disclose confidential communications. In any case, the plaintiffs have not asserted that the Pakistani privilege applies to all law firm employees. (See Scambia 12/30/05 Ltr. at 14; Qamar Decl.).

To the extent that the legal professionals involved in the communications were not attorneys, the plaintiffs have not sustained their burden of demonstrating any applicable privilege. To the extent that the legal professionals involved were attorneys, the categorical log entry does not make this clear, so the entry is inadequate. All documents in category 65 must be produced.

          25. Philippines

Categorical log entry 26 describes communications between "Philippino attorneys and/ or Philippino patent agents and/or, or confidential communications between Proterra and Novartis

reflecting legal advice, or confidential internal notes reflecting legal advice." The defendants have not contested that an attorney-client privilege exists with respect to Philippino attorneys. The plaintiffs have submitted the declaration of Carlos T. Santos, Jr., a member of the Philippine Bar, in support of their assertions of privilege for attorneys and patent agents. (Declaration of Carlos T. Santos, Jr., dated Dec. 23, 2005 ("Santos Decl."), submitted as Tab 20 of the Pl. Foreign Law Binders, at 1).

Mr. Santos makes a persuasive argument with respect to the privilege for patent agents. The Rules of Court provide an evidentiary privilege for attorney-client communications. Rule 130, § 24. In the 1990's, Philippine regulations and a new Intellectual Property Code authorized non-lawyers to function as patent agents. Mr. Santos asserts that "the internal regulations of the Philippine patent office in implementing said laws more specifically with respect to the exercise of its quasi-judicial functions expressly state that the Rules of Court shall apply." (Santos Decl. at 2). The defendants have provided no evidence to the contrary. Therefore, the documents identified in categorical log entry 26 are privileged, with exceptions noted in the Appendix.

However, categorical log entry 66 refers to communications with Philippine "patent law firms." For the reasons discussed repeatedly above, where there has been no evidence of a privilege applicable to communications with firms generally, such log entries

are inadequate.  All documents described under categorical log entry 66 must be produced.

26.  Poland

Categorical log entries 27 and 67 refer to communications involving a Polish "law firm."  Again, given the evidence submitted, these entries are inadequate and all documents described must be produced.

27.  Portugal

Categorical log entries 28 and 68 refer to communications involving a Portuguese "law firm."  These entries are inadequate and all documents described therein must be produced.

28.  Romania

Categorical log entry 69 describes confidential communications between the client "and Romanian patent agents, or confidential internal communications reflecting legal advice."  The materials in the record indicate that Romanian law recognizes a confidentiality obligation comparable the U.S. attorney-client privilege with respect to Romanian  attorneys, their employees, and Romanian patent agents (also referred to as counselors for industrial property).

In support of their assertion of privilege, the plaintiffs have submitted the declaration of Octavian Nicolau, an attorney at law who is registered with the Bar of Romania, an associate member of the New York Bar Association, and licensed as a legal consultant

by the New York State Supreme Court. (Declaration of Octavian Nicolau ("Nicolau Decl."), submitted as Tab 23 of Pl. Foreign Law Binders, at 1). Excerpts of relevant statutes, with English translations, are also attached to Mr. Nicolau's declaration. (Nicolau Decl., Exh. 1). Under the Law for Organization and Practice of Attorneys, No. 51/1995, "[t]he attorney is bound to keep the professional secret concerning any aspect of the case, with the exception of the situations enacted by special laws." The law imposes a weighty obligation, expressly stating, in part:

> The attorney cannot be forced in any circumstance or by any person to disclose the professional secret. The attorney cannot be freed from the professional secret by his client and/or any authority or person . . . . The obligation to keep the professional secret is absolute and unlimited in time. This obligation includes all of the attorney's activities and is extended to all of his associates, co-workers, employees, and also covers relations with other lawyers . . . . Correspondence among lawyers, or between the lawyer and his client, irrespective of support, cannot be used as evidence in court and cannot be freed from confidentiality.

Law for Organization and Practice of Attorneys No. 25/09/2004, published in the Official Monitor, Part I, no. 45 from 13/01/2005, Art 8(3), 9(1) 10, ¶ 4.

Mr. Nicolau reports that Romania began regulating the profession of patent agents only in 2002. Mr. Nicolau has not provided evidence that the confidentiality laws applicable to attorneys have been adopted with respect to patent agents.

