**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
                                              :
                                              :      **05 MD 1661 (HB)**
**In re Rivastigimine**                       :
**Patent Litigation**                         :      <u>**OPINION & ORDER**</u>
                                              :
                                              :
-------------------------------------------------------X
**Hon. Harold Baer, Jr., District Judge:**

Pursuant to 28 U.S.C. § 636(b)(1)(A) (2006) and Federal Rule of Civil Procedure
72(a), plaintiffs Novartis Pharmaceuticals Corporation, Novartis AG, Novartis Pharma
AG, Novartis International Pharmaceutical Ltd., and Proterra AG (collectively,
"Novartis" or "Plaintiffs") move this Court for reconsideration of portions of a discovery
decision by Magistrate Judge James C. Francis IV, issued on August 8, 2006.

In that decision, Magistrate Francis granted in part the motion filed by defendants
Dr. Reddy's Laboratories, Ltd., Dr. Reddy's Laboratories, Inc., Watson Pharmaceuticals
Inc., Watson Laboratories, Inc., and Sun Pharmaceutical Industries, Ltd. (collectively
"Defendants") to compel production of certain communications between Novartis and
their Swiss patent agents and Swiss in-house counsel (the "Swiss Motion documents") for
which Novartis had claimed attorney-client privilege, because there was no privilege.
Magistrate Francis also compelled production of certain communications received or
authored by U.S. patent agent Thomas McGovern (the "McGovern documents") because,
after <u>in camera</u> review, they did not reflect confidential communications.

Because Magistrate Francis did not abuse his discretion in finding that under
Swiss law, attorney-client privilege does not extend to the "Swiss Motion documents,"
Plaintiff's motion to reconsider that portion of Magistrate Francis' decision is denied.
The portion of Magistrate Francis' ruling regarding certain "McGovern documents"
which Plaintiffs have moved to reconsider is remanded to Magistrate Francis for the
reasons articulated below.[1]

---

[1] The Court would like to thank Lucas Charleston of New York Law School for his assistance in
researching this Opinion.

## I.    BACKGROUND

The Court assumes familiarity with the background facts of the case as set forth in prior opinions.  See, e.g., In re Rivastigmine Patent Litig., 2005 WL 957426, 2005 U.S. Dist. LEXIS 7167 (S.D.N.Y. April 25, 2005).

### A.    Background of the Case

Novartis manufactures and owns the patent rights for rivastigmine tartrate, which it sells under the brand name "Exelon" for the treatment of Alzheimer's-related dementia. In re Rivastigmine Patent Litig., 2005 U.S. Dist. LEXIS 7167, at *5-6.  Defendants have sought approval from the U.S. Food and Drug Administration to market generic forms of Exelon.  See id.  Plaintiff Novartis subsequently filed individual patent infringement actions against Defendants, alleging that Defendants' proposed products infringed two of Plaintiffs' registered patents.  Id. at *6-7.

The actions involved common questions of fact and were consolidated before the Southern District of New York.  In re Rivastigmine Litig., 360 F.Supp.2d 1361 (Jud. Pan. Mult. Lit. 2005).  The parties subsequently engaged in pre-trial discovery, and several disputes were brought before Magistrate Francis and resolved.  See In re Rivastigmine Litig., 237 F.R.D. 69 (S.D.N.Y. 2006) (herein "August 8, 2006 order").  Plaintiffs now bring a motion for reconsideration of two portions of Magistrate Francis' August 8, 2006 order.

### B.    Background of the Instant Disputes

#### 1.    Swiss Motion Documents

On July 21, 2005, Defendants filed a motion to, inter alia, compel Plaintiffs to disclose communications between Novartis and Swiss patent agents, Swiss in-house counsel and European patent attorneys relating to Swiss patent applications (i.e. the "Swiss Motion documents").[2]  See Letter of Maurice N. Ross, July 21, 2005, Ex. 2 to September 12, 2006 Declaration of James K. Stronski in Support of Defendants' Opposition to Plaintiffs' Partial Reconsideration of Magistrate Francis' August 8, 2006

---

[2] Defendants' motion also asked the Court to compel Plaintiffs to disclose communications between representatives of the inventors of rivastigmine and Novartis.

Order ("Stronski Decl.").  Plaintiffs objected in part on the grounds that the communications were protected by attorney-client privilege.

After interim discovery to ascertain the nature of the documents, see In re Rivastigmine, 237 F.R.D. 69, 72, Magistrate Francis held, inter alia, that under Swiss law, communications between Novartis employees and Swiss patent agents or Swiss in-house counsel were not covered by attorney-client privilege.[3]  See id. at 104. Accordingly, Magistrate Francis ordered Plaintiffs to disclose the Swiss Motion documents with few exceptions.[4]  Id.  Plaintiffs now move for reconsideration of this portion of the August 8, 2006 order.

