```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK          (ECF)
- - - - - - - - - - - - - - - - - -:
                                    :  05 MD 1661 (HB) (JCF)
In Re RIVASTIGMINE PATENT           :
LITIGATION (MDL No. 1661),          :        REPORT AND
                                    :      RECOMMENDATION
- - - - - - - - - - - - - - - - - -:
```

TO THE HONORABLE HAROLD BAER, U.S.D.J.:

Plaintiffs Novartis Pharmaceuticals Corporation, Novartis AG, Novartis Pharma AG, Novartis International Pharmaceutical Ltd. and Proterra AG (collectively, "Novartis"), seek to dismiss their claim against defendants Watson Pharmaceuticals Inc. and Watson Laboratories, Inc. (collectively, "Watson") and Sun Pharmaceutical Ltd. ("Sun") for infringement of U.S. Patent No. 5,602,176. The defendants oppose the motion unless a number of conditions are accepted by Novartis and incorporated into its covenants not to sue. For the reasons set forth below, I recommend that Novartis' motion be granted subject to certain conditions, but that this court retain jurisdiction of this matter for the purpose of considering the defendants' request for attorneys' fees.

Background

This multidistrict litigation concerns the patent rights for rivastigmine tartrate ("rivastigmine"), the active ingredient in Exelon, a medication marketed by Novartis for the treatment of mild to moderate dementia of the Alzheimer's type.[1]   Sun and Watson

---

[1] The factual background of this litigation is set out at length in previous orders, see, e.g., In re Rivastigmine Patent Litigation, No. 05 MD 1661, 2005 WL 957426, at *1-2 (S.D.N.Y. April

indicated their intent to market a generic version of Exeleon by filing Abbreviated New Drug Applications ("ANDAs") with the FDA, the first step in bringing a generic product to market. See Purepac Pharmaceutical Co. v. Thompson, 354 F.3d 877, 879 (D.C. Cir. 2004) (citing 21 U.S.C. § 355(j)(2)(A); 21 C.F.R. § 314.94(a)(3)). In response, Novartis brought actions alleging that the defendants,[2] by filing ANDAs, induced infringement of two patents owned by Novartis. One defendant, Watson, then counterclaimed against Novartis for a declaratory judgment that the patents in question are invalid.

Novartis now seeks to dismiss with prejudice its claims with regard to one of the two rivastigmine patents, U.S. Patent No. 5,602,176 ("the '176 patent"), and to dismiss without prejudice Watson's counterclaims regarding that patent.[3] Novartis filed a motion to dismiss its claim against Sun on February 2, 2007 and another to dismiss its claim against Watson on February 8, 2007. In addition, it has executed covenants not to sue Sun and Watson over the '176 patent (collectively, "the covenants"). (Plaintiffs' Covenant Not to Sue Sun for Infringement of the '176 Patent, attached as Exh. 9 to Declaration of Simon A. Fitzpatrick dated Feb. 2, 2007 ("Fitzpatrick 2/2/07 Decl."); Plaintiffs' Covenant Not

---

25, 2005), and will only be discussed here as it pertains to the instant motion.

[2] A third defendant in the original action, Dr. Reddy's Laboratories, Ltd. and Dr. Reddy's Laboratory, Inc., is not involved in the current motion.

[3] Thus, their claims with regard to the other patent, U.S. Patent No. 4,948,807 (the "'807 patent"), remain.

to Sue Watson for Infringement of the '176 Patent on Products Covered by ANDA No. 77-129 ("Watson Covenant"), attached as Exh. 9 to Declaration of Simon A. Fitzpatrick dated Feb. 8, 2007 ("Fitzpatrick 2/8/07 Decl.")).[4]

Defendants Sun and Watson oppose Novartis' motion to dismiss as it is currently formulated on the grounds that they will be prejudiced unless various conditions are attached to the dismissal. The defendants seek the inclusion of language in any dismissal order making it clear that the dismissal was for lack of subject matter jurisdiction and specifying that the Court retains jurisdiction over the case for the purpose of adjudicating the defendants' demand for attorneys' fees. They also seek the addition of certain language to the covenants. First, the defendants ask that the covenant not to sue be extended to include the defendants' "suppliers, distributors, customers, partners, or their successors and assigns." Second, they ask that the covenant cover not only patent infringement based on the importation, manufacture use, sale, or offer for sale, but also "any other basis for any claim of direct, contributory, or induced infringement" related to the products in question. Third, they ask that the covenants state explicitly that they apply not only to the defendants' ANDAs, but to "any amendment made thereto." (Sun's

_____

[4] The versions of the covenants included in the Fitzpatrick Declarations of 2/2/07 and 2/8/07 were unsigned. Signed versions of the covenants were later executed and replace the unsigned versions. Any subsequent references to the covenants are to the versions that have been executed. (Letter of Nicholas N. Kallas, dated March 1, 2007, and attachments).