Article 16 of the Law for the Organization and Practice of the Profession of Counselor for Industrial Property provides:

> The Counselor for industrial property will not disclose
> any data or information given by the client or about the
> client other than in the limits of his mandate and in
> accordance with the law.

Specific punishments are provided for the disclosure of inventions or economic secrets in violation of the law, but such laws describe fiduciary obligations imposed on patent agents, not evidentiary privileges held by them or their clients. There is no statement in the law that bars the use of correspondence between clients and patent agents as evidence in court.

Yet, Mr. Nicolau asserts that during civil litigation in Romania, a court cannot compel production of communications between a patent agent and client, because of the Romanian Civil Procedure Law, art. 173. That statute provides:

> The court will reject the request for disclosure of the
> document in whole or in part, in such cases where: (1)
> The document includes personal, and private matters; (2)
> When the disclosure of document [sic] will breach the
> legal obligation to maintain secrecy.

Romanian Civil Procedure Code from 26/07/1993.

Although Mr. Nicolau's explanation of Romanian law is not completely satisfying, the defendants have provided no evidence to contradict it. Therefore, I will assume for purposes of ruling on category 69 that Romanian law recognizes a privilege comparable to the U.S. attorney-client privilege for patent agents as well as attorneys. Having inspected the documents, I find that all are protected by the privilege and may be withheld.

However, categorical log entry 29 is inadequate. This entry

74

describes communications between the client and Romanian patent agents and/or Romanian law firms.  The problem is the reference to "law firms."  Although the plaintiffs have provided evidence of a privilege for both attorneys and their employees, there is no evidence that any law firm was involved in the communications at issue.  Based upon the Plaintiffs' List of Foreign Legal Professionals, the description in the log, and my in camera review of selected documents within category 29, it appears that the only firm involved in these communications was Inventa, a patent agent firm.  The plaintiffs have submitted no evidence of a privilege that covers patent agent firms generally, nor, more specifically, the employees of patent agents.  Many if not all of the legal professionals involved in the communications at issue are unnamed individuals employed by the patent agent firm of Inventa.  All documents in category 29 must be produced.

29.  Singapore

Categorical log entry 30 pertains to confidential communications between Proterra and Mr. Spott (a European patent agent) "reflecting legal advice, or between [Mr. Spott] and/or [the German law firm of Mr. Spott] and Singapore attorney concerning prosecution and renewal of Singapore equivalent of '807 patent."  Communications between Proterra and Mr. Spott that reflect the legal advice of a Singapore attorney are privileged to the extent that communications between Proterra and the Singapore attorney

would be privileged. Similarly, so long as Mr. Spott and other members of his firm functioned as Proterra's agent when they communicated with the Singapore attorney, those communications are also privileged to the extent that communications between Proterra and the Singapore attorney would be privileged.

The defendants do not contest that there is a privilege with respect to Singapore attorneys and make no showing to contradict the plaintiffs' compelling evidence that this privilege applies also to individual patent agents, as well as patent agent firms. (Declaration of Morris John dated Dec. 22, 2005, submitted as Tab 24 of the Pl. Foreign Law Binders (citing Singapore Evidence Act (Cap 97) § 128(1); Patents Act § 95(1); § 96(1) (communication relating to patents, between client and patent agent or firm of patent agents, is "privileged from disclosure in legal proceedings in Singapore in the same way as communication between a person and his solicitor"))). The communications in category 30 are privileged, with any exceptions noted in the Appendix.

          30.  Slovakia

Categorical log entry 72 describes confidential communications between the client and "lawyer in patent matters and/or patent agent and/or Czech Republic law firm, or confidential internal notes reflecting legal advice, concerning prosecution and pipeline protection of Slovakian equivalent of '176 patent." The distinction between patent agents, attorneys, and other individuals

employed in a patent law firm is irrelevant for the purposes of assessing privilege under Slovakian law.

Slovak privilege law is very similar to that of the Czech Republic. In support of their assertions of privilege under Slovak law, the plaintiffs have provided a declaration from Ján Ondruš, an attorney at law practicing in Slovakia, in addition to excerpts of relevant laws with English translations. (Declaration of Ján Ondruš dated Dec. 21, 2005 ("Ondruš Decl."), submitted as Tab 25 of Pl. Foreign Law Binders, & Exhibits). To the extent that the excerpts of the statutes are not the most current versions, Mr. Ondruš declares that they are effectively the same.