### 2.  McGovern Documents

On September 28, 2005, Defendants submitted a motion to compel Plaintiffs to produce several documents based on alleged deficiencies in Plaintiffs' privilege log ("Privilege Log Motion").  Letter from Maurice Ross to Magistrate Judge Francis, Sept. 28, 2005, Ex. 6 to Stronski Decl.  Plaintiffs claimed several of the communications at issue were by U.S. patent agents or other non-attorneys working at the direction of licensed U.S. attorneys and thus were protected by attorney-client privilege.  Id. at 78. On November 21, 2005, Magistrate Francis ordered Plaintiffs to produce the withheld documents to the Court for in camera review.  Plaintiffs complied with Magistrate Francis's order.  The communications requested by Defendants consisted of, inter alia, documents authored or received by Thomas McGovern, a patent agent registered in the United States and formerly employed by Novartis or its predecessor (the "McGovern documents").

Magistrate Francis generally held that McGovern was supervised by an U.S. attorney during his participation in the communications at issue, with some exceptions.

---

[3] Generally, in deciding which country's law governs patent prosecution documents, courts look to the law of the country where the patent application is pending.  In re Rivastigmine, 237 F.R.D. at 74. Because both parties agreed that Swiss law governed, Magistrate Francis assumed without deciding that Swiss law governed the documents at issue.  Id. at 75.

[4] Magistrate Judge Francis held that the communications between Novartis and Martin Lutz, an in-house attorney and director for a Novartis entity, were privileged.  In re Rivastigmine, 237 F.R.D. at 78.  These communications involved requests for legal advice when Lutz was serving as Plaintiffs' outside counsel, prior to his in-house employment  Id.  Magistrate Francis also held that two other Swiss motion documents were privileged under Israeli and U.S. law.  Id. at 102-103.

In re Rivastigmine at 81.[5]  Thus, confidential communications authored or received by McGovern could be privileged under U.S. attorney-client privilege.  However, Magistrate Francis held that certain communications involving McGovern were not privileged.  Id. at 115-16.  Plaintiffs now move for reconsideration of Magistrate Francis's decision with respect to two of these communications – McGovern documents No. 207 and No. 209.

**C.    Swiss Law**

Plaintiffs base their claim of attorney-client privilege over the "Swiss Motion documents" primarily on three statutes: Basel-City Code of Civil Procedure § 116, Article 162 of the Swiss Penal Code, and Article 321(a) of the Swiss Federal Code of Obligations. The relevant Swiss statutes are as follows:[6]

1.    Basel-City Code of Civil Procedure § 116

Basel-City Code of Civil Procedure § 116 provides in full:[7]

Testimony may be denied by:

1. those who would have to speak to their detriment or disgrace in the taking [of the testimony],
2. clergy members, doctors, attorneys, notaries, a child's counsel according to Art. 146 ZGB, as well as those contracted by the complaint body (ombudsman), in reference to facts that were learned in the exercise of their profession and which by their nature are to be kept secret.
3. members and secretaries of the cantonal arbitration boards for questions of discrimination, concerning legal disputes negotiated before the arbitration board.

Declaration of Simon Fitzpatrick, August 3, 2005, Tab. 4, Ex. 1 to August 29, 2006 Declaration of Simon Fitzpatrick in Support of Plaintiffs' Motion for Partial Reconsideration of Magistrate Judge Francis's August 8, 2006 Order ("Fitzpatrick Decl.").

2.    Article 162 of Swiss Penal Code

---

[5] Magistrate Francis did note that Plaintiffs previously claimed, erroneously, that McGovern himself was the attorney whose participation provided the basis for the privilege.  In re Rivastigmine at 80.

[6] The parties' Swiss law experts proffered several Swiss statutes in support of their respective positions. Listed herein are the statues Magistrate Francis found pertinent to the discussion.  On this motion for reconsideration, however, Plaintiffs base their contentions only on Basel-City Code of Civil Procedure § 116, Article 162 of the Swiss Penal Code, and Article 321(a) of the Swiss Federal Code of Obligations.

[7] It is not entirely clear, because the parties have submitted translations of the relevant parts of relevant statutes, whether the parties have submitted these statutes in relevant part or in full.  However, the parties' English translations of the Swiss statutes are consistent with each other.

4

Article 162 of the Swiss Penal Code provides in full:

> He who betrays a manufacturing or commercial secret that he is bound, by legal or contractual duty, to keep,
>
> who makes use of this secret of himself or others,
>
> will, upon request, be punished with imprisonment or a monetary fine.

Tab 4, Ex. 2 to Fitzpatrick Decl.