Proposed Covenant Not to Sue, attached as Exh. 1 to its Memorandum of Law in Opposition to Plaintiffs' Motion to Dismiss with Prejudice Their Action Against Sun For Infringement of U.S. Patent No. 5,602,176 ("Sun Memo."); Watson's Proposed Covenant Not to Sue, attached as Exh. 2 to Declaration of James K. Stronski dated March 2, 2007 ("Stronski Decl.")). The defendants contend that these changes are necessary to eliminate any case or controversy between the parties and thus to make dismissal appropriate. In addition, Watson seeks to have the dismissal certified as a partial final judgment under Rule 54(b)of the Federal Rules of Civil Procedure.

Novartis opposes each of these proposed changes in whole or in part. However, as explained below, although this Court has no power to order Novartis to alter its covenants, the case and controversy will not be sufficiently settled to warrant dismissal absent certain modifications to the covenants.

Discussion

It is axiomatic that the exercise of judicial power under Article III of the United States Constitution requires the existence of a case or controversy. Courts may not render advisory opinions or decide questions that do not affect the rights of the parties to the case. See Preiser v. Newkirk, 422 U.S. 395, 401 (1975). The existence of an actual controversy "must be evaluated on a claim-by-claim basis." Jervis B. Webb Co. v. Southern Systems, Inc., 742 F.2d 1388, 1399 (Fed. Cir. 1984). Moreover, "'[i]t is well-established that a trial court may be divested or deprived of subject matter jurisdiction over a particular patent

4

claim if the patentee covenants not to assert an infringement claim against a putative infringer.'" <u>Crossbow Technology, Inc. v. YH Technology, Inc.</u>, No. C 03-04360, 2007 WL 174422, at *2 (N.D. Cal. Jan. 22, 2007)(quoting <u>Eli Lilly & Co. v. Zenith Goldline Pharmaceuticals</u>, 101 F. Supp. 2d 1139, 1142 (S.D. Ind. 2000)). Here, Novartis argues that its covenant not to sue coupled with a motion for dismissal with prejudice effectively ends any case or controversy, and thus deprives the Court of jurisdiction under Article III.   (Plaintiff's Memorandum of Law in Support of Their Motion to Dismiss With Prejudice Their Claim Against Watson for Infringement of U.S. Patent No. 5,602,176 at 3-4; Plaintiffs' Memorandum of Law in Support of Their Motion to Dismiss With Prejudice Their Action Against Sun for Infringement of U.S. Patent No. 5,602,176 at 4-5).   Thus, it contends that as of the execution of its covenant not to sue, this Court no longer has the power to condition dismissal on changes to the covenants nor to entertain an application for attorneys' fees.   The defendants, while conceding that Novartis' actions require the Court to dismiss the case (Sun Memo. at 2),  argue that the dismissal falls under Rule 41(a)(2) of the Federal Rules of Civil Procedure[5] and thus may be made contingent upon "such terms and conditions as the court deems proper".

---

[5] Rule 41(a)(2) provides, in pertinent part, that "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper."

5

A. Jurisdiction Over Novartis' Claim for Patent Infringement

The first issue at hand is whether a voluntary dismissal with prejudice, accompanied by a covenant not to sue, divests the court of subject matter jurisdiction as a matter of constitutional law, or whether such dismissal is governed by Rule 41(a)(2).  I note at the outset that the law of the Federal Circuit governs questions of patent law, while the law of the regional circuit applies to procedural questions that are not specific to patent law.  See Madey v. Duke University, 307 F.3d 1351, 1358 (Fed. Cir. 2002). Following that principle, district courts have universally applied Federal Circuit law in patent cases in order to determine whether a court retains subject matter jurisdiction in the face of a covenant by the plaintiff not to sue.  See, e.g., Merck & Co. v. Watson Laboratories, Inc., No. C.A. 05-658, 2006 WL 1537375, at *3 (D. Del. June 2, 2006); Sirius Satellite Research Inc. v. Acacia Research Corp., No. 05 Civ 7495, 2006 WL 238999, at *3 (S.D.N.Y. Jan. 30, 2006); Eon Labs, Inc. v. Pfizer Inc., No. 05 Civ. 0002, 2005 WL 2848952, at *1-2 (S.D.N.Y. Oct. 28, 2005); SVG Lithography Systems, Inc. v. Ultratech Stepper, Inc., 334 F. Supp. 2d 21, 26 (D. Mass. 2004);  Kos Pharmaceuticals, Inc. v. Barr Laboratories, Inc., 242 F. Supp. 2d 311, 314 (S.D.N.Y. 2003); Synopsys, Inc. v. Ricoh Co., 343 F. Supp. 2d 883, 888 (N.D. Cal. 2003); Arista Technologies, Inc. v. Arthur D. Little Enterprises, Inc., 125 F. Supp. 2d 641, 654 (E.D.N.Y. 2000).