According to the plaintiffs' uncontradicted evidence, under Slovak law, the following individuals possess a duty of confidentiality that generally must be respected even in civil litigation: attorneys at law, patent agents (also referred to as patent attorneys), "employees of attorney[s] at law," "other persons that in this connection participate in providing legal services," "employees of a patent attorney, [and] employees of an association of patent attorneys." (Ondruš Decl. at 1-5). See Law No. 586/2003 Coll., on the Legal Profession ("Slovak Legal Profession"), § 23, ¶¶ 1 & 8(a) & (b); Law No. 344/2004 Coll., on Patent Attorneys ("Slovak Patent Attorney Law"), § 18, ¶¶ 1 & 6(a). The only exception, in which the confidentiality obligation would be lifted due to court proceedings, is that of litigation where the

dispute personally involves the legal professional.  Slovak Legal Profession Law § 23, ¶ 5; Slovak Patent Attorney Law § 18, ¶ 5. That the relevant statutes list this exception suggests that civil court proceedings do not generally trump the confidentiality obligation.  Further, the Slovak statutes provide that the attorney or patent attorney "may be relieved from this liability to maintain confidentiality only by client, and after the client's death or dissolution, only by his legal successor," and do not mention any judicial authority to do so.  Slovak Legal Profession Law § 23, ¶ 2; Slovak Patent Attorney Law § 18, ¶ 1.

Finally, the Slovak laws include the same Civil Procedure Code applied in the Czech Republic, which, as discussed above, appears to bar disclosure that would violate the rules of confidentiality. See Law No. 99/1963, Civil Procedure Code, as amended, § 124. Although the defendants deny the plaintiffs' interpretations of Slovak law, they have provided no evidence to contradict it.  I therefore find that, for the purposes of adjudicating categorical privilege log entry 72, communications between clients and the professionals covered by the Slovak confidentiality laws shall be accorded the same protection as communications between clients and U.S. attorneys.  The documents in category 72 are therefore privileged, with any exceptions listed in the Appendix.

31.  South Africa

Categorical log entry 31 refers to communications between the

client and a "South African patent law firm," and categorical log entry 73 refers to communications between the client and "Foreign Patent Manager and/or South African law firm." The plaintiffs have provided information regarding a privilege for attorneys and patent agents but nothing that applies to law firms or patent law firms generally. To the extent that the legal professionals at the South African firm were neither attorneys nor patent agents, the plaintiffs have not sustained their burden of demonstrating any applicable privilege. To the extent that the legal professionals involved were actually attorneys or patent agents, the categorical log entry does not make this clear and in fact suggests otherwise, so the entry is inadequate. All documents in categories 31 and 73 must be produced.

32. South Korea

Categorical log entry 32 refers to communications between the client and "South Korean attorney and/or South Korean patent agent and/or South Korean law firms, or confidential internal notes reflecting legal advice." Categorical log entry 74 refers to communications between the client and "South Korean patent agents and/or South Korean law firm (Lee International), or confidential internal notes reflecting legal advice." Even if communications between clients and attorneys or patent agents are protected under the laws of South Korea, a proposition which remains uncertain, this protection does not necessarily apply to the clients'

communications with all law firm employees.  The plaintiffs argue that law firms generally are, in essence, protected by privilege because disclosure obligations in South Korea are exceedingly limited.

I am sensitive to the concern that the privilege laws of a foreign country must not be analyzed "in a vacuum," Aktiebolag, 208 F.R.D. at 102, and should instead be considered against the backdrop of that nation's discovery procedures.  Certainly, it seems nonsensical to ask whether South Korean laws shield a subset of communications from disclosure if in South Korea communications are never vulnerable to such exposure.  I recognize also that, to the extent possible, courts should interpret U.S. privilege laws in a manner that will not take clients and their legal representatives by surprise.

However, the principle of comity does not require American courts to adopt wholesale the civil procedure framework of a foreign jurisdiction in every patent case involving a foreign patent agent.  Rather, American case law has specifically expanded the doctrine of the attorney-client privilege to include coverage for communications between clients and legal professionals not recognized as attorneys where those professionals are granted a status in their home jurisdictions equivalent to American attorneys with respect to the attorney-client privilege.  There is no evidence of such a heightened level of protection for all law firm

employees in South Korea.  Therefore, categorical log entries 32 and 74 are inadequate, and all documents they describe must be produced.