### 3.   Article 321(a) of the Swiss Code of Obligations

Article 321(a) of the Swiss Code of Obligations provides in full:

> In the course of the employment relationship, the employee shall not make use of or inform others of any facts to be kept secret, such as, in particular, manufacturing or business secrets that come to his knowledge while in the employer's service.  Also, after termination of the employment relationship, he shall continue to be bound to secrecy to the extent required to safeguard the employer's legitimate interests.

Declaration of Felix H. Thomann, July 29, 2005, Tab 3, Ex. 3 to Fitzpatrick Decl.

### 4.   Additional Swiss Statutes

Additionally, Plaintiffs cited to several other Swiss statutes, which Judge Francis also considered in reaching his decision.

Basel-City Code of Civil Procedure § 109 states in full:

> A party is required to produce the following documents in their possession, at the request of and for the benefit of the opposing party:
>
> 1. documents created for the stated or obvious purpose of serving as  evidence between the parties;
> 2. documents which, under the circumstances of the particular case, belong in the hands of the opposite party and have come into possession of the respective party by coincidence or abuse;
> 3. its books of account;
> 4. the correspondence conducted between the parties with regard to the respective transaction.
>
> If a party disputes the duty to furnish the documents in its possession, the court decides the matter after having heard the parties.

Tab 4, Ex. 4 to Fitzpatrick Decl.

Article 16 of the Swiss Federal Act of Administrative Procedure provides in relevant part:

    1. The right to refuse to give testimony is determined by Article 42, Paragraphs 1 and 3 of the Federal Act on Federal Civil Procedure (BZP).

    2. The bearer of a professional or trade secret, in the sense of Article 42 2 BZP, may refuse to testify, insofar as another federal law does not require him to testify.

Tab 4, Ex. 3 to Fitzpatrick Decl.

    Article 42 of the Swiss Federal Act Regarding Federal Civil Procedure ("BZP") provides in relevant part:

    1. The giving of testimony may be refused…

    (b) by the persons named in Penal Code Art. 321, Section 1, with regard to facts, which pursuant to such provision come within professional secrecy, insofar as the holder of the right has not consented to disclosure of the confidential matter.

    2. The judge may exempt witnesses from disclosure of other professional secrets as well as of a trade secret if, even with observance of the security measures under Article 38, their interest in confidentiality outweighs the interest in disclosure of the party going forward with the proof.

Declaration of Annabelle Fischer, September 13, 2006, Tab 24, Ex. A to Stronski Decl.[8]

    **D.**    **Magistrate Francis's August 8, 2006 Opinion**

    1. <u>Swiss Motion Documents</u>

    Magistrate Francis held that under Swiss law, communications between Novartis employees and Swiss patent agents or Swiss in-house counsel were not covered by attorney-client privilege. <u>In re</u> <u>Rivastigmine</u>, 237 F.R.D. at 74-78.

    Preliminarily, Magistrate Francis noted that U.S. courts are currently unsettled as to whether Swiss law extends attorney-client privilege to Swiss patent agents and in-house counsel.  <u>In re Rivastigmine</u>, 237 F.R.D. at 76, <u>citing</u>, <u>e.g.</u>, <u>Variable-Parameter Fixture Development Corp. v. Morpheus Lights Inc.</u>, 1992 U.S. Dist. LEXIS 12272, 1992 WL 203865, at *1 (S.D.N.Y. Aug. 12, 1992) (finding status of privilege under Swiss law unclear); <u>Burroughs Wellcome Co. v. Barr Laboratories, Inc.</u>, 143 F.R.D. 611, 624

---

[8] As Magistrate Francis noted in his August 8, 2006 Opinion, Plaintiffs did not provide him with a copy of Article 42 of the BZP.  <u>In re</u> <u>Rivastigmine</u>, 237 F.R.D. at 77.  Plaintiffs have now provided a translation to this Court.  Leaving aside the question of whether this Court can consider evidence of foreign law not presented below on a motion for reconsideration, the full inclusion of this statute does not affect the ultimate analysis.  <u>See</u> note 14, <u>infra</u>.

(E.D.N.C. 1992) (finding letter from Swiss patent attorney to European patent attorney privileged on the basis of unopposed declaration).

In reaching his decision, Magistrate Francis distinguished between professional obligations to protect business secrets, such as Plaintiffs cited to, and the attorney-client privilege as understood in the United States. Although Swiss patent agents may be subject to ethical confidentiality obligations, such obligations do not provide an absolute bar against disclosure as the attorney-client privilege does. In re Rivastigmine, 237 F.R.D. at 75.