Several Federal Circuit decisions have implied that dismissal in this situation is required as a matter of constitutional law.

In <u>Super Sack Manufacturing Corp. v. Chase Packaging Corp.</u>, 57 F.3d 1054, 1058-59 (Fed. Cir. 1995), the Federal Circuit affirmed a district court order dismissing a patent infringement suit on the basis of a representation by the plaintiff that it would not sue the defendant for infringement of the patent in question.  The district court improperly dismissed the case under Rule 41(a)(2),[6] <u>id.</u> at 1057 n.2, but the Federal Circuit nonetheless affirmed the trial court's decision to "dismiss[] the case for lack of an actual controversy as required by Article III."  <u>Id.</u> at 1057; <u>see also Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.</u>, 248 F.3d 1333, 1340 (Fed. Cir. 2001)(finding that <u>Super Sack</u> "determin[ed] that Federal Rule of Civil Procedure 41(a)(2) . . . was inapplicable, but nevertheless determin[ed] that the trial court dismissed the case for lack of an actual controversy as required by Article III based on a statement of nonliability").  Other courts have found that under <u>Super Sack</u> and <u>Intellectual Property Development</u>, dismissal in such circumstances is mandatory as a constitutional matter rather than discretionary pursuant to Rule 41.  <u>See SVG Lithography Systems</u>, 334 F. Supp. 2d at 26 (finding that "[i]n both <u>Super Sack</u> and <u>Intellectual Property Development</u>, the Federal Circuit affirmed the district court decisions based on the lack of subject matter jurisdiction based on

---

      [6] Rule 41(a)(2) was presumably inapplicable because of the provision that "[i]f a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court."

the plaintiffs' statements of non-liability rather than on dismissal pursuant to Rule 41(a)(2)" and therefore that the patent infringement claims at issue had to be dismissed for lack of Article III jurisdiction rather than under Rule 41(a)(2)); Merck, 2006 WL 1537375, at *3 (holding, in case involving voluntary dismissal of patent infringement claims, that "dismissal of this case is required under Article III of the United States Constitution, which trumps the Federal Rules of Civil Procedure"); Arista Technologies, 125 F. Supp. 2d at 654 ("Where a patent owner has granted a plaintiff a covenant not to sue for present activity that would place the plaintiff at risk of infringement liability, dismissal is required for lack of an actual controversy.").

However, in a recent case in which the plaintiff sought to dismiss its patent infringement claims, the Federal Circuit limited Super Sack's holding to declaratory judgment counterclaims in patent infringement cases:

> While the covenant [not to sue on the claims in question] may have eliminated the case or controversy pled in the patent-related counterclaims and deprived the district court of Article III jurisdiction with respect to those counterclaims, see Super Sack, 57 F.3d at 1058-59 . . . , the covenant does not deprive the district court of jurisdiction to determine the disposition of the patent infringement claims raised in the Complaint under Rule 41[.]

Highway Equipment Co. v. FECO, Ltd., 469 F.3d 1027, 1033 n.1 (Fed. Cir. 2006).[7]  Novartis suggests that Highway Equipment is "inconsistent" with earlier Federal Circuit law, including

---

[7] The analytical basis for this distinction is somewhat opaque; nonetheless, it is clearly the law of the Federal Circuit, and therefore this Court is bound to follow it.

Intellectual Property Development -- and, presumably, Super Sack -- and that, under Federal Circuit custom, the earlier holding must be given precedence absent explicit en banc reconsideration.  See Newell Companies, Inc. v. Kenney Manufacturing Co., 864 F.2d 757, 765 (Fed. Cir. 1988)("This court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned en banc."). (Plaintiffs' Combined Reply in Support of Their Motion to Dismiss With Prejudice Their Claims Against Watson and Sun for Infringement of U.S. Patent No. 5,602,176 and to Dismiss Without Prejudice Watson's Counterclaims Concerning That Patent ("Pl. Reply Memo.") at 10 n.9).

But Highway Equipment is not irreconcilable with Super Sack and Intellectual Property Development; indeed, the court specifically distinguished Super Sack.  As interpreted by the court in Highway Equipment, the Super Sack line of cases applies only to declaratory judgment counterclaims (which cannot be dismissed under Rule 41(a)(2) in any event), and thus applies here only to the court's jurisdiction over Watson's counterclaims for declaratory judgment.[8]  469 F.3d at 1033 n.1.  The underlying patent infringement claim by Novartis against each of the three defendants must be dismissed under Rule 41(a)(2), and dismissal may therefore

---

[8] Cases such as SVG Lithography, 334 F. Supp. 2d at 26, and Merck, 2006 WL 1537375, at *3, which seem to read Super Sack otherwise, predate Highway Equipment.  To the extent that they construe Super Sack to require dismissal on a covenant not to sue as a matter of Article III jurisdiction, they have been called into question by the Federal Circuit's holding in Highway Equipment.

be conditioned upon Novartis's agreement to certain conditions.