33.  Spain

Categorical log entry 33 refers to communications "between client and . . . Spanish patent agents and/or Spanish patent administrators (reflecting legal advice) and/or Spanish law firm." Categorical log entry 75 refers to communications "between client . . . and Spanish patent agent and/or Spanish law firm and/or UK chartered patent agent, or confidential internal communications reflecting legal advice."  The plaintiffs have provided no information regarding an evidentiary privilege that applies to law firms generally.  Even if communications between clients and attorneys or patent agents are protected under the laws of Spain, this protection does not necessarily apply to the clients' communications with all law firm employees.  Categorical log entries 33 and 75 are inadequate, and all documents they describe must be produced.

34.  Sweden

Categorical log entries 35 and 76 refer to confidential communications "between client . . . and . . . Swedish patent agents and/or Swedish law firm," among others.  Unfortunately, the plaintiffs have provided no citations to or other evidence of Swedish law.  Instead, the plaintiffs have cited a single case from

the Eastern District of North Carolina, for the proposition that "Swedish privilege law protects communications with patent agents and their clients." (Scambia 12/30/05 Ltr. at 18 (citing <u>Santrade</u>, 150 F.R.D. at 546)).  In <u>Santrade</u>, the court made a privilege determination on the basis of an affidavit that addressed communications between clients and attorneys but made no argument regarding patent agents.  <u>Id.</u> at 546.  In its decision, the court emphasized that it accepted the affidavit as sufficient evidence of the Swedish attorney-client privilege law, and "assum[ed]" no distinction existed between attorneys and patent agents, only because of "the absence of any evidence to the contrary."  <u>Id.</u> at 546.  While that court's assumptions and ultimate rulings may have been appropriate given the evidence before it, with no evidence of Swedish law having been submitted here, I cannot find that a Swedish attorney-client privilege exists, let alone that the plaintiffs have met their burden of demonstrating that it applies to the communications at issue.  All documents in categories 35 and 76 must be disclosed.

## 35. Taiwan (Republic of China ("ROC"))

Categorical log entry 78 refers to communications "between client . . . and Taiwanese attorney and/or Taiwanese law firm, or confidential internal communications reflecting legal advice." However, the plaintiffs have not alleged that there is a Taiwanese evidentiary privilege that applies to law firms generally.

(Scambia 12/30/05 Ltr. at 20). Rather, they have cited provisions of Taiwanese law that extend the attorney-client privilege to the "business assistant of [an attorney.]" (Article 182 of the ROC Code of Criminal Procedure; Article 316 of the ROC Criminal Code; Article 307 of the ROC Code of Civil Procedure, attached as Exh. 1 to Declaration of Nigel N.T. Li dated Dec. 20, 2005, submitted as Tab 30 of Pl. Foreign Law Binders). However, even a broad definition of a "business assistant" to an attorney does not necessarily include all law firm employees, and the plaintiffs have not provided any evidence, nor even a simple representation, that the employees involved in the relevant communications were in fact assistants to attorneys. In fact, no such business assistant is included in the Taiwanese section of the plaintiffs' list of relevant individuals. (See Plaintiffs' List of Foreign Legal Professionals). Even if communications between clients and attorneys, and their assistants, are protected under the laws of Taiwan, this protection does not necessarily apply to the clients' communications with all law firm employees. Categorical log entry 78 is inadequate, and all documents it describes must be produced.

 36.  Republic of Trinidad and Tobago

Categorical privilege log entry 38 refers to "[c]onfidential communications between client (Proterra) and European Patent Attorney (G. Spott) reflecting legal advice concerning prosecution of Trinidad and Tobago equivalents of '807 patent." Counsel for