Examining the Swiss statutes proffered by Plaintiffs, Magistrate Francis found that none established an absolute privilege comparable to attorney-client privilege. For example, although the language of Article 321(a) of the Swiss Code of Obligations creates an ethical obligation of professional secrecy for Swiss patent agents, such obligation does not prevent a court from ordering the patent agent to testify about the communication. Id. at 77. Further, although Basel-City Code of Civil Procedure § 116 enumerates occupations that may refuse to testify, it does not list "patent agent" as one of them. Id. at 78. Although patent agents might face sanctions for violating secrecy obligations, Magistrate Francis found no case or statute supporting the concept that such sanctions were equivalent to an absolute testimonial privilege. Id. at 77. Additionally, the limited portions of Article 16 of the Swiss Federal Act of Administrative Procedure and Article 42 of the Swiss Federal Act Regarding Federal Civil Procedure ("BZP") that Plaintiffs proffered to the Court suggested Swiss patent agents have only an ethical obligation to protect professional secrets. Id.[9]

Regarding Swiss in-house counsel, Magistrate Francis found that they are not encompassed within Swiss attorney-client privilege laws, because their lack of independence from the client obviates the necessity for the privilege to facilitate the giving of objective legal advice. In re Rivastigmine, 237 F.R.D. at 76. Because the

---

[9] Magistrate Francis rejected Plaintiffs' argument that because, under more limited Swiss civil discovery rules, the Swiss motion documents would not be produced in Swiss litigation, they should be privileged in this litigation. Magistrate Francis held that, although the nature of foreign discovery regimes is to be considered, "the precise legal question is whether a special evidentiary privilege, comparable to the American attorney-client privilege, has been recognized in Swiss law… In this case… the absence of privilege results… from the fact that Swiss law specifically excludes the documents at issue from the privilege it recognizes." In re Rivastigmine, 237 F.R.D. at 78.

documents at issue were generally prepared by in-house counsel, even if an attorney-client privilege did exist for Swiss patent agents, Magistrate Francis held the documents at issue would still be discoverable.  Id. at 78.

      2.  McGovern Documents

Magistrate Francis found that licensed U.S. attorneys Gerald Sharkin, Robert Honor, and Melvyn Kassenoff had generally supervised McGovern's patent prosecution work.  Thus, under U.S. law, an evidentiary privilege could extend to confidential communications by McGovern that concerned supervised patent prosecutions. Magistrate Francis thus conducted in camera review of the McGovern documents to determine whether the documents reflected confidential communications.  However, Magistrate Francis held that McGovern documents No. 207 and No. 209 were not privileged, or were only partially privileged, because they did not reflect, or only partially reflected, confidential communications.  See In re Rivastigmine, 237 F.R.D. at 103.

## II.     STANDARD OF REVIEW

28 U.S.C. Section 636(b)(1)(A) provides that "a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court" except for certain specified dispositive motions.  Id. (2006).  The same statute also allows a judge to reconsider any pretrial matter assigned to a magistrate "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."  Id.  This "clearly erroneous or contrary to law" standard governs a trial court's review of a magistrate's order regarding a discovery dispute.  See Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990).

A finding is "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  Gualandi v. Adams, 385 F.3d 236, 240 (2d Cir. 2004), quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). An order is "contrary to law" when it fails to apply or misapplies relevant statutes, case law or rules of procedure.  Collens v. City of New York, 222 F.R.D. 249, 251 (S.D.N.Y. 2004) (citation omitted).  Accordingly, "magistrate judges are afforded broad discretion

in resolving non-dispositive disputes and reversal is appropriate only if their discretion is abused." <u>Am. Stock Exch., LLC v. Mopex, Inc.</u>, 215 F.R.D. 87, 90 (S.D.N.Y. 2002).

### III.   DISCUSSION

#### A.   <u>Swiss Motion Documents</u>

Where, as here, a communication with a foreign patent agent or attorney involves a foreign patent application, as a matter of comity, courts look to the law of the country where the patent application is pending to examine whether that country's law provides a privilege comparable to U.S. attorney-client privilege.  <u>See</u>, <u>e.g.</u>, <u>Eisai Ltd. v. Dr. Reddy's Labs., Inc.</u>, 406 F. Supp. 2d 341, 342-43  (S.D.N.Y. 2005); <u>Astra Aktiebolag v. Andrx Pharms., Inc.</u>, 208 F.R.D. 92, 98 (S.D.N.Y. 2002); <u>Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc</u>., 1998 U.S. Dist. LEXIS 4213, at *2-3 (S.D.N.Y. 1998) ("<u>Bristol-Myers I</u>").  That country's law will be followed unless doing so offends U.S. policy considerations.  <u>See</u>, <u>e.g.</u>, <u>Bristol-Myers I</u>, 1998 U.S. Dist. LEXIS 4213, at *2-3.  The proponent of the privilege bears the burden of establishing its applicability to the present circumstances.  <u>See</u> <u>P.& B. Marina, Ltd. v. Logrande</u>, 136 F.R.D. 50, 53-54 (E.D.N.Y. 1991), <u>aff'd</u>, 983 F.2d 1047 (2d Cir. 1992).