   B.  Jurisdiction Over Watson's Counterclaims

   Under Federal Circuit law following Highway Equipment, the
court's jurisdiction over Watson's counterclaims for declaratory
judgment against Novartis is governed by a standard different from
that which applies to Novartis' patent infringement claims.   The
Court's analysis must begin with the proposition that "a litigant
may seek a declaratory judgment only where an 'actual controversy'
exists." Sirius Satellite Research, 2006 WL 238999, at *3 (quoting
28 U.S.C. § 2201(a)).

>    In a declaratory judgment case involving patent rights,
>    an actual controversy arises where there is (1) "an
>    explicit threat or other action" creating "a reasonable
>    apprehension on the part of the declaratory plaintiff
>    that it will face an infringement suit," and (2) "present
>    activity which could constitute infringement or concrete
>    steps taken with the intent to conduct such activity."

Kos Pharmaceuticals, 242 F. Supp. 2d at 314 (quoting BP Chemicals
Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir. 1993));
accord Super Sack, 57 F.3d at 1058; Eon Labs, Inc., 2005 WL
2848952, at *2; Synopsys, 343 F. Supp. 2d at 888.
"'Reasonableness' is judged by an objective standard, based on the
conduct of the patent holder, not the subjective feelings of the
potential infringer," and "[t]he burden falls on the declaratory
judgment plaintiff to prove, by a preponderance of the evidence,
that its apprehension of suit was reasonable." Sirius Satellite
Research, 2006 WL 238999, at *3 (citing Cygnus Therapeutics Systems
v. ALZA Corp., 92 F.3d 1153, 1159-60 (Fed. Cir. 1996))).

   Here, since the covenant not to sue fully releases Watson from

10

liability for infringement of the '176 patent based on products that "are the subject of and described in Watson's ANDA No. 77-129" (Watson Covenant), any "reasonable apprehension" of suit can only be based on potential amendments to Watson's ANDA.  As explained below, language releasing Watson from liability for any amendments to ANDA No. 77-129 must be added to Novartis' covenant not to sue in order to fully eliminate the controversy at bar.  Assuming such language is added to Novartis' convenant, there will no longer be any basis for this Court to continue to exercise jurisdiction over Watson's counterclaims for declaratory judgment on the '176 patent.

   C.  <u>The Defendants' Proposed Modifications</u>

_____The defendants argue that in order to resolve fully any case or controversy relating to Novartis' claims on the '176 patent, certain language must be added to both the covenants not to sue and to the proposed order of dismissal.  I shall address each proposed change in turn.

   1.  <u>Changes to the Order to Dismiss</u>

Defendant Sun argues that Novartis' proposed order of dismissal could prejudice them if it were construed as a "final judgment that includes a finding that the patent is valid or not infringed.  (Sun Memo. at 6) (citing 21 U.S.C. § 355(j)(5)(D)(i)(I)(bb)(BB)).  In order to preclude this possibility, Sun requests that language be added to the order to dismiss making clear that the case has been dismissed "for lack of subject matter jurisdiction." (Sun Memo. at 8).  Though Novartis does not object to such a change -- and indeed welcomes it, since

it bolsters the claim that the case is now nonjusticiable under Article III -- no such language need be included in the order to dismiss.

Such language is not standard in an order to dismiss, and this court is unable to find -- nor does either party cite -- any case in which dismissal based on voluntary withdrawal of claims and a covenant not to sue was explicitly stated as being "for lack of subject matter jurisdiction." Nor does it seem possible that an order to dismiss with prejudice could be construed as a finding in favor of the party whose claims are being dismissed absent such language, as the defendants fear. Moreover, inclusion of such language in the order to dismiss seems potentially confusing in light of the holding of Highway Equipment discussed above. Since Highway Equipment holds that the court retains jurisdiction over this matter for certain purposes even after the entry of an order to dismiss, an order explicitly renouncing jurisdiction seems more likely to create confusion than to allay it.

2. Changes to the Covenants Not to Sue

The defendants also argue that changes to Novartis' covenant not to sue are necessary to eliminate any case or controversy between the parties and thus to make dismissal appropriate. As explained earlier, these changes involve the inclusion of language extending the covenant to the defendants' "suppliers, distributors, customers, partners, or their successors and assigns," precluding suit on "any other basis for any claim of direct, contributory, or induced infringement" related to the products in question, and

12

precluding suit regarding "any amendment" to either Watson's or
Sun's ANDA.  I will address each proposed change in turn.