Novartis represents that the referenced legal advice was that "of [the plaintiffs'] Trinidad attorney." (Scambia 12/30/05 Ltr. at 20). In support of their privilege claims, the plaintiffs submit the declaration of Debra D'Ade, an attorney-at-law who has been responsible for filing patents on behalf of the plaintiffs and advising the plaintiffs on relevant laws. (Declaration of Debra D'Ade dated Dec. 28, 2005 ("D'Ade Decl."), submitted as Tab 31 of Pl. Foreign Law Binders, ¶¶ 1-2). Ms. D'Ade has participated in the drafting and amending of the intellectual property legislation currently in force in Trinidad and Tobago. (D'Ade Decl., ¶ 6). Ms. D'Ade reports, and provides citations to demonstrate, that there is an attorney-client privilege, covering both attorneys at law and patent agents, under the laws of Trinidad and Tobago. (D'Ade Decl., ¶¶ 13-17). The defendants state that they do not contest the existence of an attorney-client privilege, at least with respect to attorneys, under the laws of Trinidad and Tobago. (Ross 2/22/06 Ltr. at 40, n.14). I am satisfied that under the laws of Trinidad and Tobago there is a privilege, comparable to the U.S. attorney-client privilege, applicable to communications with attorneys and patent agents. The documents in category 38 are privileged, with exceptions noted in the Appendix.

37.  United Kingdom ("U.K.")

Categorical privilege log entry 81 refers to confidential communications between the "client (Novartis, or its predecessor in

interest, Sandoz) and U.K. law firm (B.A. Yorke & Co.), or confidential internal communications reflecting legal advice, concerning prosecution of United Kingdom equivalent of '176 patent."  In camera review of relevant documents reveals that the letterhead of B.A. Yorke & Co. designates the organization as a firm of patent agents.

In support of their privilege claims under U.K. law, the plaintiffs submit the declaration of Edward John Nodder, a solicitor practicing as a lawyer in the field of U.K. patent litigation (Declaration of Edward John Nodder dated Aug. 3, 2005 ("Nodder Decl."), submitted as Tab 32 of Pl. Foreign Law Binders), as well as copies of relevant statutes.  These materials demonstrate that U.K. law recognizes a privilege for communications regarding patent matters when between a client and any of the following individuals or entities: a patent agent (also referred to as a patent attorney) registered in the U.K. ("U.K. patent agent"), a patent agent registered with the European Patent Office ("EP patent agent" or "European Patent Attorney"), or a "partnership [or corporate body] entitled to describe itself as a firm of patent agents or as a firm carrying on the business of a European patent attorney."  Copyrights, Designs and Patents Act 1988 ("CDPA") § 280.  The defendants expressly concede the existence of an attorney-client privilege, at least with respect to attorneys, under the laws of the U.K.  I am satisfied that there is a

privilege also with respect to patent agent firms generally.  The documents in categorical log entry 81 are therefore privileged, with any exceptions listed in the Appendix to this order.

Categorical privilege log entry 39 refers to confidential communications "between client (Proterra) and European Patent Attorney, or between European Patent Attorney for Proterra (G. Spott) and UK Chartered Patent Agents, concerning prosecution and SPC protections for United Kingdom equivalent of '807 patent." Communications between Proterra and Mr. Spott, reflecting legal advice from a U.K. patent agent, are privileged to the extent that communications between Proterra and the U.K. patent agent would be privileged.  Insofar as Mr. Spott and other members of his firm functioned as the client's agent in its communications with the U.K. patent agent, those communications are privileged to the extent that communications between the client and the U.K. patent agent would be privileged.  The documents in category 39 are therefore privileged, with any exceptions noted in the Appendix.

D.   Patent Agent Privilege in the United States

Lastly, Novartis urges me to expand the attorney-client privilege to protect communications between clients and registered U.S. patent agents.  The plaintiffs concede that this is not the state of the law in the Second Circuit, and they do not  allege that it is the law of the Federal Circuit.  However, they argue that patent agents advise clients just as attorneys do and

therefore should be accorded the same respect and status.

The plaintiffs assert that in <u>Sperry v. Florida</u>, 373 U.S. 379 (1963), the Supreme Court "found that Congress intended for patent agents and attorneys to be treated as equals." (Scambia 3/24/06 Ltr. at 30). This is not so. <u>Sperry</u> held that the State of Florida could not bar a non-attorney patent agent licensed with the U.S. Patent Office from advising clients on patent matters and prosecuting patent applications, despite the fact that in Florida such conduct constituted the practice of law. <u>Id.</u> at 384. But the <u>Sperry</u> opinion did not mention the attorney-client privilege. Moreover, the Court specifically distinguished the status of patent agents engaging in patent prosecutions before the U.S. Patent Office from patent agents practicing in any other context. <u>Id.</u> at 395-96, 402.