Here, both parties have agreed (correctly, I believe) that Swiss law governs the "Swiss Motion documents."[10] Thus, I will examine whether Magistrate Francis' ruling that Swiss law does not provide a privilege comparable to the attorney-client privilege is "clearly erroneous or contrary to law."

At the outset, Magistrate Francis correctly noted that it is "unsettled" whether Swiss law recognizes a privilege for patent agents comparable to U.S. attorney-client privilege.[11]  U.S. courts that have considered the issue have not done so in detail.  <u>See</u>, <u>e.g.</u>, <u>Variable-Parameter Fixture Development Corp. v. Morpheus Lights Inc.</u>, 1992 U.S. Dist. LEXIS 12272, 1992 WL 203865, at *1 (S.D.N.Y. Aug. 12, 1992) (finding existence

---

[10] A minority of courts have previously ruled that foreign patent-agent communications are simply not subject to privilege.  <u>See</u>, <u>e.g.</u>, <u>Status Time Corp. v. Sharp Electronics Corp.</u>, 95 F.R.D. 27 (S.D.N.Y. 1982).  More recent authority rejects this proposition.  <u>See</u>, <u>e.g.</u>, <u>Eisai Ltd. v. Dr. Reddy's Labs., Inc.</u>, 406 F. Supp. 2d 341, 343 n.2.  This court, too, follows recent authority in rejecting this proposition.

[11] Indeed, the very fact that the governing law at issue is unsettled makes it more difficult to overturn Magistrate Francis' reasoning as "clearly erroneous" or "contrary to law."

of privilege under Swiss law "less clear," but refusing to order disclosure because under balancing test provided by Swiss trade secret statute, interest of litigant in disclosure did not outweigh interest of agent in secrecy); Burroughs Wellcome Co. v. Barr Laboratories, Inc., 143 F.R.D. 611, 624 (E.D.N.C. 1992) (cursorily finding letter from Swiss patent attorney to European patent attorney privileged on the basis of unopposed declaration).[12] Thus, Magistrate Francis undertook his own analysis, which appears to be the most considered treatment of Swiss law concerning this issue to date.

    1.  Patent Agents

Magistrate Francis' holding that Swiss law does not provide a privilege comparable to the attorney-client privilege for patent agents rests on the distinction between a professional secrecy obligation and an evidentiary privilege. "The former is a professional's ethical obligation to his client; the latter is an evidentiary privilege of non-disclosure." In re Rivastigmine, 237 F.R.D. at 75. Plaintiffs would have us believe that this is a distinction without a difference. However, as Magistrate Francis reasoned, under a typical professional secrecy obligation, "a court may order disclosure if it determines that the need for the information is sufficient to outweigh the secrecy obligation;" while "the privilege, in contrast, is absolute and inviolate." Id.; see also Bristol-Myers I, 1998 U.S. Dist. LEXIS 4213, at *7-8; Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., 188 F.R.D. 189, 199-200 (S.D.N.Y. 1999) ("Bristol-Myers II").

Professional secrecy obligations constructed as such thus fail to meet the classical formulation of attorney-client privilege as formulated by Dean Wigmore, namely, that where (1) legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) a communication relating to that purpose, (4) made in confidence (5) by the client (or attorney), (6) is at his instance permanently protected (7) from disclosure by himself or the legal advisor, (8) except if the privilege is waived (emphasis added). See Bristol-Myers II, 188 F.R.D. 189, 199. Because a court may order disclosure, professional secrecy obligations do not permanently protect the communication from disclosure, thus failing to meet conditions (6) and (7) of Dean Wigmore's formulation.

---

[12] Magistrate Francis also cited a more recent report wherein Swiss intellectual property professionals offered their opinion that Swiss law does not provide attorney-client privilege to patent agents, as it does for attorneys. See Attorney-Client Privilege and the Patent and/or Trademark Attorneys Profession: Answer of the Swiss Group, Questionnaire of the International Association for the Protection of Intellectual Property (AIPPI), May 2002, available at http://www.aippi.org/reports/q163/quest02/q163_switzerland.pdf.

American law distinguishes as well between professional secrecy obligations and attorney-client privilege, even as applied to American lawyers.  See Bristol-Myers II at 199-200 (noting that despite confidentiality obligations, American lawyers must disclose to a court the manner and amount of payment for their services; conversely, however, "the privilege cannot be overridden because a tribunal determines that the need for disclosure… outweighs the need for confidentiality").