It is unclear whether failure to include defendants'
"suppliers, distributors, customers, partners, or their successors
and assigns" would render the covenants inadequate to eliminate the
entire case or controversy so as to make dismissal inappropriate.
See Intellectual Property Development, 248 F.3d at 1341-42 (finding
that defendant's claim that it could be required to indemnify third
party that might be sued in separate case on same patent not
sufficient to prevent dismissal where plaintiff had issued a
"statement of nonliability" to an accused patent infringer); but
see BIS Advanced Software Systems, Ltd. v. Red Bend Software, Inc.,
No. Civ. A 04-11960, 2006 WL 753246, at *1 (D. Mass. March 22,
2006) (citing Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.,
846 F.2d 731, 736 (Fed. Cir. 1988))(holding that a case or
controversy continued to exist where plaintiff sought to dismiss
its claims against accused patent infringer but showed desire to
sue infringer's customers); Synopsys, 343 F. Supp. 2d at 889
(defendant's covenant not to sue insufficient because defendant
maintained suits against plaintiff's customers).  In any case, the
plaintiffs represent explicitly in their briefs that they will
abide by this condition.  (Pl. Reply Memo. at 5.)  Such a promise,
made by a litigant's attorneys in motion papers or briefs, has been
held to definitively bind the litigant, "both now and in the
future." Super Sack, 57 F.3d at 1059; see also Merck, 2006 WL
1537375, at *1.  Thus, such an alteration to the covenants is

unnecessary.

The plaintiffs argue that the other changes proposed by the defendants are also unnecessary because the eventualities that they contemplate are already covered by the covenants as written.  (Pl. Reply Memo. at 5).  With respect to the language preventing suit on "any other basis," they are correct.  Covenants worded almost identically to the ones executed by Novartis -- and, notably, not including the language requested by the defendants -- have been held to terminate any case or controversy in patent infringement suits.[9]  See, e.g., Intellectual Property Development, 248 F.3d at 1338, 1341-42; Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852, 855 (Fed. Cir. 1999); Crossbow Technology, 2007 WL 174422, at *3; WHY ASAP, 461 F. Supp. 2d at 314; Polarity, 2006 WL 2982151, at *1; Merck, 2006 WL 1537375, at *1.  The defendants offer no

---

[9] Of course, future litigation of related claims may well be barred by principles of claim preclusion, regardless of the language in the covenant not to sue.  Nonetheless, in determining whether an "actual controversy" exists in similar circumstances, courts have focused on the language of the covenant not to sue rather than leaving the issue to be decided on the basis of claim preclusion by another court in the event that another claim is in fact brought.  In particular, courts have asked whether the covenant adequately eliminates the threat of re-litigation or continued litigation of the claim in question.  See Intellectual Property Development, 248 F.3d at 1341-42; Super Sack, 57 F.3d at 1059-60; Crossbow Technology, 2007 WL 174422, at *3; SVG Lithography, 334 F. Supp. 2d at 25-26; Arista Technologies, 125 F. Supp. 2d at 654-55; Polarity, Inc. v. Diversified Technologies, Inc., No. C-06-0646, 2006 WL 2982151, at *1 (N.D. Cal. Oct. 17, 2006); WHY ASAP, LLC v. Compact Power, 461 F. Supp. 2d 308, 314 (D.N.J. 2006); cf. Merck, 2006 WL 1537375, at *1 (analyzing enforceability of covenant not to sue but noting that "because any dismissal pursuant to Merck's covenant would be with prejudice, res judicata will likely prevent Merck from re-filing this suit regardless of the enforceability of the covenant").  Thus, I will adopt that approach.

compelling reason why this case differs from the many others in which courts have found that such language was not necessary.

The issue of amendments to the defendants' ANDAs is more difficult. In come cases, courts have refused to dismiss claims where there was some risk that suit might be brought over future iterations of the product in question.[10] See WS Packaging Group, Inc. v. Global Commerce Group, LLC, No. 06-C-674, 2006 U.S. Dist. LEXIS 79204, at *7-10 (E.D. Wis. October 20, 2006)(finding that possibility of suit over "already-developed products that might (again) be manufactured at a future date" precluded dismissal despite the fact that the products would involve "significant changes" from the products currently in production); BIS Advanced Software Systems, 2006 WL 753246, at *1 (refusing to dismiss because "plaintiff has stated that it will not bring an infringement action against defendant -- but only as to 'the software products and services currently manufactured, sold, and licensed' by defendant," and thus "[b]ecause defendant regularly updates its products . . . it is still vulnerable to an infringement suit"); Arrowhead, 846 F.2d at 736 (holding that in order for case or controversy to persist "[p]laintiff must be engaged in an actual making, selling, or using activity subject to

_____

[10] It should be noted that these cases assess only the propriety of dismissing declaratory judgment claims under the standard set forth by the Federal Circuit in BP Chemicals, 4 F.3d at 978, discussed above. Nonetheless, I believe the rationale is also compelling when applied to the underlying patent infringement claims: a claim should not be dismissed if there is a "reasonable apprehension" of an infringement suit on the same patent based on "present activity" that could constitute infringement.