To argue that because a patent agent competently engages in legal activities similar to those of an attorney, he should be accorded the status of an attorney is to turn the logic of <u>Sperry</u> on its head. <u>Sperry</u> held that although patent agents are not equivalent to attorneys, they may engage in the practice of law with respect to patent activities before the U.S. Patent Office, as authorized by Congress. <u>Id.</u> at 402. But it does not follow that because the agent is permitted to engage in this defined subuniverse of legal practice, his activities are therefore equivalent to those of a practicing attorney

Consequently, I decline to extend the attorney-client privilege to communications between clients and patent agents.

## Conclusion

The pending discovery motions are resolved as set forth above and in the attached Appendix. The parties are directed to file their submissions regarding the category four documents within two weeks of this Order.

SO ORDERED.

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:     New York, New York
           August 8, 2006

Copies mailed this date:

Robert L. Baechtold, Esq.
Diego Scambia, Esq.
Nicholas N. Kallas, Esq.
Fitzpatrick, Cella, Harper & Scinto
30 Rockefeller Plaza
New York, New York  10112-3801

Maurice N. Ross, Esq.
Stuart Sender, Esq.
Lars Taavola, Esq.
Budd Larner PC
150 John F. Kennedy Parkway
Short Hills, New Jersey  07078

James K. Stronski, Esq.
Frommer Laurence & Haug, LLP
745 Fifth Avenue
New York, New York  10151

88

James F. Hurst, Esq.
David J. Doyle, Esq.
Derek J. Sarafa, Esq.
Kristen G. Cowan, Esq.
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL  60601

## Appendix

### A.  Swiss Motion

Unless otherwise noted below, all of documents listed in Appendix E to the Ross Letter of February 22, 2006 ("Ross 2/22/06 Letter") must be disclosed. The exceptions, in addition to those where the defendants have withdrawn their objections, are as follows.

Communications involving Martin Lutz, identified as documents 144, 603 (duplicate of 144), 605, 606, 613, and 847, are privileged and need not be disclosed.

Document 15 is governed by Israeli law because it concerns the client's request for advice regarding the implications of Israeli law and the request is directed to an Israeli legal professional. Plaintiffs' counsel represents that the request is directed to a patent attorney (Scambia 12/22/05 Ltr. at 10), and, as discussed in the Foreign Patent Prosecutions section of this Order, Israeli law protects communications between clients and Israeli patent agents as well as attorneys. Therefore, document 15 is privileged and may be withheld.

Document 742 is governed by U.S. law because it concerns a U.S. patent application and involves a U.S. attorney. This document is privileged because it involves a confirmation of and request for information for the purpose of assisting the U.S. attorney in providing the client with legal representation.

## B. Privilege Log Motion

The individual rulings for the Privilege Log Motion correspond loosely to the headings in the body of the decision. Although the defendants objected to most documents on several grounds, only one ruling is listed for each document. For any document no longer in dispute, the rulings below are inapplicable.

### 1. Communications Between Non-Attorneys

#### a. Communications Involving Joseph Borovian

The communications addressed in the January 5, 2006 Order are privileged and are identified in the Order by the following document numbers: 279, 280, 281, 282, 283, 285, 286, 860, 862, 863, 864, 867, 868, 947, 948, 949, 950, 951, 952, 953, 954, 955, 956, 957, 959, 960, 962, 963, 964, 965, 967, 968, and 969. (January 5, 2006 Order at 7 n.1).

Document number 652 is privileged, except for the handwritten notes, which must be disclosed. The defendants have withdrawn their objections to the communication identified as number 654, so document 654 may be withheld.

#### b. Communications Involving Thomas McGovern

The documents or redacted portions identified by the following document numbers are privileged: 24, 47, 58, 72, 81, 90, 96, 100 (cover page only is privileged), 101 (cover page only is privileged), 102 (cover page and notes on draft are privileged), 103, 107, 110, 124, 173, 310, 317, 324, 358, 388 (cover letter and

notes on draft are privileged), 389, 390, 397, 442, 444 (cover letter and notes on cover letter are privileged but not notes on draft), 447, 448, 449, 452, 568, 651 (handwritten redacted material is privileged), 738 (cover letter is privileged; remainder is a repeat of an earlier document), and 745 (privileged except notes).

The documents or redacted portions identified by the following document numbers are not privileged, or are only partially privileged, because they do not reflect, or only partially reflect, confidential communications: 32 (middle section beginning "8/18" is privileged and may be redacted, but the top half of the document, as well as the bottom line indicating "ex advised . . ." are not privileged and must be produced), 33, 40, 83, 86, 91, 113, 115, 121, 136, 207, 209, 398, and 616.