Here, the Swiss statutes proffered by Plaintiffs create at most a professional secrecy obligation for patent agents, not an absolute evidentiary privilege comparable to U.S. attorney-client privilege.  For example, Article 321(a)(4) of the Swiss Code of Obligations provides that an employee "shall not… inform others of any facts to be kept secret, such as… business secrets."[13]  Leaving aside the question of whether patent agents qualify as "employees," the statute does not speak at all to the question of whether a patent agent can refuse to disclose "business secrets" if so compelled by a court.  Article 16 of the Swiss Federal Act of Administrative Procedure does provide that "the bearer of a professional or trade secret, in the sense of Article 42 Section 2 BZP, may refuse to testify," but then qualifies that privilege by stating "insofar as another federal law does not require him to testify." Article 42, Section 2 of the Swiss Federal Act Regarding Federal Civil Procedure ("BZP") further provides that "[t]he judge may exempt witnesses from the disclosure of other professional secrets as well as of a trade secret…" if "their interest in confidentiality outweighs the interest in disclosure…" (emphasis added).[14] Any "privilege" provided for here contemplates disclosure if required by court or law,

[13] Article 162 of the Swiss Penal Code additionally provides a punishment of fines or imprisonment for those who betray "manufacturing or commercial secret[s]."  However, the provision of sanctions for improper disclosure of professional secrets does not speak to the question of whether someone can be legally compelled to disclose the secret by a court.  See, e.g., Bristol-Myers II at 200 (holding that European Patent Office secrecy regulations do not confer the equivalent of U.S. attorney-client privilege on European Patent Office representatives).  Nor does the provision of criminal penalties change the analysis. See Bristol-Myers I, 1998 U.S. Dist. LEXIS 4213, at *3-4 (noting that French penal code provides for criminal penalties against patent agents who disclose trade secrets, yet holding that French laws do not provide for a privilege analogous to attorney-client privilege because French patent agents can be compelled to disclose information by a court).

[14] Judge Francis noted below that Plaintiffs did not provide him with a copy of Article 42 of the BZP.  In re Rivastigmine, 237 F.R.D. at 77.  Although Plaintiffs have now provided this Court with a copy of Article 42, some authority indicates this Court is not required to consider it on reconsideration.  See Eisai, F. Supp. 2d 341, 343 n.2 ("[T]he Court is not required to consider an afterthought argument… never presented to the Magistrate Judge below.").  Nevertheless, this Court's full reading of Article 42 does not change my outcome.

and is thus not absolute as is U.S. attorney-client privilege.  See Bristol-Myers II at 199-200; Eisai, 406 F. Supp. 2d 341, 344-45 (upholding privilege under Japanese law for Japanese *benrishi* because "the privilege is indeed absolute when applicable");[15] VLT Corp. v. Unitrode Corp., 194 F.R.D. 8, 19 (D.Mass. 2000) (upholding privilege under British law because "neither the client, nor the [patent agent] without his consent, can be compelled to disclose the communications in the course of legal proceedings."); Golden Trade v. Lee Apparel Co., 143 F.R.D. 514, 524 (S.D.N.Y. 1992) (upholding privilege under German law because "German courts may not compel a Patent Attorney to disclose… communications" and communications are not discoverable).

　　　　As for Basel-City Code of Civil Procedure § 116, it does appear to provide a privilege against testifying (albeit not document production) for certain professions, including "attorneys," as to facts "learned in the exercise of their profession and which by their nature are to be kept secret."  However, as Defendants note, it does not provide this privilege to patent agents.  See In re Rivastigimine at 77.  Plaintiffs would have us read the first general part of this statute, providing a right to refuse testimony to "those who would have to speak to their detriment or disgrace in the taking [of the testimony]," in conjunction with the employment laws providing for protection of business secrets and sanctions against those who disclose them, to provide a broad privilege to all in employment relationships against disclosing trade secrets in court.  Magistrate Francis

---

[15] Plaintiffs argue that Eisai supports their position that Swiss law provides a privilege to patent agents comparable to U.S. attorney-client privilege.  However, Eisai differs from the instant case in that Japanese law explicitly provides *benrishi* (Japanese patent agents) with privileges against disclosing professional secrets.  "Article 197(2) of the Code [of Civil Procedure of Japan] provides that a *benrishi* may refuse to testify about a fact that he should keep secret and that he learned in the exercise of his professional duties, and Article 220(4) permits any holder of a document to refuse to produce a document that contains matters exempt from disclosure under Article 197(2)." Eisai at 343.  No Swiss statutes explicitly provide a privilege to patent agents as Japanese statutes do.  Plaintiffs' attempts to infer a privilege by cobbling together the Swiss statutes at issue are far less convincing.