an infringement charge or must have made meaningful preparation for such activity" and that "[w]hether a declaratory plaintiff's ability and definite intention to undertake a potentially infringing activity constitutes sufficient 'preparation' is a question of degree to be resolved on a case-by-case basis"); but see Amana Refrigeration, 172 F.3d at 855-56 (holding that fear of suit over "new products 'in the pipeline,' but not advertised, manufactured, marketed, or sold before the filing date" did not demonstrate the continued existence of "an actual controversy"); Super Sack, 57 F.3d at 1060 ("The residual possibility of a future infringement suit based on [the defendant's] future acts is simply too speculative a basis for jurisdiction."); Spectronics Corp. v. H.B. Fuller Co., 940 F.2d 631, 636 (Fed. Cir. 1991)(holding that potential reissue of patent did not preserve an actual case or controversy in the face of a covenant not to sue on the patent because, among other things, "there is [] no guarantee that the reissue patent will eventually issue").

Here, it seems that the possibility of patent infringement claims relating to amendments to Watson's and Sun's ANDAs for the '176 patents -- which the defendants aver are "routinely amended during the [] regulatory process" (Sun Memo. at 6) -- creates some risk of repeated litigation, thereby making it prudent to include language covering such an eventuality in the covenants.[11]   That

---

[11] Indeed, this situation seems quite analogous to that in BIS Advanced Software Systems, 2006 WL 753246, in which the court held that because updates to the software at issue there were -- much like amendments to the ANDA, almost certain to occur, a covenant to sue that did not include the updates was insufficient to eliminate

16

issue need not be decided now, since Novartis expresses no desire to reserve its right to sue over amendments to the ANDA, and indeed maintains that it would not be able to even if language to that effect is not included in the covenants.  (Pl. Reply Memo. at 5). Addition of such language to the covenants merely makes explicit what Novartis argues is already implicit.  Therefore, in order to ensure that any case or controversy relating to Novartis' claims on the '176 patent is fully and finally settled, language covering amendments to Watson's and Sun's ANDAs should be added to the covenants not to sue.

C. Defendants' Claims for Attorneys' Fees

Both defendants also seek leave to amend their pleadings to assert claims for attorneys' fees.   Under 35 U.S.C. § 285, attorneys' fees may be awarded to a prevailing party in a patent infringement action "in exceptional cases."  The defendants contend that this case is exceptional because of fraud allegedly committed by Novartis in obtaining the '176 patent and revealed during litigation, and because of misconduct committed by plaintiff's counsel during the course of litigation.   (Sun Memo. at 10; Watson's Memorandum in Response to Plaintiffs' Motion to Dismiss Infringement Claim and Related Counterclaims at 3-4).

Novartis first argues that because neither Watson nor Sun included a claim for attorneys' fees in its initial pleadings, each is precluded from seeking such fees now.  (Pl. Reply Memo. at 7-8). This contention is not compelling.  Rule 54(d)(2) of the Federal

the controversy.  Id. at *1.

17

Rules of Civil Procedure states that "claims for attorneys' fees . . . shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial" and that such a motion "must be filed no later than 14 days after entry of judgment." Moreover, the Advisory Committee Notes to Rule 54 specifically contrast situations in which attorneys' fees are an element of damages, in which fees "typically are to be claimed in a pleading," with other claims for attorneys' fees, which presumably need not be claimed in a pleading. In this case, the attorneys' fees sought are not an element of damages and therefore fall into the latter category.

Novartis relies heavily on <u>Private One of New York, LLC v. JMRL Sales & Service, Inc.</u>, 471 F. Supp. 2d 216 (E.D.N.Y. 2007). But <u>Private One</u> was a contract dispute in which attorneys' fees were an element of damages. Thus, that case fell squarely within the category mentioned in Rule 54(d)(2)(A), for which the Advisory Committee Notes prescribe including attorneys' fees in the pleadings. In any case, the <u>Private One</u> court ultimately granted leave to file a counterclaim for attorneys' fees, which is all that the defendants are requesting here. <u>Id.</u> at 226.

<u>Private One</u> refers to a line of cases holding that attorneys' fees are "special damages" under Rule 9(g) of the Federal Rules of Civil Procedure. <u>Id.</u> at 224. Rule 9(g) provides that such damages must be "specifically stated;" thus, courts have found that "[f]ailure to request items of special damage in the pleadings

18

results in a waiver of the right to those damages." <u>Bensen v.</u>
<u>American Ultramar Ltd.</u>, No. 92 Civ. 4420, 1997 WL 317343, at *10
(S.D.N.Y. June 12, 1997).  While several circuits have adopted this
rule, <u>see id.</u> at *11 (noting that the Third, Fourth, Fifth, Sixth,
and Eighth Circuits deem attorneys' fees to be special damages),
neither the Federal Circuit nor the Second Circuit has done so.[12]
See <u>Klarman v. Santini</u>, 503 F.2d 29, 36 (2d Cir. 1974)(holding that
"failure to specifically request attorney's fees . . . does not in
itself prevent their recovery"); <u>cf. Lund v. Citizens Financial</u>
<u>Group, Inc.</u>, No. CV 97-183-M, 1999 WL 814341, at *16 (D.N.H. Sept.
30, 1999)("Courts have split on whether a request for attorneys'
fees must be contained in a party's pleadings."); <u>Rural Telephone</u>
<u>Service Co. v. Feist Publications, Inc.</u>, No. 83-4086-R, 1992 WL
160890, at *1 (D. Kan. June 18, 1992)(same).