### c. Communications Supervised by a Non-Attorney

All of the Rothwell Documents, numbered 52, 54, 60, 64, 65, 79, 300, 302, 307, 308, 311, 433, must be disclosed. Document 966 must also be disclosed.

### 2. Documents Addressed "to File"

The following documents may be withheld as privileged: 84, 122, 123, and 247. The following documents are protected from disclosure because they constitute work product: 820, 837, 838, and 852. Document number 80 must be disclosed.

Some documents addressed "to File" appear to be notes between co-counsel, or between a U.S. attorney and a patent agent working

under the attorney's supervision. Those documents were generally recognized as privileged or as work product.

### 3. Documents Where Legal Professional Not Specified

All documents listed in Appendix K to the Ross Letter of February 22, 2006, must be disclosed, because the factual bases for any attorney-client privilege is insufficient.

### 4. Handwritten Notes or Marginalia

The following documents with handwritten notes may be withheld as privileged with the exceptions noted in parentheses: 49, 55, 56, 62, 67 (notes privileged but underlying document must be produced), 70, 92 (notes and document privileged but attachment must be produced), 94, 111 (notes privileged but underlying document already produced), 114 (second and fourth of four handwritten entries must be disclosed), 117, 120, 135, 139, 190, 203, 204, 205, 206, 221, 288 (underlying document privileged but notes must be produced), 293, 315, 345, 385, 450, 451, 518, 550 (duplicate of 518), and 875.

These documents must be disclosed: 22 (This is a trusteeship and representation contract with no allegation that it is an undisclosed draft. The "handwritten note containing a confidential communication" is simply a "cc" indicating additional recipients, of which the listed legal professional is one), 181 (cover letter and notes must be disclosed but attached letter from U.S. attorney privileged), 182 (cover letter must be disclosed but attached

letter to attorney privileged), 224, 316, 327, and 870.

5. Documents Where No Date Information Available

The plaintiffs may withhold undated documents not otherwise required to be produced.

6. Draft Documents

The following documents are privileged, including any notes: 85, 87, 359, 533, and 566 (duplicate of 533). The following documents are not privileged, and the notes on these documents are not privileged, so the documents must be disclosed in their entirety: 112, 348, 506, 515, 539, 547, 598, 784, and 913 (duplicate of 784).

7. Irrelevant Material

Although the following documents are not privileged, the sections already redacted on the grounds of irrelevance may be withheld: 623, 678, 686, and 764.

8. Miscellaneous

The determinations for the miscellaneous documents are based upon rules explained in the Privilege Log Motion section of the Order, but the document rulings are listed here because they were not naturally categorized under any of the headings above.

The following documents may be withheld: 119, 148, 188, 192, 195, 200, 287, 290, 294, 295, 304, 380, 420, 456, 511, 521, 545, 572, 576, 839 (work product), 840 (work product), 841 (work product), 869 , 872, 876, 877, and 878.

The following documents are not privileged and must be disclosed: 126 (German cover letter not privileged, but English letter privileged and draft power of attorney may be withheld because irrelevant), 289 (attachment not privileged, but one-line e-mail on top may be redacted), 301, 303, 313, 331, 334, 336, 382, 394, 406, 417, 466, 475, 505, 509, 541, 582, 602, 607, 631, 640, 649, 653, 654, 665, 671, 672, 674, 720, 748, 749, 765, 768, 770, 776, 788, 789, 790, 792, 793, 796, 798, 800, 801, 802, 803, 804, 805, 806, 807, 808, 809, 811, 812, 818, 825, 826, 827, 830, 831, 849, 858, 859, 871 (attachment not privileged, but one-line e-mail on top may be redacted), 882, 886, 888, 889, 890, 892, 894, 896, 897, 898, 903, 905, 906, 908, 909, 910, 911, 914, 915, 916, 919, 920, 921, 922, 923, 926, 927, 928, 929, 930, 931, 932, 933, 934, 935, 936, 940, 942, 943, and 945.

## C. Categorical Log of Foreign Patent Prosecution Documents

### 1. Australia

All documents in categorical log entries 1 and 40 must be disclosed.

### 2. Austria

All documents in categorical log entries 2 and 41 must be disclosed.