found this reading implausible, as does this Court.[16]  Even if this Court did not find it implausible, Magistrate Francis' reading is not "clearly erroneous or contrary to law."[17]

Magistrate Francis noted Plaintiffs' argument that because of more limited Swiss discovery procedures, a Swiss court (allegedly) would not order disclosure of the documents at issue, and thus comity dictates non-disclosure.  In re Rivastigimine at 78. However, "[i]f no privilege is provided for by the statutes of the foreign forum, no privilege can be implied." Astra Aktiebolag v. Andrx Pharms., Inc., 208 F.R.D. 92, 100, citing Alpex Computer Corp. v. Nintendo Co., Ltd., 1992 U.S. Dist. LEXIS 3129, 1992 WL 51534, at *2 (S.D.N.Y. 1992).  Here, as Magistrate Francis determined, Swiss

---

[16] If Basel-City Code of Civil Procedure § 116 truly did provide a broad privilege to all in employment relationships against disclosing trade secrets in court, such a broad privilege might well offend U.S. policy principles favoring disclosure.  Cf. Bristol-Myers I, 1998 U.S. Dist. LEXIS 4213, at *2-3; Eisai, 406 F. Supp. 2d at 342-43.  Indeed, an American analogy to Plaintiff's reading of the Swiss statutes might be that the confluence of the Fifth Amendment privilege against self-incrimination and U.S. laws protecting trade secrets grants a broad privilege to those U.S. employees working under confidentiality obligations from both testifying in court as to such trade secrets and producing documents concerning their communications thereof.

[17] Plaintiffs aver that Magistrate Francis "overlooked" the third declaration of their Swiss law expert, Dr. Felix Thomann, in reaching his decision because he did not explicitly cite to it in his opinion.  Plaintiffs' Memorandum in Support of Their Motion for Partial Reconsideration, August 29, 2006, at 8; see In re Rivastigimine at 77 ("…Novartis provides two declarations from Felix H. Thomann.").  However, Dr. Thomann's third declaration does not provide any new statutes, but merely provides additional argument in support of Dr. Thomann's previous contentions.  Regardless of whether Magistrate Francis explicitly cited to the third declaration, it is apparent that he considered and rejected its substantive arguments in formulating his holding.  Even if Magistrate Francis did not consider Dr. Thomann's third declaration, this Court's consideration of it does not affect this Court's reasoning.

Plaintiffs additionally aver that Dr. Thomann's third declaration provided uncontroverted evidence that under Basel-City Code of Civil Procedure § 116 (1), the risk of sanctions constitutes a "disadvantage implicating the right to refuse to testify."  Defendants' expert (allegedly) did not address the issue.  Thus, Plaintiffs imply, because Plaintiffs have put forth "uncontroverted" evidence that the statute establishes a privilege, Magistrate Francis erred in finding no privilege.  Plaintiffs also aver that because their expert explicitly declared that the Swiss statutes provide an "evidentiary privilege," Magistrate Francis erred in finding no privilege.  Further, Plaintiffs aver that Magistrate Francis "improperly speculated on the intent of the Swiss legislature" in reading Basel-City Code of Civil Procedure § 116 to find no privilege.

Plaintiffs fundamentally misunderstand the decision-making role of the Magistrate regarding foreign law. They imply that the determination of foreign law is a factual matter, and thus the proffer of uncontroverted evidence requires a finding by the Court in their favor.  However, under Fed. R. Civ. P. 44.1, the Court's determination of an issue of foreign law "shall be treated as a ruling on a question of law."  Id.  "The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."  Id.  Rule 44.1, adopted in 1966, explicitly changed the Federal Rules so that the Court "may do its own research on foreign law, just as it customarily always has done on issues of domestic law."  Wright & Miller, Federal Practice and Procedure § 2444; see also Curtis v. Beatrice Foods Co., 481 F.Supp. 1275, 1285 (S.D.N.Y. 1980) ("…[F]ederal judges may reject even the uncontradicted conclusions of an expert witness and reach their own decisions on the basis of independent examination of foreign legal authorities.") (citation omitted). Plaintiffs' arguments here are unavailing.

statutes do not provide a privilege comparable to attorney-client privilege for patent agents.  Although, as Magistrate Francis noted, "special problems [may] arise when evaluating the attorney-client privilege of foreign jurisdictions whose discovery systems are not comparable to our own," this Court will likewise not imply privilege from discovery procedures where none exists.  See In re Rivastigimine at 78 ("In this case… the absence of privilege results not from the lack of comparability of the Swiss and U.S. legal systems, but from the fact that Swiss law specifically excludes the documents at issue from the privilege it recognizes.").