Even some courts that have held attorneys' fees to be special
damages have nonetheless found that attorneys' fees may be claimed
under Rule 54(c)[13] without being pleaded, even after trial, provided
that such a late request does not prejudice the opposing party.
See <u>Southern Industries of Clover, Ltd. v. Zenev Texiles S.A.</u>, No.

---

[12] "The award of attorney fees to a prevailing party under 35
U.S.C. § 285 is a matter unique to patent law and thus, Federal
Circuit precedent controls." <u>Merck & Co., Inc. v. Mylan</u>
<u>Pharmaceuticals, Inc.</u>, 79 F. Supp. 2d 552, 555 n.4 (E.D. Pa. 2000);
<u>accord Q-Pharma, Inc. v. Andrew Jergens Co.</u>, 360 F.3d 1295, 1299
(Fed. Cir. 2004).  However, the Federal Circuit does not, appear to
have ruled on this issue.

[13] Rule 54(c) provides, in relevant part, that "every final
judgment shall grant the relief to which the party in whose favor
it is rendered is entitled, even if the party has not demanded such
relief in the party's pleadings."

02 Civ. 8022, 2004 WL 1444856, at *2-3 (S.D.N.Y. June 25, 2004);
Bensen, 1997 WL 317343, at *12, n. 30; Marshall v. New Kids on the
Block Partnership, No. 91 Civ. 3905, 1993 WL 350063, at *1
(S.D.N.Y. Sept. 8, 1993)(citing Engel v. Teleprompter Corp., 732
F.2d 1238, 1241-42 (5th Cir. 1984)); see also Capital Asset
Research Corp. v. Finnegan, 216 F.3d 1268, 1269-71 (11th Cir. 2000)
(finding that where agreement between parties provided for recovery
of attorneys' fees and defendant was not prejudiced, plaintiff was
entitled to recover even though it had not pleaded for such relief
in its complaint); Morse/Diesel, Inc. v. Trinity Industries, Inc.,
875 F. Supp. 165, 177-78 (S.D.N.Y. 1994) (same); cf. First American
Corp. v. Al-Nahyan, 17 F. Supp. 2d 10, 28 (D.D.C. 1998)(allowing
claim for disgorgement under Rule 54(c) despite plaintiff's failure
to explicitly plead the claim because defendants had "ample notice"
and "were not prejudiced" by the request).  There is no prejudice
to Novartis here.  No trial has been held; the issue of attorneys'
fees will be briefed separately, and each party will have the
opportunity to present its arguments.  Furthermore, "'[s]pecial
damages' have been described as 'those that, although resulting
from the commission of the wrong, are unusual for the claim in
question and not normally associated with the claim.'"  Bensen,
1997 WL 317343, at *10 (quoting 2 Jeffrey A. Parness et al.,
Moore's Federal Practice § 9.08 (3d ed. 1997)).  Here, as
attorneys' fees are specifically provided for under 35 U.S.C. § 285
and are routinely requested by prevailing parties in patent
infringement actions, they appear to be neither "unusual" nor "not

normally associated" with the claims in question.

Finally, even if attorneys' fees are considered special damages requiring formal pleading, courts may allow parties to cure their failure to plead at the outset by permitting amendment of pleadings to add a claim prior to the entry of judgment.[14]  Cf. Maidmore Realty Co. v. Maidmore Realty Co., 474 F.2d 840, 843 (3d Cir. 1973) (finding denial of attorneys' fees proper because "no motion was made in the present case for [an] amendment to include the prayer for special damages"); Private One, 471 F. Supp. 2d at 226 (granting defendant permission to file a counterclaim for attorneys' fees despite failure to plead at the outset).  Indeed, Novartis concedes that even if attorneys' fees must be formally pleaded, the question of "whether leave to amend should be granted to add such claims to defendants' answers" remains.  (Pl. Reply Memo. at 9).  Here, the defendants have timely moved to amend their claims and judgment has not yet been entered.