### 3. Belgium

All documents in categorical log entries 3 and 42 must be disclosed.

4. Botswana

All documents in categorical log entries 4 and 43 must be disclosed.

5. Brazil

The documents in category 5 are privileged, with the exception of document number 4 (letter privileged but attachment must be disclosed because it does not contain advice or request for advice but is a blank form). Category 44 must be disclosed in its entirety.

6. The Czech Republic

The documents in category 48 are privileged with the exception of log entry 9 (patent attorney's request for information to be submitted directly to patent office not in confidence), which must be disclosed.

7. Cyprus

All documents in categorical log entry 7 must be disclosed.

8. Denmark

All documents in categorical log entries 8 and 49 must be disclosed.

9. Germany

The documents in category 13 are privileged, with the following exceptions, which must be disclosed: 1 (except first sentence, which may be redacted; the remainder merely transmits information from PTO), 2 (transmits information from PTO), 4 (cover

letter for attachment submitted to PTO), and 5 (transmits information from or already submitted to PTO).

The documents in category 52 are privileged, with the following exceptions, which must be disclosed: 12 (includes several undated documents, all with unidentified authors), 14 (privileged except for information under "Japan" heading, which only transmits information from third party), 15 (privileged except for information under "Japan" heading, which only transmits information from third party), 16 (handwritten notes may be redacted but underlying document must be disclosed because no translation), 18 (no evidence it reflects advice from German professional), 19 (same), 21 (transmits information already submitted to PTO), 62 (same), 69 (no evidence it reflects advice from German professional), 70 (transmits information from third party), 71 (no evidence it reflects advice from German professional), and 73 (same).

## 10. Greece

In category 53, documents 1 and 2 are not privileged because in these communications the attorney is functioning solely as a conduit delivering information from a third party. All other documents in category 53 are privileged except for the handwritten notes, which must be disclosed because no information has been provided regarding their authorship.

11.  Europe

All documents in categorical log entry 10 must be disclosed.

12.  Finland

All documents in categorical log entries 11 and 50 must be disclosed.

13.  France

All documents in categorical log entries 12 and 51 must be disclosed.

14.  Hong Kong

 The documents in category 15 must be disclosed.

15.  Hungary

All documents in categorical log entries 16 and 55 must be disclosed.

16.  Ireland

All documents in categorical log entries 17 and 56 must be disclosed.

17.  Israel

All documents in categorical log entries 18 and 57 must be disclosed.

18.  Japan

All documents in categorical log entries 20 and 59 must be disclosed.

19.  Italy

All documents in categorical log entries 19 and 58 must be

disclosed.

20. Luxembourg

All documents in categorical log entry 21 must be disclosed.

21. Malaysia

All documents in categorical log entries 22 and 61 must be disclosed.

22. The Netherlands

All documents in categorical log entries 23 and 62 must be disclosed.

23. New Zealand

All documents in category 24 must be disclosed. All documents in category 63 are privileged.

24. Pakistan

All documents in categorical log entry 65 must be disclosed.

25. Philippines

All documents in category 26 are privileged, with the following exception, which must be disclosed: 3 (author unidentified). All documents in category 66 must be disclosed.

26. Poland

All documents in categorical log entries 27 and 67 must be disclosed.

27. Portugal

All documents in categorical log entries 28 and 68 must be disclosed.

28. Romania

All documents in category 29 must be produced. All documents in category 69 are privileged.

29. Singapore

All documents in category 30 are privileged.

30. Slovakia

All documents in category 72 are privileged.

31. South Africa

All documents in categorical log entries 31 and 73 must be disclosed.

32. South Korea

All documents in categorical log entries 32 and 74 must be disclosed.

33. Spain

All documents in categorical log entries 33 and 75 must be disclosed.

34. Sweden

All documents in categorical log entries 35 and 76 must be disclosed.

35. Taiwan (Republic of China ("ROC"))

All documents in categorical log entry 78 must be disclosed.

36. Republic of Trinidad and Tobago

All documents in category 38 are privileged, except for the following, which must be disclosed: 1 (misclassified because no

evidence it reflects advice from Trinidad and Tobago attorney), 2
(same), and 4 (same).

37.  <u>United Kingdom</u>

All documents in category 39 are privileged.    All documents in
category 81 are privileged, except for the following, which must be
disclosed: 1 (unidentified handwritten note), 3 (merely transmits
information from third party), and 4 (same).