In sum, it is Plaintiff's burden, as the proponent of the privilege, to demonstrate the applicability of the privilege to the present circumstances.  See P. & B. Marina, Ltd. v. Logrande, 136 F.R.D. 50, 53-54.  Here, given the difference between professional secrecy obligations and attorney-client privilege, Plaintiffs have not done so.  Magistrate Francis' ruling regarding the "Swiss Motion Documents" stands.

2.  In-House Counsel

Magistrate Francis additionally found that Swiss law does not provide a privilege analogous to U.S. attorney-client privilege for in-house attorneys and patent agents. Magistrate Francis rested his holding on treatises summarizing Swiss law, as well as policy concerns that because in-house counsel lack independence from the client, the need for an attorney-client privilege to facilitate objective legal advice is obviated.  See Robert Furter & Michael Kramer, In-House Counsel and the Attorney-Client Privilege: A Lex Mundi Multi-Jurisdictional Survey 66-67 (2004), available at http://www.lexmundi.com/images/lexmundi/PDF/AttyClient/Switzerland.pdf ("[I]t is still the prevailing opinion in Switzerland that an in-house counsel does not enjoy the attorney-client privilege"); Triplett Mackintosh & Kristen M. Angus, Conflict in Confidentiality: How E.U. Laws Leave In-House Counsel Outside the Privilege, 38 Int'l Law. 35, 39-40, 53-54 (2004) (noting that European Union generally does not recognize attorney-client privilege for in-house counsel).

Plaintiffs, in a letter to this Court subsequent to submission of their motion briefs, have dropped their opposition to this portion of Magistrate Francis' opinion addressing in-house counsel.  Plaintiffs' Letter of Diego Scambia, October 13, 2006.  Defendants, however, aver that a ruling on the issue of in-house counsel remains necessary because it

may affect future deposition testimony and testimony at trial.  Defendants' Letter of James Stronski, October 18, 2006.  I see no reason to disturb as "clearly erroneous or contrary to law" Magistrate Francis' ruling that under Swiss law, communications of Swiss in-house counsel are not protected by a privilege comparable to attorney-client privilege.  Magistrate Francis' ruling regarding Swiss in-house counsel stands.

## B.  "McGovern Documents"

Magistrate Francis generally held that confidential communications authored or received by patent agent Thomas McGovern could be privileged under U.S. attorney-client privilege, as McGovern was supervised by a U.S. attorney during his participation in the communications at issue.  In re Rivastigmine at 81; see Golden Trade v. Lee Apparel Co., 143 F.R.D. 514, 518.  However, Magistrate Francis held that certain communications involving McGovern were "not privileged, or [were] only partially privileged, because they [did] not reflect, or only partially reflect[ed], confidential communications."  Id. at 115-16.  Plaintiffs moved to reconsider this portion of Magistrate Francis' opinion regarding two documents – Documents 207 and 209.

This Court appreciates Magistrate Francis' painstaking effort to review hundreds of documents for privilege under the law of thirty-eight different countries (by this Court's count).  However, when undertaking an individualized inquiry such as the determination of whether specific documents are privileged, it is difficult for this Court, particularly in a case such as this with a long procedural history of privilege disputes, to review Plaintiffs' motion for reconsideration of Magistrate Francis' opinion without a fuller explanation of the grounds on which his opinion stands.  I am thus remanding the issue of whether Documents 207 and 209 are privileged to Magistrate Francis for a fuller clarification and explanation of the grounds underlying his ruling regarding these two documents.  See Yurman Design, Inc. v. Chaindom Enters., 2000 WL 1871715, 2000 U.S. Dist. LEXIS 18329, at *10-11 (S.D.N.Y. 2000) (remanding Motion to Reconsider Magistrate's two-sentence ruling for explanation of the grounds underlying ruling); Gorman v. Polar Electro, Inc., 137 F. Supp. 2d 223, 228 (E.D.N.Y. 2001) (remanding Motion to Reconsider Magistrate's ruling that communications with patent agent were not protected for determination of whether patent agent was acting under the authority of counsel).

## IV.    CONCLUSION

Because Magistrate Francis did not abuse his discretion in finding that under Swiss law, attorney-client privilege does not extend to the "Swiss Motion documents," Plaintiff's motion to reconsider that portion of Magistrate Francis' decision is DENIED. Magistrate Francis' ruling regarding Documents 207 and 209 is REMANDED to his Court for proceedings consistent with this Opinion.

The Clerk of the Court is instructed to close this motion and remove it from my docket.

**IT IS SO ORDERED.**

**New York, New York**
**November 22, 2006**

_____
U.S.D.J.

16