Novartis asserts, however, that this Court no longer has jurisdiction over the case and therefore cannot grant the defendants leave to amend their pleadings to add claims for

---

[14] To hold that the defendants waived their claim to attorneys' fees by failing to plead them at the outset would seem particularly inequitable where, as here, the defendants' claim for attorneys' fees is based in part on the plaintiffs' conduct during the course of litigation.  See Standard Oil Co. v. American Cyanamid Co., 774 F.2d 448, 455 (Fed. Cir. 1985)(attorneys' fees may be awarded under 35 U.S.C. § 285 based on, among other things, "misconduct during litigation"); accord Liberty Leather Products Co. v. VT International Ltd., 909 F. Supp. 193, 195 (S.D.N.Y. 1996); see also Hughes v. Novi American, Inc., 724 F.2d 122, 125 (Fed. Cir. 1984)(attorneys' fees may be awarded for "continuance of a suit in bad faith or other misconduct during trial").

attorneys' fees.   This argument is predicated on the assumption
that the Court loses jurisdiction over the matter at hand as soon
as the plaintiffs covenant not to sue.  But, as detailed above, the
Federal Circuit has recently determined that this is not the case.
Highway Equipment holds that a court retains jurisdiction to
"determine the disposition of the patent infringement claims raised
in the Complaint."   469 F.3d at 1033 n.1.   Moreover, it holds
squarely that the court retains jurisdiction over claims for
attorneys' fees under 35 U.S.C. § 285 even in the face of a
plaintiff's covenant not to sue.   Id. at 1032-33; accord Digeo,
Inc. v. Audible, Inc., No. C05-464, 2006 WL 3486801, at *3 (W.D.
Wash. Dec. 1, 2006); see also Polarity, 2006 WL 2982151, at *2
(pre-Highway Equipment, collecting cases for proposition that
"[m]ost courts that have considered the issue agree . . . that a
court retains jurisdiction over a claim for attorney's fees under
[35 U.S.C.] § 285 even after dismissal").  As a result, the cases
cited by the plaintiffs, Fox v. Board of Trustees of State
University of New York, 148 F.R.D. 474 (N.D.N.Y. 1993), and Broad
v. DKP Corp., No. 97 Civ. 2029, 1998 WL 516113 (S.D.N.Y. Aug. 19,
1998), both of which predate Highway Equipment and neither of which
involves patent infringement claims, are inapposite.   The
defendants are free to move to amend their pleadings to add a claim
for attorneys' fees and this Court will continue to exercise
jurisdiction over such a claim.[15]

_____

   [15] The parties also dispute whether it is appropriate for the
Court to consider the defendants' request for attorneys' fees at
this time or to defer that question until "all issues in these

---

consolidated actions have been resolved." (Pl. Reply Memo. at 11).
Such questions must wait until the court considers the defendants'
motions for attorneys' fees; this opinion concerns only the
plaintiffs' motion to dismiss.  I note as a guide to the parties'
later submissions that <u>Highway Equipment</u> seems to settle the
question of whether Sun, and likely Watson, are "prevailing
parties."  <u>See</u> 469 F.3d at 1035. Thus, any decision regarding the
timing of claims for attorneys' fees will likely turn not on
whether the defendants are "prevailing parties" but on whether the
interests of judicial efficiency are better served by consideration
of the issue now or at the conclusion of all litigation.

    I also decline to consider Watson's request that dismissal
here be certified as a partial judgment under Rule 54(b) at this
time.  Should the Court elect to proceed with consideration of
attorneys' fees at this time, the Court will then take up the
request.

Conclusion

For the reasons set forth above, I recommend that Novartis' motion to dismiss be granted on the condition that the suggested changes are made to its covenant not to sue.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e)of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Harold Baer, Room 2230, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude appellate review.

Respectfully submitted,

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

---

consolidated actions have been resolved." (Pl. Reply Memo. at 11). Such questions must wait until the court considers the defendants' motions for attorneys' fees; this opinion concerns only the plaintiffs' motion to dismiss.  I note as a guide to the parties' later submissions that Highway Equipment seems to settle the question of whether Sun, and likely Watson, are "prevailing parties."  See 469 F.3d at 1035. Thus, any decision regarding the timing of claims for attorneys' fees will likely turn not on whether the defendants are "prevailing parties" but on whether the interests of judicial efficiency are better served by consideration of the issue now or at the conclusion of all litigation.

I also decline to consider Watson's request that dismissal here be certified as a partial judgment under Rule 54(b) at this time.  Should the Court elect to proceed with consideration of attorneys' fees at this time, the Court will then take up the request.

23

Dated:      New York, New York
            April 19, 2007

Copies mailed this date:

Robert L. Baechtold, Esq.
Diego Scambia, Esq.
Nicholas N. Kallas, Esq.
Gregory B. Sephton
Fitzpatrick, Cella, Harper & Scinto
30 Rockefeller Plaza
New York, New York  10112-3801

Barry S. White, Esq.
James K. Stronski, Esq.
Haejin Sarah Park, Esq.
Frommer Laurence & Haug, LLP
745 Fifth Avenue
New York, New York  10151

James F. Hurst, Esq.
Derek J. Sarafa, Esq.
Ivan M. Poullaos, Esq.
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL   60601

Maurice N. Ross, Esq.
Budd Larner PC
150 John F. Kennedy Parkway
Short Hills, New Jersey   07078